Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Columbia

Civil Division

|  |  |
|---|---|
| Lisa K Holden | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| Williams & Connolly LLP | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Case: 1:19-cv-03055  JURY DEMAND
Assigned To : Jackson, Ketanji Brown
Assign. Date : 10/6/2019
Description: Pro Se Gen Civ. (F-DECK)

Jury Trial:  *(check one)*   ☒ Yes   ☐ No

## COMPLAINT FOR A CIVIL CASE

**I.**     **The Parties to This Complaint**

   **A.**     **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Lisa K Holden |
| Street Address | 720 North Carolina Avenue, SE |
| City and County | Washington, DC |
| State and Zip Code | DC 20003 |
| Telephone Number | 202-823-2692 |
| E-mail Address | 55649604z@gmail.com |

   **B.**     **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Williams & Connolly LLP |
| Job or Title *(if known)* | Plan Administrator and Fiduciary |
| Street Address | 725 12th Street, NW |
| City and County | Washington, DC |
| State and Zip Code | DC 20005 |
| Telephone Number | 202-434-5000 |
| E-mail Address *(if known)* | jscott@wc.com |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☒ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

29 CFR Part 825 - The Family and Medical Leave Act of 1993, Interference with FMLA Rights
29 CFR 825.200
29 CFR 825.207
29 CFR 825.220
29 CFR 825.300
29 CFR 825.301
29 CFR 825.400
29 CFR 107
26 CFR 105
26 CFR 1.125-3

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

a.     If the plaintiff is an individual

The plaintiff,  *(name)* _____ , is a citizen of the

State of *(name)*   Washington, DC _____ .

b.     If the plaintiff is a corporation

The plaintiff,  *(name)* _____ , is incorporated

under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

    a.      If the defendant is an individual

        The defendant,  *(name)* _____ , is a citizen of
        the State of *(name)* _____ . Or is a citizen of
        *(foreign nation)* _____ .

    b.      If the defendant is a corporation

        The defendant,  *(name)*     Williams & Connolly LLP     , is incorporated under
        the laws of the State of *(name)*     Washington, DC     , and has its
        principal place of business in the State of *(name)*     Washington, DC     .
        Or is incorporated under the laws of *(foreign nation)* _____ ,
        and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.      The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

$1,387,084.10  is the value of the lost benefits in the Williams & Connolly Long-Term Disability Insurance Plan as a result of interference.

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

See Attached

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See Attached

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          10/06/2019

Signature of Plaintiff          _Lisa K Holden_
Printed Name of Plaintiff      Lisa K Holden

### B.   For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

State and Zip Code

Telephone Number

E-mail Address

## III. Statement of Claim

Plaintiff began seeking FMLA leave on 8/13/15 due to a serious medical condition. She signed a request for FMLA leave on 8/26/15. Defendant never provided any of the required information about FMLA to the Plaintiff and never provided written notice that FMLA was even approved or designated. Normally, it may not matter if FMLA leave is designated or not, but in this case it does matter. This is because of two new, but retroactive plan amendments in the defendant's long-term disability plan that require that all benefits cease to be effective upon the employee's last day of FMLA leave. Plaintiff was never made aware of these new plan amendments, and in fact, when she did receive a copy of the plan's summary plan description, the pages referencing what I have termed the "FMLA clause" were missing. Plaintiff believes that the Defendant intentionally concealed this information from her and now wants to enforce this FMLA clause against her. Besides having the agreement in place, the Defendant needs to have FMLA approval or designation. However, I have never received proper notice of FMLA approval or designation. I believe that it is part of the FMLA interference that Defendant falsely claimed that Plaintiff's FMLA leave was approved when in fact the Plaintiff was never notified or in the case of Retroactive Designation, the Plaintiff was never asked for her permission to designate the leave as FMLA leave.

Also, if the Defendant had qualified Plaintiff's leave in a timely manner as FMLA leave, the Williams & Connolly LLP Benefits Plan, a cafeteria plan, states that the plan administrator is to provide the employee with the opportunity to enter into a written leave agreement wherein the benefits could be clearly laid out so that there would be no confusion and this did not happen. Also, the Plaintiff should have been informed at that time of this new FMLA clause that would bring a cessation of benefits upon the last day of FMLA. Through the Defendant's interference, none of this came about. Defendant chose to withhold this information from Plaintiff.

