Lisa Holden, Pro Se
720 North Carolina Avenue
Washington, DC 20003
202-823-2692



## UNITED STATED DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LISA K. HOLDEN | ) | Case No.: 1:19-cv-03055 KBJ |
| **Plaintiff**, | ) | |
| | ) | |
| **vs**. | ) | |
| | ) | |
| WILLIAMS & CONNOLLY LLP, | ) | |
| and UNUM LIFE INSURANCE COMPANY | ) | |
| | ) | |
| **Defendants**, | ) | |
| | ) | |

---

**Consolidated and Restated Complaint for the Loss of Benefits Suffered and the Enforcement of Rights under the Family and Medical Leave Act of 1993 ("FMLA") due to Interference; the Employee Retirement Income Security Act of 1974 ("ERISA") due to Interference; Americans with Disabilities Act of 1990 ("ADA) due to violations and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") due to violations;**

**Breach of Fiduciary Duty; and Co-Breach of Fiduciary Duty**

COMES NOW, Plaintiff, Lisa Holden, and makes the following presentations to the Court

in this Consolidated and Restated Complaint for the purpose of obtaining relief from violations

and interference on the part of Defendant Williams & Connolly LLP (hereinafter "Defendant WC

RECEIVED

JAN 1 3 2020

Clerk, U.S. District and
Bankruptcy Courts

") and their third-party insurance provider known as Unum Insurance Company (hereinafter "Defendant Unum") under the Family and Medical Leave Act of 1974 ("FMLA"); under the Employee Retirement Income Security Act of 1974 ("ERISA"); under the Americans With Disabilities Act of 1990 ("ADA"), as well as acts of Co-Breach of Fiduciary Duty. The subject plans involved in these matters which are sponsored by Williams & Connolly LLP are as follows: Williams & Connolly LLP Group Long-Term Disability Plan; Williams & Connolly LLP Group Life Insurance Plan, the Williams & Connolly LLP Choice Plus 100/80 UnitedHealthcare PPO Active Plan, as well as the Williams & Connolly LLP Benefits Plan.

## JURISDICTION AND VENUE

1. FMLA INTERFERENCE CLAIMS: This Courts' jurisdiction over the Plaintiff's claim for relief under the Family and Medical Leave Act ("FMLA") is invoked under federal question jurisdiction pursuant to 28 U.S.C. Section 1331 and under the express jurisdiction found under 29 U.S.C., Chapter 28 Family and Medical Leave Act ("FMLA"). Plaintiff's claims relate to FMLA Interference and are covered by Section 107 of the "FMLA" and 29 CFR section 825.220 of the FMLA regulations-Protection for employees who request leave or otherwise assert FMLA rights. 29 CFR Section 825.400 allows one to bring a suit where one resides. The statute of limitations for regular claims is two years from the last date in violation. The statute of limitations for willful claims of FMLA interference is three years from the last event in violation. The last event in violation of FMLA was on or around January 13, 2016 when Plaintiff was notified that her job was being released due to business needs, but the Defendant WC had miscalculated the dates of FMLA and gave

Plaintiff's job away during Plaintiff's FMLA leave instead of after FMLA was over. Job

Protection is a key component of FMLA and this key component was violated.

2. **AMERICANS WITH DISABILITIES ACT CLAIMS:** This Courts' jurisdiction over the Plaintiffs'

claims for relief from violations is under Title I of the Americans With Disabilities Act of

1990 ("ADA").

3. **CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT CLAIMS:**  This Courts'

jurisdiction over the Plaintiffs' claim for relief from violations of the Consolidated

Omnibus Budget Reconciliation Act is invoked under COBRA, 29 U.S.C. Code Part 6

which provides relief to the Participant and Beneficiary of a COBRA plan and has a three

year statute of limitations from the time that employee actually discovered that she

should have been given a COBRA notice  or information. Plaintiff made the discovery

around July 2019 that her COBRA notifications were insufficient.

4. **ERISA 510 INTERFERENCE CLAIMS:** This Courts' jurisdiction over the Plaintiffs' claim for

relief from **Interference with Protected Rights under ERISA** is invoked under the federal

question jurisdiction found in the ERISA statute under 29 U.S.C. Section 1140 (ERISA

Section 510). Plaintiffs' claims under ERISA section 510 relate to **interference resulting**

**in a loss of benefits** in "employee welfare benefits plans" as defined by ERISA, 29 U.S.C.

Section 1001 et seq. and the subject group long-term disability policy, and group life

insurance policy of Williams & Connolly LLP constitute "plans under ERISA." ERISA does

not provide a statute of limitations for Section 510 claims. Rather, courts apply the most

analogous state law statute of limitations based upon the character of the particular

matter. As stated in Valparaiso University Law Review, Volume 27, dated in 1992, page

167: "As recently recognized by the U.S. Supreme Court, the closest common law action

analogous to an ERISA section 510 action is a wrongful termination action brought as a

breach of contract suit." In these matters of Benefit Interference against Plaintiff

involving multiple breaches and interference by the fiduciaries, Plaintiff contends the

most analogous state law statute of limitations provision is for **Breach of Fiduciary Duty**

**which is three years in the District of Columbia.** The U.S. Supreme Court in the

following **U.S. Supreme Court Case, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,**

**113-114 (1989)** states that "ERISA was meant to afford the same level of protection to

employees as they received before ERISA was enacted in 1974 when benefit claim

disputes were governed by principles of contract law." By utilizing the statute of

limitations for Breach of Fiduciary Duty, employees are able to receive the same level of

protection that they received before ERISA became law in 1974 and not be thwarted in

their efforts to receive fairness under the law. Plaintiff determined around July 2019

that breaches of fiduciary duty had occurred. She began suspecting such around

October 2017, but Defendant WC and Defendant Unum were not forthcoming with her

data requests at that time for her to make a final determination.

5. **BREACH OF CO-FIDUCIARY DUTY CLAIMS:** This Courts' jurisdiction over the Plaintiffs'

claim for relief from Breach of Co-Fiduciary Duty on the part of both defendants is

invoked under ERISA, 29 U.S.C. Section 1105, *co-fiduciary liability exists if he has*

*knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under*

*the circumstances to remedy the breach.* Court will determine if a different code section

applies. There is a three-year statute of limitations under ERISA. A plaintiff must bring a

claim within three years from the earliest date the plaintiff has "actual knowledge" of

the breach or violation.  These breach of co-fiduciary claims were discovered on or

around July 2019.


## PARTIES

6.  Plaintiff, **LISA HOLDEN** (hereinafter "Plaintiff"), is an individual who is currently and was

at all relevant times herein a resident of the city of Washington, DC.  Plaintiff was an

active and licensed CPA or Certified Public Accountant during the time in which she

worked for Williams & Connolly LLP.

7.  Plaintiff alleges upon belief and determination that Defendant WC which acts as the

Plan Administrator, Plan Sponsor and Fiduciary for The Williams & Connolly LLP Group

Long-Term Disability (LTD) Plan, and The Williams & Connolly LLP Group Life Insurance

Plan and Any Other Plans That Make Up The Williams & Connolly LLP Benefits Plan ( a

Cafeteria Plan), is a Limited Liability Partnership organized and existing by virtue of the

laws of the District of Columbia, and may be served with process by service upon

Williams & Connolly LLP, located at 725 12th Street, NW, Washington, DC 20005, ATTN:

Jennifer Scott, Executive Director.

8.  Plaintiff alleges upon information and belief that Defendant **Unum Life Insurance**

**Company** is the party obligated to handle plan enrollment and monitor FMLA status and

participation, administer claims and payment of benefits as well as to administer claims

denials to employees due to their coverage under the **Williams & Connolly LLP Group**

**Long-Term Disability Plan** of which Plaintiff is a beneficiary. Unum also provides Risk

Management Services to Defendant WC related to this policy and is a Fiduciary.

9. Unum is the underwriter for Group Long Term Disability Policy Number 587561, issued

by Unum to Williams & Connolly LLP. This new service of Risk Management Services was

just added recently at the time of the last amendment although we are not sure of

exactly when that plan was finalized and put into action.

10. Plaintiff alleges upon information and belief that Defendant **Unum Life Insurance**

**Company** is the party obligated to handle plan enrollment and monitor any FMLA

participation, administer claims denials to employees due to their coverage under the

**Williams & Connolly LLP Life Insurance Plan,** of which Plaintiff is a beneficiary.

Defendant Unum also provides Risk Management Services to Defendant WC related to

this policy.

11. Unum is the underwriter for Group Life Policy Number 209934, issued by Unum to

Williams & Connolly LLP.

12. **Unum** is an insurance company authorized to transact the business of insurance in the

City of Washington DC, and may be served with process through the Commissioner of

the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway,

Suite 660, Nashville, Tennessee 37243-1131.