Two days before Plaintiff would have been approved for benefits in the Williams & Connolly Long-Term Disability Plan, on 9/28/16, Defendant and UNUM agreed to rescind Plaintiff's coverage in the plan going back nine months to 12/10/15, the purported last day of FMLA, and UNUM was discussing their providing a refund to Defendant of all of the premiums that they had paid for that nine month period. Plaintiff's benefit approval letter would have been dated 9/30/16, instead she received a letter of denial for coverage reasons. When Plaintiff called UNUM to find out what had happened, she was told that it was all a matter of policy.

IV. Relief

Plaintiff has suffered a loss of benefits in the Williams & Connolly LLP Long-Term Disability Plan valued at $1,370,636. This loss was made known to Plaintiff on 10/6/16 and still exists to this day.

Other more minor damages listed are for lost vacation accrual, lost paid time off, improper handling of election status change opportunities not provided, and lost tax savings as a result of not being given the opportunity to prepay for premiums as is required according to the Williams & Connolly LLP Benefits Plan. These damages amount to $16,448.19

Plaintiff believes that she is entitled to actual damages and punitive damages, if available, for the incredible amount of manipulation and obfuscation that has occurred throughout the whole process of applying for FMLA and attempting to attain a benefit in an ERISA plan at the same time. There has been the infliction of a great amount of emotional pain and suffering for Plaintiff and her family in addition to financial damages.

Lisa Holden, Pro Se
720 North Carolina Avenue, SE
Washington, DC  20003
202-823-2692

## UNITED STATED DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LISA HOLDEN,** | **Case No.: Number** |
| **Plaintiff,** | |
| **vs.** | |
| **WILLIAMS & CONNOLLY LLP, THE PLAN** | |
| **ADMINISTRATOR AND FIDUCIARY FOR THE BENEFITS PLAN** | |
| **Defendant** | |

## COMPLAINT FOR RECOVERY OF LOSS OF BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT ("FMLA") DUE TO WILLFUL INTERFERENCE

COMES NOW, Plaintiff, Lisa Holden, and makes the following representations to the Court for

the purpose of obtaining relief from Defendant's willful interference with Plaintiff's rights under

the Family and Medical Leave Act ("FMLA") 29 CFR Section 825.220 -Protection for employees

who request leave or otherwise assert FMLA rights:

## JURISDICTION AND VENUE

This Courts' jurisdiction over the Plaintiff's claim for relief under the Family and Medical Leave Act is invoked pursuant to section 107 which allows one to bring a claim under a Federal Court where they reside.  Plaintiff resides in Washington, D.C.

## I. PARTIES

1. Plaintiff, LISA HOLDEN (hereinafter "Plaintiff"), is an individual who is currently and was at all relevant times herein a resident of the city of Washington, DC.

2. Defendant, WILLIAMS & CONNOLLY LLP, THE PLAN ADMINISTRATOR AND FIDUCIARY FOR THE BENEFITS PLAN (CAFETERIA PLAN), (hereinafter "Defendant"), is a Limited Liability Partnership organized and existing by virtue of the laws of the District of Columbia, and may be served with process by service upon Williams & Connolly LLP, located at 725 12th Street, NW, Washington, DC  20005, ATTN: Jennifer Scott, Executive Director.

3. All of the acts and/or failures to act alleged herein were duly performed by and/or are attributable to defendant, individually or acting by and through its fiduciary agents and employees.

4. Said acts and/or failures to act were within the scope of any agency or employment, or were ratified by defendants.

## II. **FACTS**

5.      Plaintiff is former Deputy Director of Finance of Williams & Connolly LLP (Defendant) and was employed by Defendant for 19 ½ years.

6.      Defendant Williams & Connolly LLP is a limited liability partnership performing legal services located at 725 12th Street, NW, Washington, DC  20005.

7.      Plaintiff began working as the Assistant Controller for Defendant's law firm on March 24, 1997 and worked for the Defendant for nearly twenty years.  Plaintiff was promoted to the position of Deputy Director of Finance on or around January 1, 2005. Plaintiff managed the Annual Review and Tax Reporting, acted as the Tax Manager, acted as the Retirement Plan Manager for five qualified retirement plans, oversaw Financial Reporting, and oversaw Accounts Payable amongst other duties.