13. All of the acts and/or failures to act alleged herein were duly performed by and/or are

attributable to Defendants, individually, jointly or acting by and through their fiduciary

agents and employees.

14. Said acts and/or failures to act were within the scope of any agency or employment, or were ratified by Defendants.

## II. FACTUAL BACKGROUND

15. Williams & Connolly LLP is a law firm located in Washington, DC.

16. Plaintiff was employed by Williams & Connolly LLP (Defendant) as the Deputy Director of Finance for 19 ½ years. Plaintiff began working as the Assistant Controller for Defendant WC's law firm on March 24, 1997. Plaintiff was promoted to the position of Deputy Director of Finance on or around January 1, 2005. Plaintiff was often recognized for her hard work, dedication and loyalty to her employer. She served as a valued employee in the firm for many years.

17. Williams & Connolly LLP maintained and **maintains group long-term disability insurance** for the benefit of employees, funded by Group Insurance Policy No. 587561, issued by Unum to Williams & Connolly LLP.

18. Williams & Connolly LLP maintained and maintains **group life insurance for** the benefit of its employees, funded by Group Insurance Policy No. 209394, issued by Unum to Williams & Connolly LLP. That life insurance policy provides for ongoing coverage with waiver of premiums in the event of disability.

19. Williams & Connolly's provision of group insurance coverage constitutes an ERISA welfare benefit plan.

20. Plaintiff is a participant or beneficiary of the Plan and is covered by the policies that provide long term disability and life insurance benefits under the Plan.

21. Defendant Unum, is the Claims Administrator for the Williams & Connolly LLP's Long-

Term Disability Plan and the  Williams & Connolly LLP Group Life Insurance Plan and is

responsible for ensuring that the proper version of a "plan" is enforced on behalf of a

participant and that valid documentation is used to support all representations

regarding a claim. Unum is also responsible for ensuring that proper and timely FMLA

Designation Notices are returned to them as gatekeeper so they may make a legal

determination that a participant is covered by "FMLA" prior to enforcing the "FMLA

clause," if applicable, which now requires that an employee's benefits be cut off at the

end of FMLA. Unum has a very critical fiduciary role to play here with a duty to the plan

participants and yet appears to have a conflict of interest in that Unum also provides

Risk Management Services to Williams & Connolly LLP as of the most recent amendment

to the group disability plan, Amendment No. 19, a plan that I presume was made

retroactive to June of 2014. It is unknown when the amendment was actually prepared.

It is a known fact that the plan was never distributed to participants at large. Only if you

request a copy will you be given one.

22. 29 USC Section 2611(4)(A)(ii)(I) provides that the term "employer" encompasses any

person who acts, directly or indirectly, in the interest of an employer to any of the

employees of such employer" and, accordingly, Unum is a proper defendant in this case.

23. Plaintiff does have a related case filed in the Eastern U.S. District Court of Tennessee for

'Benefits Due,' specifically for long-term disability benefits and life insurance benefits

which is now under consideration by the U.S. District Court in Tennessee, but this

separate private case is being filed now due to Interference by the defendants under
FMLA, ERISA, and ADA.

24. On August 13, 2015, Plaintiff spoke with Sandy Reynolds, the HR Manager, about the
need to take leave to resolve her serious medical condition and Ms. Reynold's highly
recommended that Plaintiff take FMLA leave instead of just vacation because of the
protections that it affords one. Ms. Reynold's gave Plaintiff an FMLA request form to fill
out.

25. Plaintiff ceased work effective August 15, 2015, due to anxiety and depression.

26. On August 21, 2015, Plaintiff sent Ingram Barlow, her boss, an email message stating "I
know you will be out early next week, but just know I will be covering things for you. See
you on Thursday when you return." Laurie Jackson responded by phone telling me to
wait until I am better. "Make sure you are okay. You have to do [what you have to do].
Let them decide. [You are] FMLA-protected."

27. On 9/22/15, Defendant Unum's notes reflect that Defendant Unum was stating the
following about what Defendant WC said: "ER asked that I remind EE that she does not
have to go into work on Friday." Friday was 9/25/15 and Plaintiff's vacation was to have
run out around 9/24/15. Defendant WC was somehow aware that Plaintiff was
concerned that she might be fired by Friday 9/25/15 if she wasn't approved for short-
term disability benefits as she hadn't gotten FMLA approval or short-term disability
approval and her accrued vacation balance was running low. Interestingly, by the next
day on 9/23/15, Plaintiff's short-term disability benefits were approved through
9/24/15.

28. Defendant Unum in their short-term disability plan notes on 9/22/15 makes clear that Defendant WC knows how sick that Plaintiff is stating in the notes Candace Walsh writes, "ER...reported that EE doesn't seem to be in any condition to be working at this time," but just a month later that attitude changes as you will note below.

29. Not quite one month later on 10/14/15, Defendant WC is shown in Unum's short-term disability notes to be pressuring Unum to not extend Plaintiff's short-term disability benefits any longer as Defendant WC told Candace Walsh to "leave EE a clear message about her claim not being extended. I told EE I do leave clear messages advising what is needed." Candace Walsh didn't seem to like another party interjecting themselves in her business while she told Laurie Jackson that she does leave clear messages advising what is needed and in this case she went ahead and approved the benefits despite pressure from the Plan Sponsor, Plan Administrator and Fiduciary. Plaintiff thought that Defendant WC was her fiduciary and supposed to be encouraging of appropriate and needed benefits.

30. **MISREPRESENTED FMLA LEAVE AND DOCUMENTS WITHHELD** - Plaintiff took leave due to these conditions under the Family and Medical Leave Act to determine what was causing her serious health condition after being steered in that direction by Sandy Reynolds of HR. Plaintiff had not seen any doctors at the time that she spoke with Ms. Reynolds. Ms. Reynolds had promises of job and benefit protections and lured Plaintiff into FMLA leave when she could have just taken vacation time. Based on these initial promises, Plaintiff went ahead and completed the FMLA request form. Sadly, after signing the form the HR Department had very little communication with Plaintiff and

Plaintiff was never told when FMLA would begin or end or what would happen after

FMLA ended. Plaintiff was not given any information on the FMLA leave. Regarding the

excerpt from Amendment No. 18 that adds the FMLA Clause which ends all benefits

once FMLA is over, Plaintiff never received any notice or documentation from the HR

department notifying her that FMLA was actually approved. There was never any

agreement or understanding about how benefits would work. Plaintiff should have

received a Designation Notice within 5 days of 9/4/15 when all information from two

doctors, Dr. Fischer and Dr. Chang, would have been received, but she didn't.

Plaintiff was sorely treated by Defendant WC under FMLA. It was only way after the fact

in 2019 that Plaintiff found that none of the proper notifications were provided to her

including a FMLA General Notice, the FMLA Designation Notice, the FMLA Eligibility

Notice, the FMLA Rights & Responsibilities Notice, the FMLA Retroactive Designation

Notice nor was a FMLA Handbook provided. You couldn't be kept more in the dark than

Defendant WC kept this Plaintiff, and these occurrences happened despite Defendant

WC knowing that Plaintiff has a serious illness which requires HR to "bear the burden of

proof" and to act in a heightened manner to ensure Plaintiff gets all of the information

that she needs. An employee who provides notice to HR of a medical condition that is,

or is likely to be, a FMLA-qualifying condition  - even if that notice does not strictly

comply with the employer's FMLA policy – will shift the burden to the employer of (1)

informing the employee of any applicable FMLA rights, and (2) how to exercise those

right *(See Reeder vs. County of Wayne, Michigan)*. When Plaintiff asked HR for a copy

of the Long-Term Disability Plan Summary Plan Description around November 2015, she

was told that she would have to wait until after the Benefits Fair on November 18, 2015 to receive a copy. It turns out that this Summary Plan Description for the LTD Plan contained very important information that Plaintiff had not been given about what happens to benefits when FMLA ends and the fact that they come to an abrupt halt and cease. When the Summary Plan Description of the LTD Plan was provided sometime after that date, it was not complete and sadly, it omitted a key page that covered a material reduction in benefits that wasn't discovered by Plaintiff until sometime after the second LTD denial on 9/30/16. The page omitted and concealed was the single most important page, that being page EMPLOYER-3, which contained the language as follows:

"***WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS POLICY WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?*** *We will continue the employee's coverage in accordance with the policyholder's Human Resource policy on family and medical leaves of absence if premium payments continue and the policyholder approved the employee's leave in writing. Coverage will be continued until the end of the later of: 1. The leave period required by the federal Family and Medical Leave Act of 1993 and any amendments; or 2. The leave period required by applicable state law. If the policyholder's Human Resource policy doesn't provide for continuation of an employee's coverage during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment. We will not: apply a new waiting period; apply a new pre-existing conditions exclusion; or require evidence of insurability.*"

Did you notice that in the boldface heading that it speaks of an **EMPLOYEE'S COVERAGE**? Makes Plaintiff wonder why Defendant WC and Defendant Unum would place this information under the EMPLOYER pages and not the EMPLOYEE pages. It doesn't make any sense as this is crucial information for the employee to have unless it is done intentionally to mislead and misrepresent. Plaintiff was certainly caught off-guard with this information which would have notified Plaintiff of a material reduction in benefits that could be expected at the end of FMLA. Plaintiff wasn't told this information anywhere else along the way. Apparently, when Defendant WC and Defendant Unum appear to have strategically created this Summary Plan Description for Employees, they didn't care whether a long-term disability plan participant might need to know when FMLA would end and what would happen when it does end.  Of course, this was an intentional act of omission. This page clearly should have been marked as an EMPLOYEE page because the contents reveal a material reduction (100%) in benefits at the end of FMLA that was not explained anywhere else and ERISA requires that all material reductions in plan benefits be spelled out in the Summary Plan Description and not just the Plan Document. Plaintiff believes that the treatment that she has received throughout the FMLA process should lead to her FMLA being deemed "FMLA DENIED," but with full protections going to the participant/plaintiff and then restore the lost benefits to the Plaintiff and he family.