8.      Plaintiff's claims are for **willful FMLA Interference, under 29 CFR Section 825.220 – Protection for employees who request leave or otherwise assert FMLA rights,** The statute of limitations is three years in this case. The last act in violation of FMLA was when the Defendant's Human Resource Director, Karen Gregory**, finally designated the FMLA period** for the Plaintiff on 6/19/19 stating that the period ran from 8/17/15 until 12/11/15, almost four years after FMLA request was made on 8/26/15. This was the defendant's first attempt to make Plaintiff aware of what her FMLA leave period was determined to be. This designation was to have occurred within the first five days of Defendant having all of the required doctor's certifications which would likely have been received by 9/4/16 by the Defendant and UNUM, the long-term disability insurance company. 29 CFR Section 825.301.

A prior violation to the above-mentioned one was that Defendant would not allow the Plaintiff, during her alleged period of FMLA leave, to use her accrued vacation leave after her other paid leave ran out on 11/15/15 and required that the accrued vacation leave remaining be held until termination. **Plaintiff was made to wait until the day she received a termination letter on 10/6/16 to receive a check for her accrued paid leave which should have been received during FMLA.** Plaintiff was made to wait almost a year for these earnings while Defendant remained in violation of FMLA regulations and held onto the money and earned interest thereon. This type of economic harm is in violation of **FMLA regulations 29 CFR Section 825.207 – Substitution of Paid Leave**. So whether you determine the last act to be on 6/19/19 when the Defendant is still trying to catch up on the FMLA work that they failed to do during 2015 and provide a designation of the FMLA period or you determine the last act to be the date on which the Defendant finally attempted to remedy their substitution of paid leave violation and paid out the Plaintiff's accrued vacation balance on 10/6/16 when the Plaintiff was notified of her termination, Plaintiff will be timely filed if filing for willful FMLA interference is made on or before 10/6/19.

9. Plaintiff had at least three protected activities occurring from the time she took FMLA until the time she was terminated from her employment at Williams & Connolly LLP. These protected activities were as follows: Plaintiff began the process of seeking leave and ultimately FMLA on 8/13/15 when she developed a serious medical condition; Plaintiff began seeking short-term disability coverage and long-term disability coverage at about the same time; Plaintiff incurred significant medical costs in August 2016 which were paid by the Defendant's self-insured plan managed by United Healthcare; Plaintiff was still seeking to attain a benefit in

the Williams & Connolly LLP Group Long-Term Disability Plan when she was terminated on 10/5/16.

10.   FMLA interference has only two requirements: (1) that the employer somehow interfered, restrained, or denied the exercise of FMLA rights, and (2) that the interference directly resulted in monetary loss to the employee. Plaintiff will show evidence of FMLA interference described throughout this claim.

11.   Regarding FMLA Interference, the Department of Labor, in Section 105 of the FMLA and section 825.220 of the FMLA regulations, states that the following actions are prohibited: "An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.  In FMLA interference, examples of prohibited conduct include: refusing to authorize FMLA leave for an eligible employee, discouraging an employee from using FMLA leave, an employer's failure to follow notice requirements and causing harm as a direct result. Any violations of the FMLA or the Department of Labor's regulations constitute interfering with, restraining, or denying the exercise of rights provided by the FMLA.

12.   **BURDEN OF PROOF WHEN EMPLOYEE HAS A SERIOUS MEDICAL CONDITION,** it has been established that when an employee provides notice to the Human Resources Department of a serious **medical condition** that is, or is likely to become, an FMLA-qualifying condition, such notice shifts to the employer the burden of (1) informing the employee of any applicable FMLA rights, and (2) how to exercise those rights. **(See Reeder vs. County of Wayne, Michigan)**. Defendant's Human Resources (HR) Department was made aware of Plaintiff's serious medical condition by August 13, 2015. Plaintiff contends that Defendant and its agents did not properly

assume the burden of informing Plaintiff of her FMLA rights, nor did Defendant take proper

measures to ensure that Plaintiff had the requisite information and notifications, including an