**CONCEALMENT OF FMLA CLAUSE IN THE SUMMARY PLAN DESCRIPTION OF THE LTD PLAN** - Then after Plaintiff's requesting the Summary Plan Description for the LTD Plan on November 16, 2015 in an email, Laurie Jackson suggested that "The Benefits Fair has

not happened yet. It is scheduled for this Wednesday November 18, 2015. I will mail you

the open enrollment memo as soon as it is finalized, as well as the group long-term

disability summary plan description." Plaintiff did not make a record of when the

summary plan description was received, but it was some time after November 18, 2015.

It is interesting that more than three months after Plaintiff was told that she should

apply for FMLA and long-term disability, she had no information on FMLA and still had

to wait to get a summary plan description for the long-term disability plan. Then when

she did receive the summary plan description from Defendant WC, it was discovered

later that it was missing the material retroactive plan change, the FMLA clause, that was

made in the 2010 retroactive amendment, amendment no. 18. Plaintiff believes that

this clause that allows for a material reduction or 100% reduction in benefits was

intentionally concealed to delay its being found until after its damage was done. This

FMLA clause was essentially the "Trojan Horse" that both Defendant WC and Unum did

not want Plaintiff to know about. This alleged concealment represents Interference of

ERISA Rights Defendants. Clearly, the Defendants did not want Plaintiff to be aware that

her benefits would be ending on the last day of FMLA or they would not have concealed

such employee page in with the employer pages of the summary plan description. Nor

did they want Plaintiff to know what the last day of FMLA was as they did not want her

to return. Defendant WC and Defendant Unum worked together to keep Plaintiff in the

dark regarding FMLA and the related ERISA plans.

The decision to rescind coverage, based upon an improper amendment #18 that was

never distributed to participants in a timely manner; that was concealed from Plaintiff in

the Summary Plan Description of the LTD Plan; and that was made effective by way of a false FMLA designation never provided to Plaintiff, was wrong. The decisions to deny benefits based on that wrongful rescission were improper under the terms of the Plans. The decisions to deny benefits and decision-making processes were mired in Bad Faith Insurance Dealing and Self-Dealing.

**BACKDATED AND CONCEALED AMENDMENT WITH FMLA CLAUSE ENDING BENEFITS AT END OF FMLA** - The reason for Unum's denial on 9/30/16 was that, while they considered Plaintiff disabled in mid-July 2016, they stated that she no longer had coverage as it was rescinded on 9/28/16, just two days before the approval would have otherwise been made, all the way back to 12/10/15. This FMLA clause ending benefits at the end of FMLA was added to the Plan through a backdated amendment made sometime after 2013 (because in 2013 the firm handed Plaintiff a 2008 version of the Plan as the effective plan at the time that did not contain this clause) and made effective all the way back to April 1, 2010. However, this plan amendment was never distributed to Participants and when a Summary Plan Description of the Plan was provided, it concealed the clause by leaving it out. ERISA requires that all material reductions in plan benefits be included in the Summary Plan Description and cannot just be left in the Plan because this is important information for Participants to know in order to make proper plans.

31. Plaintiff was not allowed by Defendant WC to use her accrued vacation except as Defendant WC demanded. She was only allowed to utilize two weeks of vacation and

the rest was required to be held until termination. This is a violation under the Americans With Disabilities Act.

32. Plaintiff filed a timely application for long-term disability benefits under the Plan on or around November 9, 2015.

33. That application for benefits was denied by letter dated January 8, 2016 for medical reasons.

34. **FMLA END FINALLY ANNOUNCED** - On January 13, 2016, Defendant WC's HR Director, Karen Gregory, sent an email to Plaintiff letting her know that her FMLA had now ended. However, Plaintiff had never been told that FMLA had ever started. Even this email was approximately one month after Defendant WC says that FMLA had ended on 12/10/15. Defendant Unum did not even bother to mention that FMLA was over in their insurance denial letter of 1/8/16 either. Defendant WC didn't provide an FMLA end date either. Nor did Defendant WC provide any information to Plaintiff as to what might have changed now that "FMLA" was now over, except that Plaintiff was told that the firm could not wait any longer and they were going to begin advertising to fill her position. .

35. Plaintiff's job was given away in January 2016 without an interactive process and during Plaintiff's real FMLA period as properly calculated.

36. Meanwhile, Plaintiff had assumed that she was being kept on the benefits rolls for long-term disability and life insurance coverage as was contractually agreed to by Defendant Unum and Defendant WC, and since she had not heard or seen anything to the contrary.

37. Plaintiff timely appealed this LTD denial decision.

38. **RESCINDING OF PLAINTIFF'S FMLA BENEFITS BASED UPON TWO KEY FALSE AND IMPROPER ITEMS: A NON-EXISTENT FMLA DESIGNATION NOTICE AND AN UNDISTRIBUTED FMLA POLICY ENDING BENEFITS:** On 9/28/16, two days before Defendant Unum was going to make their decision regarding Plaintiff's LTD benefit, Defendant WC and Defendant Unum agreed although somewhat hesitantly as shown in the Unum LTD notes that Plaintiff's FMLA was over on 12/10/15 and that her fully paid LTD coverage should now be rescinded going back nine months to 12/10/15. Rescinding in this manner was going to cause the Plaintiff to lose her LTD benefits so it was a major step to take. Plaintiff had been found to have a disability and if Plaintiff had LTD coverage then she would be approved, and if they rescinded it then she would not. Plaintiff believes that the hesitancy over moving forward with the FMLA end date was because there appears to have been no substantive documentation regarding such participation and such end date as would be typical of an FMLA case; the plan amendment invoking the rescission had been hastily put together and backdated to 2010 and the amendment #18 and #19 had never been distributed to plan participants within the 210 day period that ERISA gives a plan and even the Summary Plan Description of the LTD plan that was given to the Plaintiff specifically omitted any reference to the FMLA clause. So there really was no clear plan language known to the participants, and specifically not for this one, to cause this clause to be enforced on the Plaintiff. So there were many reasons for Defendants to be concerned as is echoed in the Unum LTD notes of 9/28/16. When reading the notes, you will see how Amy Williams and Laurie Jackson keep going back to their minimalist records and checking

while probably buying time and looking for more authorizations to move forward in the background. Normally, an FMLA participant would be given the decency of having an FMLA Designation Notice and this was a requirement the last time Plaintiff checked, especially if a participant is harmed in any way.  However, in this case, a Designation Notice does not seem to exist and Plaintiff can vouch that she never received one. Despite this lack of a Designation Notice or even a Retroactive Designation Notice which is like the FMLA contract confirming the FMLA dates of Plaintiff and establishing the existence of the program, Defendant WC and Defendant Unum made the decision to move forward to rescind Plaintiff's benefits in an unprofessional and might I say fraudulent manner.  Amy Williams of Defendant Unum referring to Laurie Jackson of Defendant WC said in the LTD notes of Defendant, "She said that she researched her system and verified the last day FMLA approved was December 10, 2015, so as of 12/11/15, she had no more FMLA. ER said they will likely ask for credit on premiums beyond same date." Plaintiff wonders why the Designation Notice was not being referred to instead of "her system." That's because there wasn't one and FMLA was never effectively ratified. This is not how FMLA is supposed to be administered. This is against FMLA regulations. In fact, Laurie Jackson says in the notes, "Laurie advised the insured's FMLA ran concurrent with her STD and she reached the max amount of FMLA hours as of 12/11/2015.  She also confirmed premiums were paid through this date." This is another error. Defendant WC ran Plaintiff's FMLA concurrent with her short-term disability benefit even though they never had a FMLA Designation Notice sent in a timely manner to the Plaintiff. This goes against FMA rules and regulations if you don't