FMLA approval or FMLA-qualifying designation notice and/or the opportunity to enter into a

written leave agreement covering all of the benefits, which is required to be offered according

to the Williams & Connolly LLP Benefits Plan once you are qualified for FMLA.; or notice of the

new FMLA clause that Defendant seeks to enforce against the Plaintiff and that is contained in

the retroactive plan amendments which would cause Plaintiff's benefits to cease on the last day

of the FMLA leave period. *29 CFR Section 825.301 – Designation of FMLA leave.*

13.   **LACK OF DESIGNATION NOTICE** An employer must designate FMLA requested leave as

such and provide an employee with timely notification of such a designation under 29 CFR

Section 825.300. **An employer's failure to follow notice requirements may constitute an**

**interference with an employee's FMLA rights and may make an employer liable for harms as**

**a direct result of the violation. See 29 CFR Section 825.400 (c).** In the J. Gordon case in the D.C.

Circuit Court in 2015, the court determined that "an employer action with a reasonable

tendency" to interfere with an FMLA right may support a valid interference claim "even where

the action fails to actually prevent such exercise or attempt." ** Plaintiff in this case did not

ever receive an FMLA designation notice denoting approval of FMLA and the only time that

Defendant designated dates of FMLA leave was on 6/19/19, almost four years after the initial

request for FMLA was made. This represents a clear case of interference with an employee's

FMLA rights. *29 CFR Section 825-301 – Designation of Leave.*

14.   **CAUSAL EFFECT OF LACK OF DESIGNATION NOTICE ON RIGHTS AND RESPONSIBILITIES IN OTHER BENEFIT PLANS AND HARM CAUSED:** In the Williams & Connolly LLP Benefits Plan, it states that "As soon as administratively feasible after a Participant qualifies for an FMLA Leave, the Plan Administrator shall give the Participant the opportunity to choose in writing between continued coverage during the FMLA Leave, or of suspending coverage for such leave's duration." The lack of a designation notice qualifying the FMLA of the Plaintiff caused the Plaintiff to not be given the opportunity to enter into a written leave agreement as required by the Williams & Connolly LLP Benefits Plan. The designation notice acts as the **trigger** for a participant to be provided with the opportunity to enter into written leave agreement. The issues of benefits would have been clearly laid out in a written leave agreement had there been one. This leave agreement would have made it clear when benefits were provided or when they would not be provided so that all parties were knowledgeable. Plaintiff would have been able to gather additional information through this process so that she would understand in advance how her benefits would be handled and could have determined the action that she needed to take so as to not lose the opportunity to receive her long-term disability benefits.  If new retroactive amendments were going to be enforced upon Plaintiff with them not having been distributed to the Plaintiff in a timely manner, she would have been able to dispute the propriety of that situation immediately. Instead, everything was just sprung on Plaintiff without her having ever been properly informed. Plaintiff got no notices or information and was kept in the dark and when she was given information, the material changes were left out, such as when in the Fall of 2015 that the Plaintiff was given a copy of the Summary Plan Description of the Williams & Connolly LLP Long-Term Disability Plan in respect of Amendment #19, the material

modification that had been made in adding the "FMLA clause" which causes benefits to cease upon the end of FMLA had been removed. It must be remembered that Plaintiff was very ill and needed assistance with gathering the important information and the burden was on the Defendant to make sure that Plaintiff had accurate, timely and verified information that was properly derived.

Besides the **lack of a designation notice** required *under 29 CFR Section 825-301* causing the Plaintiff to not receive the opportunity to enter into a **written leave agreement** and gaining the information this would provide and being able to take various actions based upon the information; in the Williams & Connolly LLP Long-Term Disability Plan, with this addition of two new retroactive plan amendments, whether or not leave has been designated now has **new implications** and importance regarding **whether or not one's benefits continue beyond the FMLA leave end date.** While Plaintiff was never informed of this new FMLA clause in the plan, Defendant is attempting to enforce this new plan language on the Plaintiff and because of this, and without having a written leave agreement locking down benefits, having designated FMLA does cause Plaintiff harm. **The harm caused was losing her disability benefits in the Williams & Connolly LLP Group Long-Term Disability Plan with a value of $1,370,636 due to lack of coverage in the Plan.** Plaintiff would have been covered, but for the loss of coverage due to what should be an "unenforceable plan change" because proper procedures were not followed in creating the plan amendment, nor in disseminating the material changes to plan participants. Additionally, Plaintiff's disability coverage would not have been lost except for the false claim that Plaintiff's FMLA was designated and approved when it was not. Accordingly, if Plaintiff were to be asked by Defendant now if she would be in agreement to approving a Retroactive