bother to spell everything out in a Designation Notice. This means that Plaintiff should have FMLA for a longer period than Defendant WC and Defendant Unum thought or cared to admit. In fact, on 9/22/15 when Plaintiff wrote to her attorney M. Riselli, she wrote that she was afraid of being fired for lack of short-term disability approval and her vacation was about to run out on 9/25/15. Plaintiff should have known that if she had FMLA that there should have been no reason for concern as she would still have the job protection, but Plaintiff knew that she had never heard back from Laurie Jackson, the person who administers the FMLA and Plaintiff never believed that the FMLA had been made effective. Plaintiff only knew that she had been given verbal approval to take some time off and Plaintiff knew that she was being charged vacation hours for her time off while she was waiting for short-term disability to kick in. She didn't need FMLA for that. Additionally, Plaintiff did not know anything about FMLA because she had not been given a single piece of information on FMLA besides the FMLA Request form and it says very little. None of the required notices had been given to her to read. Plaintiff had essentially made an offer to have FMLA when she signed the FMLA request despite not being informed at that point, but because Defendant WC did not send a FMLA Designation Notice in a timely manner five days after they had received all of the necessary paperwork, it was never ratified. The Designation Notice had not been received and Plaintiff had been harmed. Defendant WC and Defendant Unum should have never so flippantly rescinded Ms. Holden's coverage in the Williams & Connolly LLP Group Long-Term Disability Plan and in the Williams & Connolly LLP Group Life Insurance Plan.

39. Around August 2016, Plaintiff was diagnosed with Neurological Disorder.

40. Nevertheless, by letter dated September 30, 2016, Unum upheld its denial, finding that Plaintiff had become disabled by July 2016, but was not disabled prior to that, when her coverage was still in force. However, the reduction in benefit coverage was due to that backdated amendment #18 that was dated April 1, 2010 but just put into place in 2014 or 2015. The reduction in benefit coverage was due to Plan Amendment #18 and #19 that were never distributed to the plan participants. The reduction in benefit coverage was due to that concealed FMLA clause in the Summary Plan Description for the LTD plan given to Plaintiff in the Fall of 2015 to keep her in the dark. The reduction in benefit coverage was not based upon the clear and plain language of the plan that was effective at that time. This reduction in benefit coverage was based upon a lie. Plaintiff should have received coverage.

41. Plaintiff was terminated without an interactive process by employer on 10/5/16 which is a violation of the ADA.

42. **IMPROPER FMLA END DATE:** Much interference has occurred in this matter and that is what this case is about. One area of **FMLA interference** happened when Defendant WC miscalculated the FMLA end date of Plaintiff. The FMLA end date calculated by Defendant WC was almost four months short of what it should be. Defendant WC says that the FMLA end date is 12/10/15 and Plaintiff says that the FMLA end date is 4/7/16. The reason for the difference is because short-term disability leave cannot be started until it is approved and Defendant WC effectively started it right away through the usage of Plaintiff's accrued vacation balance and then reversing the vacation usage once

the short-term disability benefits were approved. However, this is not proper. FMLA

regulations state that the short-term disability benefits must be approved and available

before they can be paid. So there can be no recapture of past vacation days in order to

speed up the FMLA/Exit process. Also, Defendant WC is trying to run the short-term

disability leave concurrent with the FMLA leave and you cannot do that if there is no

FMLA Designation Notice qualifying the leave. This is how Plaintiff arrives at a FMLA end

date that is almost 4 months later than that of Defendant WC.

43. **ADA Interference** – Plaintiff was not allowed to use her accrued vacation as it is

considered "active employment" and could have helped her to gain a benefit in the LTD

and Life Insurance plans prior to being terminated if she had also been given the benefit

of an interactive process. Instead, five days after Plaintiff's LTD benefit was denied,

Plaintiff received a letter from her employer informing her of her termination and LTD

denial all at the same time. The letter from Defendant Unum came the next day.

## CAUSES OF ACTION

44. Plaintiff seeks redress as a result of Defendants' actions, as follows:

## COUNT I – INTERFERENCE WITH THE EXERCISE OF FMLA

45. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

46. **INTERFERING WITH, RESTRAINING, OR DENYING THE EXERCISE OF FMLA**

According to the Court, an FMLA interference claim has only two requirements: (1) that the employer somehow interfered, restrained, or denied the exercise of FMLA rights, and (2) that the interference directly resulted in monetary loss to the employee.

On August 26, 2015, Plaintiff needing to take some time off for a serious medical condition completed the FMLA Request form and returned it to Laurie Jackson, the Benefits Administrator at Williams & Connolly LLP, as had been encouraged. For some reason Defendant WC did not seem to want to just take regular vacation. Defendant WC through Sandy Reynolds basically lured Plaintiff into FMLA with promises of job and benefit protection. Plaintiff had not been to any doctors yet, but was told that she needed to see two and get a medical diagnosis. Plaintiff made sure to see two doctors as was requested and have them complete the medical certifications. While Plaintiff did everything necessary to meet the requirements for FMLA, she never received any individualized notifications about FMLA such as the Designation Notice, the Eligibility Notice, the Rights & Responsibilities Notice or the Retroactive Designation Notice, or the FMLA Handbook, nor offered any type of leave agreement or be provided with any of the various employer plans' information that relates to FMLA. Plaintiff knew very little about what FMA even was. Clearly, FMLA was misrepresented to Plaintiff as you will see in the end it did not provide either job protection or benefit protection. Plaintiff's job was given away during her FMLA period before she even knew whether or not she would be able to return. Plaintiff has still not received a Designation Notice or Retroactive Designation Notice or any of the required individualized notices. Plaintiff

was left completely in the dark as to how FMLA worked and what her rights and responsibilities were under FMLA. This is despite Plaintiff asking for information and requesting in an email to Laurie Jackson on 11/12/15 that the Firm "please let me know any changes which you are aware of that I should also know about."

By virtue of Defendant WC never sending Plaintiff an FMLA Designation Notice qualifying her leave as FMLA leave and Plaintiff not getting any of the requisite notices and related employer-provided plan information and Plaintiff suffering harm from these actions or lack thereof; Plaintiff was prejudiced by a lack of FMLA notice. Plaintiff believes that she was denied FMLA leave. Plaintiff was never officially told she was approved for FMLA; was never given her FMLA end date until after her second LTD denial of LTD benefits which was based upon that FMLA end date; was never provided any type of interaction prior to being terminated after FMLA and ADA leave. While yes, there was a passage of time encompassing what should have been FMLA leave, Defendant WC's HR Department did not meet the requirements of the DOL Wage and Hour Division with respect to their handling of the FMLA leave and harm was done. Plaintiff lost her long-term disability benefits and life insurance because the FMLA clause amendment was backdated and its summary plan description was concealed from Plaintiff. The FMLA clause requires that all benefits cease upon the end of FMLA, but this appears to be something new that the firm is doing and there was some sort of an attempt to keep Plaintiff from knowing about it.

As a direct and proximate result of the aforementioned interference exposed through FMLA denial and restraint by the actions of Defendant WC and Defendant Unum in

failing to provide benefits for Plaintiff's disability, Plaintiff has been **damaged in the amount of $1,370,636 in the LTD Plan and $337,535 in the Life Insurance Plan.** In the Kalamazoo County Road Commission case, it illustrates that employer will lose FMLA cases due to misrepresentation if the employee handbook is wrong "on the law" or is missing information. In this case, there was no FMLA handbook provided. This was truly a lean and mean FMLA program without much to offer.

## COUNT II FMLA NOTICE VIOLATIONS 29 CFR 825.300

47. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

48. **FMLA NOTICE VIOLATIONS –** Under the FMLA regulations, by being an employer required to offer FMLA where applicable, it is incumbent on Defendant WC to comply with the FMLA regulations and therefore Defendant WC was obligated to provide Plaintiff with all of the FMLA Rights and Protections that the law allows and that means Plaintiff being given the opportunity to be fully informed by way of the FMLA notifications mandated in the law, as well as be given any employer-provided information that relates to FMLA, i.e. FMLA Handbook, Summary Plan Descriptions for the Cafeteria Plan, Summary Plan Descriptions for all of the employee health and welfare benefit plans which are impacted by FMLA, such as health, long-term disability and life insurance and any other pertinent information. To usurp these regulations, allows for potential manipulation, deception and obfuscation by Defendant WC and its affiliates like Defendant Unum as we have in this case.

Defendant WC failed to provide the requisite individualized notifications required by FMLA regulations, including the Designation Notice, the Eligibility Notice, The Rights & Responsibilities Notice and the Retroactive Designation Notice. ***29 CFR Section 825.300 – Employer Notice Requirements***. These notifications essentially represent the contract that is FMLA. Without receipt of the notifications, the Plaintiff is left at the mercy of her employer to do the right thing.