FMLA Designation notice according to *29 CFR Section 825-301,* she would say no based on the new information that she has finally been able to obtain. Plaintiff would like to see the documentation that Defendant sent to UNUM wherein there must be some sort of designation of FMLA leave of Plaintiff for which Plaintiff was never informed. Plaintiff would like to know where UNUM got the idea that Plaintiff's leave was ever approved according to FMLA regulations. It is a fact that UNUM has stated that Williams & Connolly LLP will not allow the release of Plaintiff's short-term disability claim file.

The FMLA leave served only to benefit the Defendant as a means to end the employer-employee relationship without paying out any new long-term disability benefits.  Since Plaintiff was not given a designation notice, Plaintiff believes that Defendant should not have been able to consider Plaintiff "approved" for FMLA leave for purposes of triggering clauses in the Williams & Connolly LLP Group Long-Term Disability Plan to cause a loss of benefits to Plaintiff when Defendant did not follow FMLA regulations and do what it takes to inform Plaintiff and properly "approve" or designate Plaintiff's leave as FMLA-qualifying.

15.     **FMLA INTERFERENCE** - Plaintiff asserts that defendant enticed Plaintiff to accept FMLA when Plaintiff first announced her need to take time off from work to figure out the causes of her seriously deteriorating mental health conditions. The Benefits Administrator encouraged her to take FMLA leave and that she "would be Protected." However, the Benefits Administrator never told Plaintiff the date on which that protection would end and what the impact of that would be on her benefits. Plaintiff also contends that Defendant's Human Resource employee, Sandy Reynolds; and the Benefits Administrator, Laurie Jackson; along with the Director of Human Resources, Karen Gregory, all contributed to interference which

prevented Plaintiff from learning material information regarding employee's rights and responsibilities when seeking FMLA, including learning about Defendant's newly adopted FMLA clause, used to determine when employees lose benefits and thereby denying Plaintiff her FMLA rights and subjecting Plaintiff to an adverse benefit determination from UNUM when her coverage ceased after FMLA ended. Whether through negligence or deliberate obfuscation and manipulation, Defendant did not inform Plaintiff of this significant new policy change in Defendant's group long-term disability insurance plan which would ultimately impact Plaintiff's right to coverage in the Defendant's group disability plan.

In 2016, Defendant disregarded the Williams & Connolly LLP Group Long-Term Disability Insurance policy which had been effective since 2008 and which was distributed to Plaintiff in November 2013, as a result of Plaintiff's request for the policy so that she could complete an insurance review by her broker at Howard Phillips & Co. This 2008 policy did not contain this "FMLA clause" causing a participant's coverage to cease on the last day of FMLA. Had UNUM and the Defendant enforced the 2008 policy which had been distributed to the Plaintiff, Plaintiff would be a covered recipient of the Williams & Connolly Group Long-Term Disability benefits. Instead, Defendant has interjected two retroactive amendments at least one of which was made retroactive too far back to be able to even suggest that you could distribute the summary plan description in a timely manner to participants and we know that a 2010 plan did not exist in late 2013 as the Benefits Department was giving out 2008 plans as the active  plans at that time. It appears that the 2010 amendment would have had to have been created after late 2013 and most likely was created in late 2015 when the 2014 amendment was also being created. Defendant has not made any attempt to get any of the amendments fully distributed

to participants, including Plaintiff. The distribution to Plaintiff was just a half-hearted attempt to deliver the Summary Plan Description for the group disability plan in name only, the material change was not even included in the package provided to the Plaintiff in the Fall of 2015. It appears that the reason that Plan Amendment #18 and #19 were created at the same time in or around late 2015 is to be able to house the participant-related modifications in an "old" hard to litigate amendment with a time period of 2010 and to house the employer-related administrative changes in the newer amendment because it would not be likely that the participant would dispute those administrative changes. Having two amendments serves to deflect attention away from the material amendment that contains that which one may desire to obfuscate like the "FMLA clause" that ends participants benefits just when they may be needing them the most.