**FINANCIAL HARM ARISING FROM WITHHOLDING OF NOTICES:** Plaintiff was harmed financially by the lack of all of these aforementioned notices. The withholding of all of the notifications and documents that pertain to Plaintiff's alleged FMLA period allowed for Defendant WC to interfere with Plaintiff's FMLA rights and at the same time have possession over the documents and the opportunity to continue to change or modify the information and work on retroactive changes to implement a strategy to fully insure that Defendant WC and Defendant Unum would not be subjected to providing long-term disability benefits to the Plaintiff. Since Defendant WC did not ever lay out the contractual terms of FMLA and how it interplayed with other plans during the FMLA period and the unpaid leave period, Defendant WC and Defendant Unum were able to continue to make modifications to fit the situation or just continue to withhold important information. Despite Plaintiff first being told about FMLA and long-term disability coverage on August 13, 2015 and being encouraged to apply for FMLA, she did not receive any information on FMLA for her records except for an FMLA request form to complete.

Plaintiff's harm from the lack of proper FMLA individualized notifications such as the

Designation Notice, the Eligibility Notice, the Rights & Responsibilities Notice, the

Retroactive Designation Notice and the Employer-FMLA related documents was realized

when she found out the truth about what had been concealed from her for so long. Had

Plaintiff known of the FMLA dates, she could have better planned her leave such that

she would not have ended up in this situation. On or around 10/7/16, Plaintiff received

the second LTD denial letter from Unum and found that the denial was due to a lack of

coverage as a result of the end of FMLA something that Plaintiff was totally unaware of.

Plaintiff later found in the Unum notes that there was a coverage rescission done on her

behalf that had just occurred on 9/28/16, something Plaintiff had never been informed

of. The rescission went back retroactively nine months to 12/10/15, costing Plaintiff

financially in substantial lost benefits for both long-term disability benefits (about to be

approved in two days) and life insurance coverage to protect her family. Plaintiff had no

idea that her benefits ended at the end of FMLA as this information was concealed from

her when the Summary Plan Description was sent to her around late November 2015.

Additionally, the Plan Amendment that created this FMLA Clause was Plan Amendment

#18 and it appears to have been created just before Plaintiff's long-term disability

application and backdated about four years to April 1, 2010.

**WOULD PROPER FMLA NOTIFICATIONS HAVE EVEN MATTERED?** The answer is yes!

Let's pretend for a moment that Plan Amendment #18 of the Williams & Connolly LLP

Group Long-Term Disability plan had been created properly to include the FMLA clause,

and let's pretend that the clear language of the policy had been properly distributed to

plan participants and that Plaintiff had been given all of the proper FMLA notifications including a FMLA Designation Notice reflecting the FMLA dates; had Plaintiff known upfront about the FMLA clause, and had all of the proper notifications otherwise, she would have known that "time was of the essence" and she could have managed her leave differently. She could have attempted to move much more quickly to have doctors complete their testing and diagnoses, possibly by going for in-patient hospital care, where the documentation and analysis can be better and handled by a team of doctors as opposed to just one. Damages TBD.

### COUNT III – Job Protection During FMLA

49. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

50. Plaintiff's job was not protected during her 12 weeks of FMLA as an invalid end date was used for FMLA. Defendant WC states that the FMLA end date is 12/10/15 and Plaintiff states that the FMLA end date is 4/7/16. The difference is due to Defendant WC using the Plaintiff's vacation pay for over a month in order to pay her once she went on leave and then once her short-term disability benefit became approved, Defendant WC reclassed the vacation pay back to its original balance and charged short-term disability thus speeding up the passage of FMLA time and, in effect, shorting the FMLA protections that the Plaintiff would have otherwise had. FMLA does not allow a company to do this. FMLA states that short-term disability pay must be "approved and available" before it can be used. Short-term disability pay was not approved until

9/23/15 and then did not get paid out until the next payroll that goes from 10/1/15-

10/15/15. Short-term disability pay goes from 10/1/15 until approximately 12/16/15.

Then FMLA starts on 12/17/15 and runs through 4/7/16. The reason that FMLA and

Short-Term Disability cannot run concurrently is because the employer appears to have

never prepared an FMLA Designation Form which is required in order to run the two

leaves concurrently and this definitely becomes an issue if the Plaintiff is harmed by the

FMLA process according to FMLA regulations. **29 CFR 825.207(d).**

As a result of all of this, Plaintiff's employer notified Plaintiff on January 13, 2016 that

"Due to business needs, we are unable to hold open your position any longer and will

proceed to fill it. You will remain on unpaid leave status for now." When Defendant WC

wrote this email, they apparently had not taken into consideration the FMLA rules on

when short-term disability must start and what an employer must do in order to run

FMLA leave concurrently with Short-Term Disability leave. Therefore, Defendant WC

gave away Plaintiff's position during her FMLA period, a period during which her job was

supposed to have been protected. **Damages for having given Plaintiff's job away during**

**its protected period remain to be determined.**

## COUNT IV – FMLA ACCRUED VACATION

51. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

52. Defendant WC miscalculated the FMLA end date of Plaintiff by ignoring the FMLA

regulations regarding when short-term disability payments can begin. FMLA says they can

only begin once approved. Defendant WC paid Plaintiff vacation pay initially and through

the end of September 2015 and then when her short-term disability payments were approved, they restored the vacation balance and called the earlier time short-term disability leave even though it really wasn't at all. To make matters worse, Defendant WC then ran FMLA concurrent with the adjusted short-term disability dates to further shorten Plaintiff's protected time. Running the two leaves concurrently would have been fine, but Defendant WC never provided Plaintiff with a Designation Notice. Plaintiff believes that a Designation Notice does not even exist. Because of the lack of notice, FMLA rules and regulations do not allow FMLA to run concurrent with short-term disability leave. The amount of accrued vacation that is due to Plaintiff according to the corrected FMLA end date is 53 hours for the additional days of FMLA that were accrued between December 10, 2015, the FMLA end date by Defendant WC and April 7, 2016, the correct date of FMLA based upon FMLA regulations. **This amounts to $6,115.**

## COUNT V – FMLA LIQUIDATED DAMAGES

53. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

54. The amount of liquidated damages determined thus far for FMLA amounts to $1,714,276 and is the sum of the lost LTD benefit, the lost life insurance benefit, and the lost vacation accrual.

## COUNT VI - ADA Violation re Not Being Allowed To Use Vacation During Medical Leave

55. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

56. To be protected by the ADA, one must have a disability, which is defined by the ADA as a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment. While Plaintiff was at the firm and as her health deteriorated, she was seen as having such an impairment which limits one or more major life activities. While on leave, Plaintiff was diagnosed with having a neurological disorder that substantially limits one or more major life activities.

**ACCRUED VACATION** - Around November 2015 and during Plaintiff's requested FMLA leave, Plaintiff inquired of Defendant WC's Benefits Administrator, Laurie Jackson, whether Plaintiff could elect to use her **remaining accrued vacation** of over one month's time as paid leave when other paid leave is exhausted. Ms. Jackson responded that It is not a policy of the firm to allow such, and Defendant WC must **hold the pay until termination** of Plaintiff's employment, but this was in violation of ADA regulations which allow an employee to use their own accrued paid vacation, as-needed, when an employee's disability necessitates it. The ADA statute related to not making reasonable accommodations to an employee with a disability can be found at *29 CFR Section 1630.9.*

## COUNT VII – ADA – TERMINATION WITHOUT AN INTERACTIVE PROCESS

57. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

58. Plaintiff was terminated from the position that she held for almost twenty years without an interactive process on the part of the firm.  Had Plaintiff been given the decency of

the interactive process along with the ability to use her own accrued vacation, then at

the end of her medical leave she could have used the vacation as "active employment"

in order to gain approval of the long-term disability insurance despite all of the other

roadblocks. Under the ADA, the employer still must engage in an interactive dialogue to

determine the feasibility of any medical leave, weighing the employee's need for leave

and its expected duration in the undue hardship analysis. Defendant WC did not include

Plaintiff in any discussions and also terminated without any interaction. Claim is for

termination without an interactive process while suffering a disability. Damages TBD.

### COUNT VIII – ADA – LACK OF ACCOMMODATION FOR TWENTY YEAR SERVICE AWARD

59. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

60. Plaintiff was terminated on October 5, 2016 without an interactive process and would

have reached her twenty-year anniversary with the firm on March 24, 2017, but in the

end Plaintiff was several months shy of her twenty-year service award of $20,000.