Interestingly, the Plan Amendment #19 which was made effective on 6/1/14 includes new Enrollment Services and Risk Management Services and other services. It appears to Plaintiff that one of the first recommendations of UNUM as the new Risk Manager, in addition to insurer, was to add these retroactive amendments and set up this new FMLA clause which causes a drop-dead date for the end of benefits. That must be one of UNUM's top tricks for reducing benefits costs and they needed to get that set up right away.

Plaintiff suffered a hasty termination without communication from her place of employment on 10/5/16 and was informed of that decision on 10/6/16. To have allowed Plaintiff to remain employed would have allowed her to file a new claim to attempt to attain her ERISA benefits in the employee benefit welfare plan known as the Williams & Connolly LLP Long-Term Disability

Plan and that was the primary thing that Defendant was seeking to avoid by way of all of the FMLA interference and manipulation.

**"VACATION TIME" AND "PERIODS OF DISABILITY" ARE NOT BOUND BY THE LEAVE OF ABSENCE PROVISIONS AND ARE CONSIDERED "ACTIVE EMPLOYMENT."** Defendant was negligent in not acting on a provision in the Williams & Connolly LLP Group Long-Term Disability Plan that would have required that Plaintiff to be covered under the plan despite the new retroactive amendments, that being the "periods of disability" provision which states that "vacation time" and "periods of disability" are not bound by the leave of absence provisions and therefore to be covered by the Defendant's benefit plans as they are considered "active employment." UNUM also shared with Plaintiff and Laurie Jackson, the Benefits Administrator, that their doctors did find that Plaintiff does have sufficient evidence of a disability or period of impairment that began on 7/2016. According to the Williams & Connolly LLP Group Long-Term Disability policy, Plaintiff should have been covered by insurance when Plaintiff was found to have a disability by UNUM. Instead, Defendant and UNUM rescinded plaintiff's long-term disability coverage on 9/28/16 going back nine months to 12/10/15, the purported last day of FMLA. They did this just two days before, and on the eve of, Plaintiff being covered in the Long-Term Disability Plan. Nevertheless, due to this continued interference, Plaintiff was not covered by the Plan. Plaintiff was informed of her benefit denial in the Williams & Connolly LLP Group Long-Term Disability Plan on 10/6/16 and it was in this denial letter that Plaintiff first saw what is being termed here the "FMLA clause."

There are several factors that led to this benefit denial: two "unenforceable amendments" to the LTD Plan which were not distributed or shared in any way; failure to designate FMLA

leading to and causing failure to have a written leave and benefits agreement; and lastly a false

claim made by the Defendant to UNUM alleging that Plaintiff was approved for FMLA leave

when, in fact, Plaintiff was never notified of her approval of FMLA or that her leave was FMLA-

qualified by way of a designation notice and according to FMLA regulations. Accordingly,

Plaintiff seeks the value of her lost benefits in the Williams & Connolly LLP Group Long-Term

Disability Plan in the amount of $1,370,636 due to the interference that she has suffered in her

attempt to take Family and Medical Leave Act leave an attain a benefit in the group disability

plan.

**LISTING OF FMLA FAILURES OR INTERFERENCE** – Plaintiff has violated numerous FMLA

regulations. Below is a list of some of the violations; interference; prohibited conduct,

improprieties and breaches of the Family Medical Leave Act of 1993 by the Defendant Williams

& Connolly LLP, aka The Plan Administrator of the Benefits Plan, and all  violations are in

keeping with the belief that Plaintiff was not provided with the protections of the Family

Medical Leave Act of 1993 that she had been told that she was eligible for, an act that is to

provide protections for employees and their families. You will see by the manner in which

business was transacted that FMLA was not a consideration when Williams & Connolly LLP

would not allow Plaintiff to use her own accrued paid leave during FMLA and left her and her

family, instead, without pay; or where FMLA and Plaintiff's serious medical condition was not

recognized for purposes of Plaintiff being able to change her benefits due to a status change; or

where Plaintiff was not allowed to enter into a written leave agreement and make

arrangements to prepay her health insurance premiums at the end of 2015. These are just a

few examples of where Williams & Connolly LLP through the FMLA regulations to the wind.  Yet,

when it was beneficial for them, Defendant claimed that Plaintiff was fully covered by FMLA regulations.