Instead of making accommodations due to Plaintiff's disabling condition, Defendant WC

planned ahead and decided to set up new rules on September 19, 2016 that said that as

of June 1, 2016 anyone that enters into LTD status shall no longer accrue any time

towards their service award. While Plaintiff never made it to LTD status, she was within

six months of achieving her 20-year and $20,000 service award, but had to forfeit it

entirely. Some other firms recognize a disability and the difficult situation that a person

can find themselves in through sickness and aging and they go ahead and make an

accommodation to help that person over the hurdle when that seems fair. Sometimes

ADA requires it. The ADA statute related to employers needing to make reasonable

accommodations to an employee with a disability can be found at *29 CFR Section*

*1630.9.* **Damages for lack of accommodation $20,000.**


**COUNT IX – FAILURE TO INFORM: MISSING SUMMARY PLAN DESCRIPTION FOR**

**COBRA PLAN AT TIME OF COBRA ELECTION**

61. Pursuant to the Consolidated Omnibus Budget Reconciliation Act, Defendant WC is

    required to provide a copy of the Summary Plan Description of the Choice Plus 100/80

    UnitedHealthcare PPO Active Plan which includes the COBRA rules. Plaintiff never

    received this information on or around October 5, 2016 when she was terminated, and

    instead did not receive the information until requesting it in 2019.


**COUNT X – INTERFERENCE WITH ERISA RIGHTS RE DISTRIBUTION OF**
**SUMMARY PLAN DESCRIPTIONS**

62. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

63. The allegations under ERISA include the following plans: Employee Benefit Welfare Plans

    under ERISA such as the Williams & Connolly LLP Group Long-Term Disability Plan, the

    Williams & Connolly LLP Group Life Insurance Plan, the Williams & Connolly LLP Choice

    Plus 100/80 United Healthcare PPO Active Plan, and the Williams & Connolly LLP

    Benefits Plan. Plaintiff's understanding is that ERISA requires that the plans be

distributed at plan inception; within 210 days after the end of a year in which a plan amendment is made effective and on a periodic basis thereafter. Plaintiff can vouch for this not being done for the last ten years that she was at the firm. **These plans have not been distributed according to ERISA guidelines. Damages TBD.**

## COUNT XI – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS RE DISTRIBUTION OF SUMMARY OF MATERIAL MODIFICATIONS

64. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein: **Summary of Material Modification have not been prepared and distributed according to ERISA guidelines for the Williams & Connolly LLP Long-Term Disability Plan.** This includes when a material reduction in benefits for the Controller Group occurred and the LTD benefit went from 100% to 60%, apparently. It is currently unknown when the reduction was actually made, but notice of it was not distributed to participants.  This also includes when a material reduction in benefits included in the Summary Plan Description for Amendment #18 made effective on April 1, 2010. This FMLA clause which affected those participating in FMLA now find their benefits terminated at the end of FMLA unbeknownst to them. None of these material changes or modifications were distributed to participants as required by ERISA. When Plaintiff asked Defendant WC for a copy of the Summary of Material Modifications for the LTD Plan, Karen Gregory of HR wrote Plaintiff in an email and stated that the firm doesn't have any documents by the name of Summary of Material Modifications. ." Instead of complying with ERISA, Defendant WC sought to keep this information to themselves. Concern for

participants finding out about these material reductions in benefits and wanting to

know why they were not told about the reduction in benefits is surely the reason why

Defendant WC demanded that Defendant Unum delete their original statements about

Plaintiff belonging in the "Controller Group" from the Unum long-term disability notes

which are supposed to be permanent and why one or both of these parties directed that

the CD-ROM's be modified to remove any reference to Ms. Holden being in the

Controller group, they did not want their Deputy Director of Finance who was a former

auditor to be looking into matters. **These are violations of the ERISA reporting**

**guidelines. Damages TBD.**


## COUNT XII - ERISA – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS  RE

## REPORTING OF MODIFICATIONS ON THE SUMMARY PLAN DESCRIPTION

65. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

66. When the firm prepares a new amendment, they arrange it so that a participant looking

at the Amendment doesn't see a listing of the changes made, but instead sees in each

case the following sentence: **"The entire policy is replaced by the policy attached to**

**this amendment."** This is not helpful at all to a participant who wants to know what

changed. **This is a violation of the ERISA reporting requirements as the material**

**modifications are required to be listed. Damages TBD.**


## COUNT XIII– INTERFERENCE WITH ERISA RIGHTS RE MISREPRESENTATION OF FMLA –

## SECTION 510

67. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

68. Plaintiff as never received a copy of a FMLA Designation Notice or a request for allowance of a Retroactive Designation. Plaintiff alleges that Defendant WC must have created some form of approval or designation notice that they did not provide to Plaintiff and passed that off as legitimate to Defendant Unum or just ignored the FMLA regulation altogether and omitted that step. Nonetheless, Plaintiff has never received either a FMLA Designation Notice or a FMLA Retroactive Designation Notice which she should be entitled to under the law if someone is claiming that she had FMLA leave. **This claim represents a misrepresentation or falsification of documents.**


**COUNT XIV – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS – SECTION 510 – BACKDATING OF RETROACTIVE PLAN AMENDMENTS BEYOND PROPER DATE**

69. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

70. With the backdating of Amendment #18 of the Williams & Connolly LLP Group Long-Term Disability Plan from being created sometime in 2014 or 2015 to being made effective on April 1, 2010, a serious breach occurred.  There is no good reason to back a plan amendment to a date so far removed from the present unless you are making an attempt to deceive. It appears that the Plan Sponsor was attempting to cover up the FMLA clause that was new to the plans, but made to look quite old. Besides this attempt, it appears that another plan amendment was likely backdated when the same plan reduced its benefit coverage percentage from 100% of pay to 60% of pay without

notifying all participants. Plaintiff has yet to see the plan amendment wherein this change occurs.

**COUNT XV – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS: RETROACTIVE PLAN MODIFICATION IN THE LTD PLAN CAUSING A MATERIAL REDUCTION IN BENEFITS TIED TO END OF FMLA WAS "CONCEALED" IN THE SUMMARY PLAN DESCRIPTION**

71. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

72. Around late November 2015, Defendant WC's Benefits Administrator, Laurie Jackson, provided Plaintiff with a copy of what she was told was the effective long-term disability plan Summary Plan Description to be used for her claim. However, now Plaintiff has come to realize that the copy of the Summary Plan Description for the Williams & Connolly LLP Group Long-Term Disability Plan that she was given did not include the "FMLA clause" or the modification related to the "material reduction in benefits" in Plan Amendment No. 18 which was prepared and made retroactive to 2010 despite appearing to have been prepared around 2015. Plaintiff only received a copy of Amendment No. 18 in the summer of 2019 when she made a request to Plaintiff's attorney in Tennessee to see if he could access the amendment made prior to Amendment No. 19. Unum did provide Plaintiff's attorney with a copy. Plaintiff had requested a copy of the effective Summary Plan Description in late 2013 for a personal insurance review by Plaintiff's insurance broker at Howard Phillips & Co. and was given a plan dated 2008 which did not contain the FMLA clause. This makes Plaintiff believe that the new LTD policy made effective retroactively to April 1, 2010 must have been

prepared in 2014 or most likely in 2015, at the earliest, and it would be improper to distribute a plan amendment that is made retroactive four to five years into the past. While Defendant WC never distributed their plan amendments for the Employee Benefit Welfare Plan to participants unless asked,it turns out, Defendant WC still had the responsibility to do so under ERISA and to prepare the amendments with that requirement in mind. While Plaintiff has never received a copy of the plan and plan amendment for the Williams & Connolly LLP Group Life Insurance Plan, Plaintiff has reason to believe that these same claims related to the group disability plan also relate to the group life insurance plan as coverage was also rescinded for the group life plan going back nine months to the end of FMLA leave.

Defendants conspired to conceal key and required ERISA information from the Plaintiff regarding when a material reduction in plan benefits would occur in the Williams & Connolly LLP Group Long-Term Disability Plan and in the Williams & Connolly LLP Group Life Insurance Plan and all other ERISA benefit plans at Williams & Connolly LLP. That key information is what has been termed the "FMLA Clause" which is located on page EMPLOYER-3 and has been omitted from the version sent to Plaintiff in the Fall of 2015 and in the Summer of 2019. Let me state that the EMPLOYER-3 page was included in a January 2016 version sent by Defendant Unum to Plaintiff's attorney. Plaintiff is not sure why there are two different versions and that she got the one with the omission. However, at the point that Plaintiff's attorney received his copy of the SPD, Defendants knew that FMLA was already over and Plaintiff would not get to see the reference to the material reduction in plan benefits at the end of FMLA until it was already too late to

take any kind of action. At this point, all the damage to Plaintiff would have been done.