1.  Leave was never officially approved and placed in writing (this was done most likely to avoid triggering requirements in other employee benefit welfare plans such as the Benefits Plan which would require a written leave agreement); *An employer's failure to follow notice requirements may constitute an interference with an employee's FMLA rights and may make an employer liable for harms as a direct result of the violation. See 29 CFR Section 825.400 (c).*

2.  Discouraging an employee from using FMLA leave (Plaintiff's boss said, "Are you sure you really want to do this?" making it sound like it was a very dangerous thing to do. Plaintiff does believe that her boss did share a concern for what might be about to happen and what the results would be. Of course, he was right in the end.) 29 CFR Section 105 of the FMLA

3.  Failure to inform of new policies and new material plan amendments that cause a significant reduction in benefits that require that benefits such as long-term disability coverage be eliminated upon reaching the end of an approved FMLA; when a summary plan description for the group disability plan was provided, the new "FMLA clause" had been removed from the document so as to conceal its contents, 29 CFR Section 825.300;

4.  Failure to inform how to exercise one's FMLA rights, CFR Section 825.300;

5.  Failure to have or make available an FMLA Handbook, CFR Section 825.300;

6. Failure to provide a General Notice for FMLA upon hiring or thereafter, 29 CFR Section 825.300;

7. Failure to provide a Rights & Responsibilities Notice for FMLA accompanied by the required Certification of Health Care Provider for Employee's Serious Health Condition FMLA form. Plaintiff was not given a Certification of Health Care Form, 29 CFR Section 825.300 (b), (c);

8. Failure to provide notice of the employee's **right to substitute paid leave**, whether the employer will require the substitute of paid leave, the conditions related to any substitution, and the employee's entitlement to take unpaid FMLA leave if the employee does not meet the conditions for paid leave; Ms. Holden was not allowed to use paid vacation for any unpaid  leave after her 11 weeks of paid short-term disability leave ran out, but this is in keeping with the fact that I didn't have an approved FMLA. This created a hardship on Ms. Holden's family. 29 CFR Section 825.200;

9. While the plan administrator failed to allow Ms. Holden the opportunity to use her own accrued vacation during FMLA, the plan administrator used Ms. Holden's accrued vacation leave for their own purposes as a vehicle to temporarily pay Ms. Holden until her short-term disability benefit was approved and available and then a reclass was done in payroll. This happened three times over a three-month period as the approvals were dragged out painstakingly slowly just to cause further pain. According to FMLA regulations, the employer is not allowed to use leave concurrently with FMLA unless it is already earned. At a minimum, Ms. Holden

alleges that she should be allowed 13 weeks of short-term disability leave, which

includes the 2-week elimination period, and 16 weeks of total FMLA as allowed in

the District of Columbia, and her period of FMLA should be designated as occurring

from 9/4/15 through 3/25/16. 29 CFR Section 825.207.

10. Failure to disallow concurrent usage of short-term disability leave and FMLA leave

due to harm caused by lack of a Designation Notice; this caused employee to lose

significant benefits at an earlier date such as LTD coverage, two weeks of Paid Time

Off at the beginning of 2016 amounting to $8,700; vacation accruals of $5,800; With

consecutive running of short-term disability and FMLA totaling 29 weeks,

employee's FMLA end date would have been no sooner than March 25, 2016, 29

CFR Section 825.207;

11. Failure to establish a proper beginning date for FMLA leave after all medical

certification information was supplied and received around September 4, 2015, not

August 17, 2015 or August 24 2015, as the second certification received by Plaintiff's

employer from one of her doctors was not signed off on until September 2, 2015, 29

CFR 825-301;

12. Failure to provide notice of the employee's rights to maintenance of benefits during

the FMLA leave and restoration to the same or an equivalent job upon return from

FMLA leave; 29 CFR Section 825.300.

13. Failure to provide notice of rights and responsibilities may include other information

specifically required by the employer such as a written leave agreement to be

offered by the plan administrator; information on the new material plan

amendment that caused a significant reduction in benefits; the summary plan description of the Williams & Connolly LLP Benefits Plan, and the summary plan description of the Williams & Connolly Health Plan. These summary plan descriptions were not provided to Plaintiff until 2019. 29 CFR Section 825.300.