In each of the versions sent to the Plaintiff, Defendant WC has sent to Plaintiff a version

that does not contain page EMPLOYER-3 despite the page referencing EMPLOYEE in its

header. The page is clearly meant for employees and because it references a material

reduction in plan benefits ERISA requires that it be a part of each Summary Plan

Description. When comparing the copy with the EMPLOYER-3 page showing versus the

copy where it is not included, even the TABLE OF CONTENTS has been modified on the

copy with the omission. It is modified so that there is absolutely no reference to page

EMPLOYER-3. Since Defendant Unum acts as Defendant WC's Risk Management

Consultant and provides Risk Management Services to Defendant WC, one can only

imagine that this might be one of the tricks up their sleeve that they have recently

implemented.

## COUNT XVI – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS – "WRONGFUL RESCISSION" OF LONG-TERM DISABILITY COVERAGE THROUGH FRAUDULENT INTERFERENCE WITH ERISA RIGHTS – SECTION 510

73. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

On 9/28/16, Defendant Unum and Defendant WC conspired to move forward with the

wrongful rescission of Plaintiff's long-term disability coverage. Because the rescission

was only two days away from the benefit otherwise being approved on 9/30/16, the

plan states that both parties are required to approve the rescission in that instance and

that is why this is a co-fiduciary interference with ERISA rights. The reason that the

rescission is wrongful is because of the following reasons: **a) <u>FMLA misrepresentation and concealment of required information</u> - FMLA was never properly approved and carried out and was not what Plaintiff was told it would be and should be considered effectively denied.** Plaintiff had no information on the FMLA program. She had no individualized notices such as the Designation Notice, the Eligibility Notice, the Rights and Responsibilities Notice and the Retroactive Designation Notice. See Plaintiff's email dated 9/22/15. Plaintiff thought she was about to be fired on 9/22/15, about four weeks into the FMLA, because she had been given no documentation of any sort that would have led her to believe that she had the protections of FMLA and that firing could have easily happened. Defendant WC just thought it would keep its options open for as long as it could and they didn't want to let Plaintiff know her FMLA dates or benefit information. Defendant's goal appears to have been to ensure that Plaintiff does not return to the office and they wanted her to depart without any long-term disability benefits. Plaintiff has been harmed by this lack of notice as she could have handled her leave differently if she had known that her benefits were all going to be stripped from her retroactively back to the last day of FMLA. There is no doubt that in reality FMLA was DENIED. **b)** Plaintiff was willing to attempt FMLA and, yes, she did sign a FMLA request form, but she didn't hear a peep from anyone after that and she apparently bought a bunch of lies because that is what she received back only **a LTD Summary Plan Description that contained key omissions confusing EMPLOYER with EMPLOYEE and placing what should be an EMPLOYEE page onto page EMPLOYER-3 by way of an attempt to conceal.** No participant should be treated in this manner. Plaintiff is horrified

that this law firm would treat her this way after a long history with the firm that Plaintiff

had thought had been a positive one. **c)** There are two plan amendments to the

Williams & Connolly LLP Group Long-Term Disability Plan were Amendments #18, dated

August 16, 2010, and   Amendment #19, dated June 26, 2014. Neither of these

amendments were properly distributed to Participants within 210 days after the end of

the year in which they were made effective so these amendments are not the plain and

clear language of the Plans according to ERISA. Even the copy the Plaintiff requested and

received was concealing material reductions in benefits, meaning a reduction of 100%,

that should have been included according to ERISA. **d) Suspicious Backdating of Plan**

**Amendment** – Also, it's very suspicious how in late 2013 when Plaintiff was having her

insurance broker Howard Phillips & Co assess her insurance coverage that Plaintiff

requested a current Summary Plan Description of the LTD Plan and received a copy

dated 10/16/2008, but in 2015 when Plaintiff was attempting to apply for long-term

disability benefits it turns out that there is a version of the LTD Plan dated April 1, 2010.

Why wouldn't Laurie Jackson have given me the April 1, 2010 version instead of a 2008

version which goes back an additional two years? A mistake? It's not because Ms.

Jackson made a mistake, it's very likely because there has been a new retroactive

agreement put together that was backdated to make it appear like it has been around

for longer than it really has been. Well, that is improper too because this version could

never have been distributed within 210 days after the end of the year in which the

Amendment was made effective. It's a mathematical impossibility because too much

time has already passed. So that is another reason why this Plan is unenforceable. Damages TBD.

**COUNT XVII – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS RE "WRONGFUL**

**DENIAL" OF LTD INSURANCE AND LIFE INSURANCE – SECTION 510**

74. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

75. Based upon the wrongful rescission of long-term disability benefits which Defendant WC and Defendant Unum engaged in, there was no doubt but that Defendant Unum, the Claims Administrator, was going to send Ms. Holden a denial letter regarding her long-term disability benefits. Defendant Unum did have one last opportunity to straighten out the matter, but decided to continue the charade and deny Ms. Holden and her family the benefits that she had worked for over almost twenty years to have just in case she ever needed them. Sadly, Defendant WC was aware of these circumstances and stood idly by. The wrongful denial is based upon the misrepresentations of FMLA, the withholding of summary plan descriptions from participants, the backdating of plan amendments to make them more obscure, the omission of pages in the summary plan descriptions concealing key information, and the wrongful rescission of Plaintiff's long-term disability benefits and her life insurance benefits. **Damages TBD.**

**COUNT XVIII – CO-FIDUCIARY INTERFERENCE WITH ERIA RIGHTS RE**

**CONCEALMENT OF PROPER CLASS DESCRIPTION AND CONCEALMENT OF 40%**

**REDUCTION IN WILLIAMS & CONNOLLY LLP GROUP LONG-TERM DISABILITY PLAN FOR**

**THE CONTROLLER GROUP – Section 510**

76. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

77.  Around November 2015, Plaintiff requested a copy of the claims activity notes from her

long-term disability file. This file was sent to Plaintiff in the format of CD-ROMs. When

Plaintiff received the CD-ROMs, she reviewed them and made a few copies of the pages

that she thought most useful. The page most interesting was where Unum had reviewed

her title and job description and then made the determination that Plaintiff should be

classified in the Controller Group. Plaintiff agreed with this classification as it made

complete sense and was in line with the hard work that Plaintiff was doing as Deputy

Director of Finance. Plaintiff was pleased with this because she had known since she

started with the Firm in 1997 that the Controller group was part of the group that would

get a 100% benefit if they were in need of and qualified for long-term disability benefits.

There were many groups like this and the determination was supposed to be based not

upon who you were, but be based upon your job description. This way you cannot be

discriminated against. However, by the next iteration of the claims activity notes that

Plaintiff received after Plaintiff was denied LTD benefits in January 2016, Unum was now

stating that Plaintiff should be in the **"All Employees Not Eligible In Another Group,"** a

group that only gets a 60% benefit. Any reference to Plaintiff being in the Controller

group was now gone. The only reference of interest related to this that Plaintiff could

find in the Unum notes was found on a page entitled **Claim Action Plan – Contractual –**

**Pre-Existing/C of C.** The items with information under Continuation of Coverage were

"Our Agreement Date of 4/1/2003;

Class Description – Our agreement: "All Employees not eligible in another group"

Minimum Hours – 22.5 hours

Then on the backside, under notes to file, it says:

Subject:  Attn: DBS:  PEG#6 confirmed

Priority: No

Status: Completed

Notes: 1**) OTC to ER for policy info @ 202-434-5604**

**ER advised that EE is classified under all other employees PEG#6**

Created by: Picard, Tyler

Create Date: 11/09/2015

Create Site: Portland

What Plaintiff gleens from this page of long-term disability plan claims activity notes

from Unum is that Laurie Jackson who can be found at the number in the notes, 202-

434-5604, contacted Defendant Unum to tell them that Plaintiff is to be in the "Other

Employee Group." Once again, Defendant WC appears to have pressured Defendant

Unum, the Claims Administrator, to do what is not in the best interest of the participant.

Defendant Unum had initially made the determination of what group that Plaintiff

should be in based upon her job description that Defendant WC gave to them.

Defendant Unum, Plaintiff believes, made the correct classification originally, but it

appears that because of pressure from Defendant WC, Defendant Unum has changed

their minds and placed Plaintiff into a lesser category. This is why there is a special

"contractual agreement" on 11/9/15 between the two on this point. Lastly, on this

point, Plaintiff should let the Court know that her CD-ROM was a read-writeable CD-

ROM it turns out and it was modified by somebody over the air waves to remove the

language that Plaintiff had originally seen and replace it with information stating that

Plaintiff will be in the "Other Employees" group. This is a lesson to all to never accept a

CD-ROM from an insurance company as they can have the information changed by a

stealth operator and then it is only your word against theirs.

Damages amount to $1,395,105.