14. Failure to provide the rights and responsibilities information a second time within five days of going from paid FMLA leave to unpaid FMLA leave. (Regs. State: If the specific information provided by the notice of rights and responsibilities changes, the employer shall, within five business days of receipt of the employee's first notice of need for leave subsequent to any change, provide written notice referencing the prior notice and setting forth any of the information in the notice of rights and responsibilities that has changed. For example, if the initial leave period was paid leave and the subsequent leave period would be unpaid leave, the employer may need to give notice of the arrangements for making premium payments.), 29 CFR Section 825.300;

15. Failure to provide employee with a chance to change her benefit elections due to an FMLA-leave qualifying status change related to a Serious Health Condition i.e. Ms. Holden was not given the opportunity to discontinue her health flex spending during her time on FMLA. Ms. Holden would have done so had she been made aware of this opportunity. She was made to pay the full $106.25 for 9 pay periods for a total of $956.25., 26 CFR Section 1.125-3 – Effect of FMA on the operation of cafeteria plans;

16.  Failure to allow usage of Accrued Paid Leave such as Vacation Pay during FMLA which is required.  Not only was Ms. Holden not allowed to be paid out the vacation

pay, but Plaintiff wasn't allowed to use vacation pay funds to pay for any benefit premiums. All failures created a hardship for Plaintiff and her family. Instead, Plaintiff was told on 6/2/16 that she had 161.75 hours of accrued vacation and "As you know, the balance of your vacation will be paid out when your employment with the Firm terminates. This amount **is not a cash reserve** and account during we cannot apply this unused vacation time toward your family health insurance premium, 29 CFR Section 825.207 – Substitution of Paid Leave;"

17. Failure under FMLA to provide the 2016 Benefits Open Enrollment Memo which is available at the Benefits Health Fair for current employees and which provides detailed information on the health plan and other plans and despite Laurie Jackson telling Plaintiff on 11/16/15 by email that she would provide this information, 26 CFR Section 1.125-3 – Effect of FMLA on the operation of cafeteria plans;

20. Failure under FMLA to offer Ms. Holden the opportunity to make election changes in the Benefits Enrollment period beginning in the Fall of 2015 for changes to be effective on 1/1/16, 26 CFR Section 1.125-3 – Effect of FMLA on the operation of cafeteria plans;

21. Failure under FMLA guidance in the Williams & Connolly LLP Benefits Plan to allow employee to advance the payment of benefit premiums by way of her last check prior to being unpaid. Instead, Ms. Holden asked at the end of 2015 about payroll making a correction in order to get the pre-tax benefit on the funds she had just remitted for her November and December payment and she was told that the IRS doesn't allow this. This is a loss to Plaintiff in the amount of $991.94. This would only

have been the correction of the employer's error and advanced withholding is

clearly spelled out in the Benefits Plan or Flex Plan as an option 26 CFR Section

1.125-3 – Effect of FMLA on the operation of cafeteria plans.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this

case: On Plaintiff's First Cause of Action:

1. A finding in favor of Plaintiff against the Defendant;

2. Damages to recover from the harm that resulted from Defendant's interference with

   Plaintiff's rights under both FMLA and ERISA and their faulty claim that Plaintiff was

   approved for FMLA when Defendant never took the proper steps to have Plaintiff's

   leave FMLA-qualified. Damages equal $1,370,636 or the amount of lost benefits in

   the Williams & Connolly LLP Group Long-Term Disability Plan.

3. Damages for the 2016 accrual of Paid Time Off in an amount to be determined

   estimated to be approximately $8,700.

4. Damages for additional vacation accrual in an amount to be determined, but

   estimated to be around $5,800.

5. Damages for the 2015 Flexible Spending Amount that would have been cancelled

   had Plaintiff been given the proper opportunity to make an election change at the

   beginning of her serious illness in the amount of $956.25 26 CFR Section 1.125-3.

6. Damages to recover the tax savings lost on 2015 health insurance paid between

   November 16, 2015 and December 31, 2015 by virtue of not being informed that I

   could prepay these costs so that I would get the tax benefit thereon, $991.94.

7.   Damages for accrued interest have not yet been determined.

8.   The grand total of charges equals approximately $1,387,084.10.

Respectfully submitted

BY: _Lisa K Holden_

Lisa K. Holden,

Lisa K Holden, Pro Se

720 North Carolina Avenue SE,

 Washington, DC  20003

 (202) 823-2692