## COUNT XVIV – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS – TAMPERING WITH PLAINTIFF'S CD-ROM WITH NOTES RECEIVED FROM UNUM

78. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

79. Plaintiff received a CD-ROM with notes from Unum around November 2015. She was

originally given a choice by Unum to have a paper version of the claims activity or a CD-

ROM and at the time Plaintiff thought that a CD-ROM would be a good idea. She no

longer believes that to be the case. However, there was only one bit of information on

the  CD that was of real interest and Plaintiff  printed out a few copies of the

information and that was the notes wherein Unum made clear that they had reviewed

my title and my job description and they had placed me into the **"Controller group"** as

they have the capacity to do so based on their position as Claims Administrator.

Apparently, Defendant WC blew up over this one because after that they went to great

lengths to remove any reference that could be found to those assertions, including on

my CD-ROM. It turns out that Plaintiff was sent a read-writable CD-ROM and,

apparently, one or both of these defendants went in and modified the language so that

Plaintiff could not reprint it as it had been before and modified the language so that

Unum's determinations about Plaintiff being classified in the Controller Group were missing. Additionally, Defendant Unum had to be involved because they also went in and modified the claims activity notes that they had provided me. There's an internal note included on the new version of claims activity notes that says something about their having locked down their system so that analysts can't make changes any longer. Well, regardless the information is no longer there, yet that does not change the fact that Plaintiff should be in the Controller group based upon the original belief of Unum. Plaintiff worked exceedingly hard in that role for almost twenty years and kept things in great order and I deserve to be in the correct group based on my job description and the heavy workload that I carried. Around the time of the changes in November of 2015, Unum changed my group to the "Other Employees" group and entered into a special contract with Unum regarding this change. So Unum and Williams & Connolly LLP have a contractual agreement to state that I should be in the Other Employees group. Plaintiff guesses that this is to document that ERISA came up with a different answer but was pressured into looking the other way against Plaintiff's best interests. Damages TBD.


## COUNT XX – INTERFERENCE WITH ERISA RIGHTS RE PRESSURING UNUM TO

## DENY COVERAGE – WC

80. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:


81. Defendant WC was caught in a breach of fiduciary duty on 10/14/15 when Laurie Jackson of HR asked Candace Walsh of Unum "that [she] leave EE a clear message about

her claim not being extended" on 10/14/15." A decision had not even been made yet

regarding payment, but Defendant WC was making their demands known.  Fortunately,

in this matter the Unum representative stated back to Laurie Jackson "I told ER I do

leave clear messages advising what is needed."  This representative made sure that

Plaintiff did receive her full short-term disability benefit as was required based on the

medical record. In this email that is contained in Defendant Unum's short-term disability

notes, it makes clear that Defendant WC is **putting pressure on Defendant Unum** to

deny further short-term disability claims. Plaintiff had already been approved for six

weeks of short-term disability for depression and anxiety at the point that Defendant

WC began pressuring Defendant Unum. There was only possible another seven weeks of

benefits, but Defendant WC did not want Plaintiff to have them. It's notable that just

three weeks before on 9/22/15, Defendant WC is noted as stating that "EE doesn't seem

to be in any condition to be working at this time."


**COUNT XXI – CO-FIDUCIARY BREACH OF FIDUCIARY DUTY FOR MISREPRESENTATION &**

**FALSIFICATION; CONCEALMENT; RESCISSION; AND BACKDATING**

82. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

83. Regarding Breach of Fiduciary Duty claims, the Williams & Connolly LLP Group Long-

Term Disability Plan states in each of its last three versions that Plan Fiduciaries must

make **prudent decisions** under what is known as the *Prudent Man Theory* under the

Plan. The Plan specifically states that "The people who operate your Plan, called

"*fiduciaries*" of the Plan, have a duty to do so prudently and in the interest of you and

other Plan participants and beneficiaries. No one, including your Employer or any other

person, may... discriminate against you in any way to prevent you from obtaining a

benefit or exercising your rights under ERISA."

The charges for Co-Fiduciary Breach of Contract for misrepresentation & falsification

(see Count XIX); concealment (see Count XIV); rescission (see Count XV) and backdating

(see Count XII) are the same as covered under Interference With ERISA Rights.

**PRAYER FOR RELIEF WHEREFORE, Plaintiff seeks the following relief:**

A finding in favor of Plaintiff against the Defendants and;

1. Count I – FMLA Restraint, Denial Interference Damages of $1,370,636 to recover for lost

   benefits in the Williams & Connolly LLP Group Long-Term Disability Plan; and damages

   for lost life insurance Damages $337,535

2. Count II – FMLA Notice Violations – Damages TBD

3. Count III - FMLA Job Protection Damages – Damages TBD;

4. Count IV - FMLA Accrued Vacation Not Paid Due to Incorrect FMLA End Date – Damages

   $6,115;

5. Count V - FMLA Liquidated Damages: Lost Long-term Disability Benefits FMLA and Lost

   Life Insurance Benefits and Accrued Vacation Not Paid Due to Incorrect FMLA End Date

   – Damages $1,714,286;

6. Count VI – ADA Violation Re Not Allowed To Use Vacation During Med Leave – Damages

   TBD;

7. Count VII – ADA Violation of Termination Without An Interactive Process – Damages TBD;

8. Count VIII – ADA Violation Re Lack of Accommodation Re Twenty Year Service Award – Damages $20,000;

9. Count IX – Consolidated Omnibus Budget Reconciliation Act ("COBRA") – Damages TBD;

10. Count X – Interference with ERISA Rights - Section 510 – WC **Failure to Distribute; Summary Plan Descriptions** in the W&C Employee Benefit Welfare Plans according to ERISA schedule – TBD;

11. Count XI – Co-Fiduciary Interference with ERISA Rights – Section 510 – **Failure to Distribute Summary of Material Modifications** for the W&C Employee Benefit Welfare Plans re material changes – Damages TBD;

12. Count XII – Co-Fiduciary Interference with ERISA Rights – Section 510 - **Reporting of Changes on the Summary Plan Description** – Participants are not being given the detail of the plan changes – Damages TBD;

13. Count XIII – Co-Fiduciary Interference with ERISA Rights **"Misrepresentation"** of FMLA and FMLA Designation Notice While Seeking LTD and Life Insurance – WC & Unum – Damages TBD;

14. Count XIV– Co-Fiduciary Interference with ERISA Rights – **"Backdating"** of the Group Long-Term Disability Plan Amendments – Damages TBD;

15. Count XV – Co-Fiduciary Interference with ERISA Rights – Section 510 – WC & Unum – Retroactive FMLA plan amendment for a material reduction in LTD plan benefits was **"Concealed"** in the Summary Plan Description through Omission – Damages TBD;

16. Count XVI – Co-Fiduciary Interference with ERISA Rights – Section 510 WC & Unum – **"Wrongful Rescission" of LTD coverage and Life insurance coverage** two days before it was to be approved otherwise – Damages TBD;

17. Count XVII – Interference with ERISA Rights – **"Wrongful Denial"** of LTD and Life Insurance – Unum – Damages TBD;

18. Count XVIII – Co-Fiduciary Interference with ERISA Rights – Section 510 – WC & Unum - **Concealment of Proper Class Description; Concealment of 40% Summary Plan Reduction of Benefits** in the Williams & Connolly LLP Group Long-Term Disability Plan re: Controller Group, Damages amount to $1,395,105;

19. Count XIX– Co-Fiduciary Interference with ERISA Rights – Section 510 – WC & Unum - **For Tampering With Plaintiff's CD-ROM** – Damages TBD;

20. Count XX – Interference with ERISA Rights – Section 510 – **Undue Influence by Defendant WC** when they put pressure onto Unum to tell Plaintiff in clear language that her [short-term disability] claim would not be extended when they clearly weren't prepared to do that – Damages TBD;

21. Count XXI – Co-Fiduciary Breach of Trust under ERISA for **Misrepresentation & Falsification** (Count XIX); **Concealment** (Count XIV); Rescission (Count XIV) and **Backdating of Plan Amendments** (Count XVII) – Damages TBD;

22. Plaintiff also seeks damages for emotional distress, if available – TBD;

23. Plaintiff also seeks punitive damages, if available – TBD;

24. Out of pocket costs – TBD;

25. Attorneys Fees – TBD.

**26. Total damages are estimated to be $4,843,677.**

84. Respectfully submitted

85. BY: _Lisa K Holden_

86. Lisa Holden,


87. Lisa K Holden, Pro Se
88. 720 North Carolina Avenue
89. Washington, DC 20003
90. (202) 823-2692

# Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by hand-delivery on January 13, 2020.

Williams & Connolly LLP

and

Unum Life Insurance Co.

*Lisa N. Heller*



**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **Consolidated and Amended Complaint** will be served by Certified Mail on the 14th of January, 2020 upon:

Williams & Connolly LLP

Attn: Jennifer Scott

725 12th Street, NW

Washington, DC  20005

     and

Unum Life Insurance  Company

Commissioner of the Tennessee Department of Commerce and Insurance

500 James Robertson Parkway, Suite 660

Nashville, Tennessee  37243-1131

*Lusa K Holden*

