Lisa Holden, Pro Se
720 North Carolina Avenue
Washington, DC 20003
202-823-2692

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LISA K. HOLDEN | ) | Case No.: 1:19-cv-03055 KBJ |
| **Plaintiff**, | ) | |
| | ) | |
| **vs**. | ) | |
| | ) | |
| WILLIAMS & CONNOLLY LLP, | ) | |
| and UNUM LIFE INSURANCE COMPANY | ) | |
| | ) | |
| **Defendants**, | ) | |
| | ) | |

_____

**First Amended Consolidated and Restated Complaint for the Loss of Benefits Suffered and the Enforcement of Rights under the Family and Medical Leave Act of 1993 ("FMLA") due to Interference and Retaliation; the Employee Retirement Income Security Act of 1974 ("ERISA") due to Interference and Retaliation; Americans with Disabilities Act of 1990 ("ADA") due to violations and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") due to violations;**

**Breach of Fiduciary Duty; Co-Breach of Fiduciary Duty and Breach of the Attorney-Client Relationship**

COMES NOW, Plaintiff, Lisa Holden, and makes the following presentations to the Court

in this First Amended Consolidated and Restated Complaint submitted under Rule 15 (a)(1)(A)

within 21 days of serving the original consolidated filing for the purpose of obtaining relief from

violations, interference and retaliation on the part of Defendant Williams & Connolly LLP

(hereinafter "Defendant WC") and their third-party insurance provider known as Unum

Insurance Company (hereinafter "Defendant Unum") under the Family and Medical Leave Act

of 1974 ("FMLA"); under the Employee Retirement Income Security Act of 1974 ("ERISA");

under the Americans With Disabilities Act of 1990 ("ADA"), under the Consolidated Omnibus

Budget Reconciliation Act of 1985  ("COBRA"), as well as acts of Breach of Fiduciary Duty; Co-

Breach of Fiduciary Duty and Breach of the Attorney-Client Relationship. The subject plans

involved in these matters which are sponsored by Williams & Connolly LLP are as follows:

Williams & Connolly LLP Group Long-Term Disability Plan; Williams & Connolly LLP Group Life

Insurance Plan, the Williams & Connolly LLP Choice Plus 100/80 UnitedHealthcare PPO Active

Plan, as well as the Williams & Connolly LLP Benefits Plan.

## JURISDICTION AND VENUE

1.  **FMLA INTERFERENCE AND RETALIATION CLAIMS:** This Courts' jurisdiction over the

    Plaintiff's claim for relief under the Family and Medical Leave Act ("FMLA") is invoked

    under federal question jurisdiction pursuant to 28 U.S.C. Section 1331 and under the

    express jurisdiction found under 29 U.S.C., Chapter 28 Family and Medical Leave Act

    ("FMLA"). Plaintiff's claims relate to FMLA Interference and Retaliation and are covered

    by Section 107 of the "FMLA" and 29 CFR section 825.220 of the FMLA regulations-

    Protection for employees who request leave or otherwise assert FMLA rights. 29 CFR

    Section 825.400 allows one to bring a suit where one resides. The statute of limitations

    for regular claims is two years from the last date in violation. The statute of limitations

for "willful" claims of FMLA interference is three years from the last event in violation. Plaintiff contends that Defendant WC willfully disregarded the FMLA rules and regulations. One event in willful disregard of FMLA rules and regulations was on or around January 13, 2016 when Plaintiff was notified that her job was being released due to business needs, but the Defendant WC had miscalculated the dates of FMLA and gave Plaintiff's job away during Plaintiff's proper FMLA leave instead of after FMLA was over such that Plaintiff's job would never be able to be restored if she were able to recover. Job Protection is a key component of FMLA and this key component was woefully disregarded.

However, Plaintiff deems the last event in willful violation of FMLA to be on or about October 7, 2016 when she received the Unum denial letter, that was originally sent to Plaintiff's former attorney, which clearly laid out the "FMLA clause" which ends benefits at the end of FMLA and which had been so carefully "concealed" from her by Defendant WC when they withheld the "EMPLOYER-3" page that contained this employee-specific information. Defendant Unum was sharing this information with the Plaintiff at the very last minute in the process when it would do Plaintiff absolutely no good, but only to advise her of the harm done. The Defendant chose to serve up this very important piece of information on the golden platter of a LTD denial letter and in the form of a retaliatory strike and then would go on to tell Plaintiff that it was all about "policy." Yes, hidden policy.

2. **AMERICANS WITH DISABILITIES ACT CLAIMS:** This Courts' jurisdiction over the Plaintiffs' claims for relief from violations is under Title I of the Americans With Disabilities Act of 1990 ("ADA").

3. **CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT CLAIMS:** This Courts' jurisdiction over the Plaintiffs' claim for relief from violations of the Consolidated Omnibus Budget Reconciliation Act is invoked under COBRA, 29 U.S.C. Code Part 6 which provides relief to the Participant and Beneficiary of a COBRA plan and has a three year statute of limitations from the time that employee actually discovered that she should have been given a COBRA notice  or summary plan description. Plaintiff made the discovery around July 2019 that her COBRA notifications were insufficient.

4. **ERISA 510 INTERFERENCE AND RETALIATION CLAIMS:** This Courts' jurisdiction over the Plaintiffs' claim for relief from **Interference with Protected Rights under ERISA** is invoked under the federal question jurisdiction found in the ERISA statute under 29 U.S.C. Section 1140 (ERISA Section 510) which prohibits interference with benefits and retaliation for the exercise of rights under ERISA and ERISA employee benefit plans. Plaintiffs' claims under ERISA section 510 relate to **interference and retaliation resulting in a loss of benefits** in "employee welfare benefits plans" as defined by ERISA, 29 U.S.C. Section 1001 et seq. and the subject group long-term disability policy, and group life insurance policy of Williams & Connolly LLP constitute "plans under ERISA." ERISA does not provide a statute of limitations for Section 510 claims. Rather, courts apply the most analogous state law statute of limitations based upon the character of the particular matter. As stated in Valparaiso University Law Review, Volume 27, dated in 1992, page

167: "As recently recognized by the U.S. Supreme Court, the closest common law action analogous to an ERISA section 510 action is a wrongful termination action brought as a breach of contract suit. In these matters of ERISA Benefit Interference and Retaliation against Plaintiff involving multiple breaches and interference and retaliation by the fiduciaries, Plaintiff contends the most analogous state law statute of limitations provision is for **Breach of Contract which is three years in the District of Columbia.** Additionally, Defendant WC also has included a 3 year contractual period within each of the benefit plans offered at the Firm. The U.S. Supreme Court in the following **U.S. Supreme Court Case, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113-114 (1989)** states that "ERISA was meant to afford the same level of protection to employees as they received before ERISA was enacted in 1974 when benefit claim disputes were governed by principles of contract law." By utilizing the statute of limitations for Breach of Contract, employees are able to receive the same level of protection that they received before ERISA became law in 1974 and not be thwarted in their efforts to receive fairness under the law. Plaintiff determined around July 2019 that interference and retaliation and breaches of fiduciary duty had occurred. She began suspecting such around October 2017, but Defendant WC and Defendant Unum were not forthcoming with her data requests at that time for her to make a final determination.

5. **BREACH OF CO-FIDUCIARY DUTY CLAIMS:** This Courts' jurisdiction over the Plaintiffs' claim for relief from Breach of Co-Fiduciary Duty on the part of both defendants is invoked under ERISA, 29 U.S.C. Section 1105, *co-fiduciary liability exists if he has*

*knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under*

*the circumstances to remedy the breach.* Court will determine if a different code section

applies. There is a three-year statute of limitations under ERISA. A plaintiff must bring a

claim within three years from the earliest date the plaintiff has "actual knowledge" of

the breach or violation.  These breach of co-fiduciary claims were discovered on or

around July 2019.


## PARTIES

6.  Plaintiff, **LISA HOLDEN** (hereinafter "Plaintiff"), is an individual who is currently and was
    at all relevant times herein a resident of the city of Washington, DC.  Plaintiff is a CPA
    and was an active and licensed CPA or Certified Public Accountant during the time in
    which she worked for Williams & Connolly LLP.

7.  Plaintiff alleges upon belief and determination that Defendant WC which acts as the
    Plan Administrator, Plan Sponsor and Fiduciary for The Williams & Connolly LLP Group
    Long-Term Disability (LTD) Plan, and The Williams & Connolly LLP Group Life Insurance
    Plan and Any Other Plans That Make Up The Williams & Connolly LLP Benefits Plan ( a
    Cafeteria Plan), is a Limited Liability Partnership organized and existing by virtue of the
    laws of the District of Columbia, and may be served with process by service upon
    Williams & Connolly LLP, located at 725 12th Street, NW, Washington, DC 20005, ATTN:
    Jennifer Scott, Executive Director.

8.  Plaintiff alleges upon information and belief that Defendant **Unum Life Insurance**
    **Company** is the party obligated to handle plan enrollment and monitor FMLA status and

participation, administer claims and payment of benefits as well as to administer claims

denials to employees due to their coverage under the **Williams & Connolly LLP Group**

**Long-Term Disability Plan** of which Plaintiff is a beneficiary. Unum also provides Risk

Management Services to Defendant WC related to this policy and is a Fiduciary.

9. Unum is the underwriter for Group Long Term Disability Policy Number 587561, issued

by Unum to Williams & Connolly LLP. This new service of Risk Management Services was

just added recently at the time of the last amendment.

10. Plaintiff alleges upon information and belief that Defendant **Unum Life Insurance**

**Company** is the party obligated to handle plan enrollment and monitor any FMLA

participation, administer claims denials to employees due to their coverage under the

**Williams & Connolly LLP Life Insurance Plan,** of which Plaintiff is a beneficiary.

Defendant Unum also provides Risk Management Services to Defendant WC related to

this policy.

11. Unum is the underwriter for Group Life Policy Number 209934, issued by Unum to

Williams & Connolly LLP.

12. **Unum** is an insurance company authorized to transact the business of insurance in the

City of Washington DC, and may be served with process through the Commissioner of

the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway,

Suite 660, Nashville, Tennessee 37243-1131.

13. All of the acts and/or failures to act alleged herein were duly performed by and/or are

attributable to Defendants, individually, jointly or acting by and through their fiduciary

agents and employees.

14. Said acts and/or failures to act were within the scope of any agency or employment, or were ratified by Defendants.

## II. FACTUAL BACKGROUND

15. Williams & Connolly LLP is a law firm located in Washington, DC.

16. Williams & Connolly LLP is a law firm that was hired by Plaintiff around 2009 to represent her in a personal matter which is ongoing as it pertains to a troublesome neighbor.   This attorney-client relationship requires that the law firm act in Plaintiff's best interests, avoid conflicts of interests and to not act disloyally.

17. Plaintiff was employed by Williams & Connolly LLP (Defendant) as the Deputy Director of Finance for 19 ½ years. Plaintiff began working as the Assistant Controller for Defendant WC's law firm on March 24, 1997. Plaintiff was promoted to the position of Deputy Director of Finance on or around January 1, 2005. Plaintiff was often recognized for her hard work, dedication and loyalty to her employer. She served as a valued employee in the firm for many years.

18. Williams & Connolly LLP maintained and **maintains group long-term disability insurance** for the benefit of employees, funded by Group Insurance Policy No. 587561, issued by Unum to Williams & Connolly LLP.

19. Williams & Connolly LLP maintained and maintains **group life insurance for** the benefit of its employees, funded by Group Insurance Policy No. 209394, issued by Unum to Williams & Connolly LLP. That life insurance policy provides for ongoing coverage with waiver of premiums in the event of disability.

20. Williams & Connolly's provision of group insurance coverage constitutes an ERISA welfare benefit plan.

21. Plaintiff is a participant or beneficiary of the Plan and is covered by the policies that provide long term disability and life insurance benefits under the Plan. Plaintiff was also covered by the Choice Plus 100/80 United Healthcare Active plan that provided health insurance coverage.

22. Defendant WC is a covered employer under the Family and Medical Leave Act employing over 650 employees at both their main office and their secondary office across the street which houses a large group of IT employees and their Network Lab on one level and their Special Project Attorneys on another level.

23. Plaintiff was eligible for FMLA having worked full-time for over 18.5 years at the time that she took leave from the main office.

24. Plaintiff was suffering a serious medical condition requiring multiple treatments when she departed which was later diagnosed as Depression & Anxiety. Plaintiff visited two doctors to get their opinions and their FMLA certifications.

25. Defendant Unum, is the Claims Administrator for the Williams & Connolly LLP's Long-Term Disability Plan and the Williams & Connolly LLP Group Life Insurance Plan and is responsible for ensuring that the proper version of a "plan" is enforced on behalf of a participant and that valid documentation is used to support all representations regarding a claim. Unum is also responsible for ensuring that proper and timely FMLA Designation Notices are returned to them as gatekeeper so they may make a legal determination that a participant is covered by "FMLA" prior to enforcing the "FMLA

clause," if applicable, which now requires that an employee's benefits be cut off at the end of FMLA. Unum has a very critical fiduciary role to play here with a duty to the plan participants and yet appears to have a conflict of interest in that Unum also provides Risk Management Services to Williams & Connolly LLP as of the most recent amendment to the group disability plan, Amendment No. 19.

26. 29 USC Section 2611(4)(A)(ii)(I) provides that the term "employer" encompasses any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer" and, accordingly, Unum is a proper defendant in this case.

27. Plaintiff does have a related case filed in the Eastern U.S. District Court of Tennessee for 'Benefits Due,' specifically for long-term disability benefits and life insurance benefits which is now under consideration by the U.S. District Court in Tennessee, but this separate private case is being filed now due to interference and retaliation by the defendants under FMLA, ERISA, and ADA and COBRA.

28. On August 13, 2015, Plaintiff spoke with Sandy Reynolds, the HR Manager, who was very jittery, about the need to take leave to resolve her serious medical condition and Ms. Reynolds highly recommended that Plaintiff take FMLA leave instead of just vacation because of the protections that it affords one while she didn't go into detail about just what that meant. It came across to Plaintiff as though she had no choice but to take FMLA and Plaintiff was in no condition to argue.  Ms. Reynold's then gave Plaintiff an FMLA request form to fill out.

29. Plaintiff ceased work effective August 15, 2015, due to anxiety and depression.

30. On August 21, 2015, Plaintiff sent Ingram Barlow, her boss, an email message stating "I know you will be out early next week, but just know I will be covering things for you. See you on Thursday when you return." Laurie Jackson responded by phone telling me to wait until I am better. "Make sure you are okay. You have to do [what you have to do]. Let them decide. [You are] FMLA-protected." You will note here that Defendant WC was not mentioning just what those FMLA protections were, just that Plaintiff was "FMLA-protected."

31. On 9/22/15, Defendant Unum's short-term disability claims activity notes reflect that Defendant Unum was stating the following about what Defendant WC said: "ER asked that I remind EE that she does not have to go into work on Friday." Friday was 9/25/15 and Plaintiff's vacation was to have run out around 9/24/15. Defendant WC was somehow aware that Plaintiff was concerned that she might be fired by Friday 9/25/15 if she wasn't approved for short-term disability benefits as she hadn't gotten FMLA approval or short-term disability approval and her accrued vacation balance was running low. Interestingly, by the next day on 9/23/15, Plaintiff's short-term disability benefits were approved through 9/24/15.

32. Defendant Unum in their short-term disability plan notes on 9/22/15 makes clear that Defendant WC knows how sick that Plaintiff is stating in the notes Candace Walsh writes, "ER...reported that EE doesn't seem to be in any condition to be working at this time," but just a month later that attitude changes as you will note below.

33. Not quite one month later on 10/14/15, Defendant WC is shown in Unum's short-term disability notes to be pressuring Unum to not extend Plaintiff's short-term disability

benefits any longer as Defendant WC told Candace Walsh to "leave EE a clear message about her claim not being extended. I told EE I do leave clear messages advising what is needed." Candace Walsh didn't seem to like another party interjecting themselves in her business while she told Laurie Jackson, the Benefits Manager, that she does leave clear messages advising what is needed and in this case she went ahead and approved the benefits despite pressure from the Plan Sponsor, Plan Administrator and Fiduciary and personal attorney. Plaintiff thought that Defendant WC was her fiduciary and supposed to be encouraging of appropriate and needed benefits and as the law firm representing her in a personal matter, plaintiff thought that Defendant WC would be looking out for her best interests at all times, and not creating conflicts of interest where none existed.

34. **MISREPRESENTED FMLA LEAVE AND DOCUMENTS WITHHELD** - Plaintiff took leave due to these conditions under the Family and Medical Leave Act to determine what was causing her serious health condition after being steered in that direction by Sandy Reynolds of HR. Plaintiff had not seen any doctors at the time that she spoke with Ms. Reynolds. Ms. Reynolds had promises of job and benefit protections but did not explain what any of that meant and lured Plaintiff into FMLA leave when she possibly could have just taken vacation time. Based on these initial promises, Plaintiff went ahead and completed the FMLA request form. Sadly, after signing the form the HR Department had very little communication with Plaintiff and Plaintiff was never told when FMLA would begin or end or what would happen after FMLA ended. Plaintiff was not given any information on the FMLA leave. Regarding the excerpt from Amendment No. 18 that

adds the FMLA Clause which ends all benefits once FMLA is over, Plaintiff never received

any notice or documentation from the HR department notifying her that FMLA was

actually approved. There was never any agreement or understanding about how

benefits would work. Plaintiff should have received a Designation Notice within 5 days

of 9/4/15 when all information from two doctors, Dr. Fischer and Dr. Chang, would have

been received, but she didn't.

 Plaintiff was sorely treated by Defendant WC under FMLA. It was only way after the fact

in 2019 that Plaintiff found that none of the proper notifications were provided to her

including a FMLA General Notice, the FMLA Designation Notice, the FMLA Eligibility

Notice, the FMLA Rights & Responsibilities Notice, the FMLA Retroactive Designation

Notice nor was a FMLA Handbook provided. You couldn't be kept more in the dark than

Defendant WC kept this Plaintiff, and these occurrences happened despite Defendant

WC knowing that Plaintiff has a serious illness which requires HR to "bear the burden of

proof" and to act in a heightened manner to ensure Plaintiff gets all of the information

that she needs. An employee who provides notice to HR of a medical condition that is,

or is likely to be, a FMLA-qualifying condition  - even if that notice does not strictly

comply with the employer's FMLA policy – will shift the burden to the employer of (1)

informing the employee of any applicable FMLA rights, and (2) how to exercise those

rights *(See Reeder vs. County of Wayne, Michigan)*. When Plaintiff asked HR for a copy

of the Long-Term Disability Plan Summary Plan Description around November 2015, she

was told that she would have to wait until after the Benefits Fair on November 18, 2015

to receive a copy. It turns out that this Summary Plan Description for the LTD Plan

contained very important information that Plaintiff had not been given about what happens to benefits when FMLA ends and the fact that they come to an abrupt halt and cease. When the Summary Plan Description of the LTD Plan was provided sometime after that date, it was not complete and sadly, it omitted a key page that covered a material reduction in benefits that wasn't discovered by Plaintiff until sometime after the second LTD denial on 9/30/16. The page omitted and concealed was the single most important page, that being page EMPLOYER-3, which contained the language as follows:

"**_WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS POLICY WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?_** _We will continue the employee's coverage in accordance with the policyholder's Human Resource policy on family and medical leaves of absence if premium payments continue and the policyholder approved the employee's leave in writing. Coverage will be continued until the end of the later of: 1. The leave period required by the federal Family and Medical Leave Act of 1993 and any amendments; or 2. The leave period required by applicable state law. If the policyholder's Human Resource policy doesn't provide for continuation of an employee's coverage during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment. We will not: apply a new waiting period; apply a new pre-existing conditions exclusion; or require evidence of insurability._"

Did you notice that in the boldface heading that it speaks of an **EMPLOYEE'S COVERAGE**? Makes Plaintiff wonder why Defendant WC and Defendant Unum would place this information under the EMPLOYER pages and not the EMPLOYEE pages. It

doesn't make any sense as this is crucial information for the employee to have unless it is done intentionally to mislead and misrepresent. Plaintiff was certainly caught off-guard with this information which would have notified Plaintiff of a material reduction in benefits that could be expected at the end of FMLA. Plaintiff wasn't told this information anywhere else along the way. Apparently, when Defendant WC and Defendant Unum appear to have strategically created this Summary Plan Description for Employees, they didn't care whether a long-term disability plan participant might need to know when FMLA would end and what would happen when it does end.  Of course, this was an intentional act of omission. This page clearly should have been marked as an EMPLOYEE page because the contents reveal a material reduction (100%) in benefits at the end of FMLA that was not explained anywhere else and ERISA requires that all material reductions in plan benefits be spelled out in the Summary Plan Description and not just the Plan Document. Plaintiff believes that the treatment that she has received throughout the FMLA process should lead to her FMLA being deemed "FMLA DENIED," but with full protections going to the participant/plaintiff and then restore the lost benefits to the Plaintiff and her family.

**HUMAN RESOURCE POLICY ON FMLA** - Also, what is the Employer's *Human Resource policy on family and medical leaves of absence if premium payments continue and the policyholder approved the employee's leave in writing? Are you supposed to go by what is in writing? While Plaintiff never has seen the HR policy on FMLA, she does know that her premium payments for both LTD and Life insurance did continue throughout her employment and she does know that she never received had her leave approved in*

*writing and a copy provided to her. Is it really fair to approve FMLA unilaterally and not tell the beneficiary? Plaintiff was not given the benefit of having a leave of absence agreement clearly spelled out. She got nothing in writing. This is a wholly abusive practice which the firm should not stand for.*

**CONCEALMENT OF FMLA CLAUSE IN THE SUMMARY PLAN DESCRIPTION OF THE LTD PLAN** - Then after Plaintiff requested the Summary Plan Description for the LTD Plan on November 16, 2015 in an email, Laurie Jackson suggested that "The Benefits Fair has not happened yet. It is scheduled for this Wednesday, November 18, 2015. I will mail you the open enrollment memo as soon as it is finalized, as well as the group long-term disability summary plan description."  Plaintiff did not make a record of when the summary plan description was received, but it was some time after November 18, 2015. It is interesting that more than three months after Plaintiff was told that she should apply for FMLA and long-term disability, she still had no information on FMLA and still had to wait to get a summary plan description for the long-term disability plan. Then when she did receive the summary plan description from Defendant WC, it was discovered later that it was missing the material retroactive plan change, the FMLA clause, that was backdated and made effective many years prior in 2010, and included in amendment no. 18. Plaintiff believes that this clause that allows for a material reduction or 100% reduction in benefits was intentionally concealed to delay its being found until after its damage was done. This FMLA clause was essentially the "Trojan Horse" that both Defendant WC and Unum did not want Plaintiff to know about. This alleged concealment represents Interference of ERISA Rights by Defendants. Clearly, the

Defendants did not want Plaintiff to be aware that her benefits would be ending on the last day of FMLA or they would not have concealed such employee page in with the employer pages of the summary plan description and then omit them. Nor did they want Plaintiff to know what the last day of FMLA was as they did not want her to return. Defendant WC and Defendant Unum worked together to keep Plaintiff in the dark regarding FMLA and the related ERISA plans.

The decision to rescind coverage, based upon an improper amendment #18 that was never distributed to participants in a timely manner; that was concealed from Plaintiff in the Summary Plan Description of the LTD Plan; and that was made effective by way of a false FMLA designation never provided to Plaintiff, was wrong. The decisions to deny benefits based on that wrongful rescission were improper under the terms of the Plans. The decisions to deny benefits and decision-making processes were mired in Bad Faith Insurance Dealing and Self-Dealing.

**BACKDATED AND CONCEALED AMENDMENT WITH FMLA CLAUSE ENDING BENEFITS AT END OF FMLA** - The reason for Unum's denial on 9/30/16 was that, while they considered Plaintiff disabled in mid-July 2016, they stated that she no longer had coverage as it was rescinded on 9/28/16, just two days before the approval would have otherwise been made, all the way back to 12/10/15. This FMLA clause ending benefits at the end of FMLA was added to the Plan through a backdated amendment made sometime after 2013 (because in 2013 the firm handed Plaintiff a 2008 version of the Plan as the effective plan at the time that did not contain this clause) and made effective all the way back to April 1, 2010. However, this plan amendment was never

distributed to Participants and when a Summary Plan Description of the Plan was

provided, it concealed the clause by leaving it out. ERISA requires that all material

reductions in plan benefits be included in the Summary Plan Description and cannot just

be left in the Plan because this is important information for Participants to know in

order to make proper plans.

35. Plaintiff was not allowed by Defendant WC to use her accrued vacation except as

Defendant WC demanded. She was only allowed to utilize two weeks of vacation and

the rest was required to be held until termination. This is a violation under the

Americans With Disabilities Act.

36. Plaintiff filed a timely application for long-term disability benefits under the Plan on or

around November 9, 2015.

37. That application for benefits was denied by letter dated January 8, 2016 for medical

reasons.

38. **FMLA END FINALLY ANNOUNCED** - On January 13, 2016, Defendant WC's HR Director,

Karen Gregory, sent an email to Plaintiff letting her know that her FMLA had now ended.

However, Plaintiff had never been told that FMLA had ever started. Even this email was

approximately one month after Defendant WC says that FMLA had ended on 12/10/15.

There was never any urgency on the part of HR to get anything accomplished, but there

is probably strategy in that.  Defendant Unum did not even bother to mention that

FMLA was over in their insurance denial letter of 1/8/16 either. Defendant WC didn't

provide an FMLA end date either. Nor did Defendant WC provide any information to

Plaintiff as to what might have changed now that "FMLA" was now over, except that

Plaintiff was told that the firm could not wait any longer and they were going to begin advertising to fill her position.

39. Plaintiff's job was given away in January 2016 without an interactive process and during Plaintiff's real FMLA period as properly calculated would have ended on April 7, 2016.

40. Meanwhile, Plaintiff had assumed that she was being kept on the benefits rolls for long-term disability and life insurance coverage as was contractually agreed to by Defendant Unum and Defendant WC, and since she had not heard or seen anything to the contrary.

41. Plaintiff timely appealed this LTD denial decision of January 8, 2016.

42. **RESCINDING OF PLAINTIFF'S FMLA BENEFITS BASED UPON TWO KEY FALSE AND IMPROPER ITEMS: A NON-EXISTENT FMLA DESIGNATION NOTICE AND AN UNDISTRIBUTED FMLA POLICY ENDING BENEFITS:** On 9/28/16, two days before Defendant Unum was going to make their decision regarding Plaintiff's LTD benefit, Defendant WC and Defendant Unum agreed although somewhat hesitantly as shown in the Unum LTD notes that Plaintiff's FMLA was over on 12/10/15 and that her fully paid LTD coverage should now be rescinded going back nine months to 12/10/15. Rescinding in this manner was going to cause the Plaintiff to lose her LTD benefits so it was a major step to take. Plaintiff had been found to have a disability and if Plaintiff had LTD coverage then she would be approved, and if they rescinded it then she would not. Plaintiff believes that the hesitancy over moving forward with the FMLA end date was because there appears to have been no substantive documentation regarding such participation and such end date as would be typical of an FMLA case; the plan amendment invoking the rescission had been hastily put together and backdated to

2010 and the amendment #18 and #19 had never been distributed to plan participants

within the 210 day period that ERISA gives a plan and even the Summary Plan

Description of the LTD plan that was given to the Plaintiff specifically omitted any

reference to the FMLA clause. So there really was no clear plan language known to the

participants, and specifically not for this added FMLA language, to cause this FMLA

clause to be enforced on the Plaintiff. So there were many reasons for Defendants to be

concerned as is echoed in the Unum LTD notes of 9/28/16. When reading the notes, you

will see how Amy Williams and Laurie Jackson keep going back to their minimalist

records and checking while probably buying time and looking for more authorizations to

move forward in the background. Normally, an FMLA participant would be given the

decency of having an FMLA Designation Notice and this was a requirement the last time

Plaintiff checked, especially if a participant is harmed in any way.  However, in this case,

a Designation Notice does not seem to exist and Plaintiff can vouch that she never

received one. Despite this lack of a Designation Notice or even a Retroactive Designation

Notice which is like the FMLA contract confirming the FMLA dates of Plaintiff and

establishing the existence of the program, Defendant WC and Defendant Unum made

the decision to move forward to rescind Plaintiff's benefits in an unprofessional and

might I say fraudulent manner.  Amy Williams of Defendant Unum referring to Laurie

Jackson of Defendant WC said in the LTD notes of Defendant, "She said that she

researched her system and verified the last day FMLA approved was December 10,

2015, so as of 12/11/15, she had no more FMLA. ER said they will likely ask for credit on

premiums beyond same date." Plaintiff wonders why the Designation Notice was not

being referred to instead of "her system." That's because there wasn't one and FMLA

was   never effectively ratified. This is not how FMLA is supposed to be administered.

This is against FMLA regulations. In fact, Laurie Jackson says in the notes, "Laurie

advised the insured's FMLA ran concurrent with her STD and she reached the max

amount of FMLA hours as of 12/11/2015.  She also confirmed premiums were paid

through this date." This is another error. Defendant WC ran Plaintiff's FMLA concurrent

with her short-term disability benefit even though they never had a FMLA Designation

Notice sent in a timely manner to the Plaintiff. This goes against FMLA rules and

regulations if you don't bother to spell everything out in a Designation Notice. This

means that Plaintiff should have FMLA for a longer period than Defendant WC and

Defendant Unum thought or cared to admit. In fact, on 9/22/15 when Plaintiff wrote to

her attorney M. Riselli, she wrote that she was afraid of being fired for lack of short-

term disability approval and her vacation was about to run out on 9/25/15. Plaintiff

should have known that if she had FMLA that there should have been no reason for

concern as she would still have the job protection, but Plaintiff knew that she had never

heard back from Laurie Jackson, the person who administers the FMLA and Plaintiff

never believed that the FMLA had been made effective. Plaintiff only knew that she had

been given verbal approval to take some time off and Plaintiff knew that she was being

charged vacation hours for her time off while she was waiting for short-term disability

to kick in. She didn't need FMLA for that. Additionally, Plaintiff did not know anything

about FMLA because she had not been given a single piece of information on FMLA

besides the FMLA Request form and it says very little. None of the required notices had

been given to her to read. Plaintiff had essentially made an offer to have FMLA when she signed the FMLA request despite not being informed at that point, but because Defendant WC did not send a FMLA Designation Notice in a timely manner five days after they had received all of the necessary paperwork, it was never ratified. The Designation Notice had not been received and Plaintiff had been harmed. Defendant WC and Defendant Unum should have never so flippantly rescinded Ms. Holden's coverage in the Williams & Connolly LLP Group Long-Term Disability Plan and in the Williams & Connolly LLP Group Life Insurance Plan.

43. Around August 2016, Plaintiff was diagnosed with a Neurological Disorder.

44. Nevertheless, by letter dated September 30, 2016, Unum upheld its denial, finding that Plaintiff had become disabled by July 2016, but was not disabled prior to that, when her coverage was still in force. However, the reduction in benefit coverage was due to that backdated amendment #18 that was dated April 1, 2010 but just put into place in 2014 or 2015. The reduction in benefit coverage was due to Plan Amendment #18 and #19 that were never distributed to the plan participants. The reduction in benefit coverage was due to that concealed FMLA clause in the Summary Plan Description for the LTD plan given to Plaintiff in the Fall of 2015 to keep her in the dark. The reduction in benefit coverage was not based upon the clear and plain language of the plan that was effective at that time. This reduction in benefit coverage was based upon a lie. Plaintiff should have received coverage.

45. Plaintiff was terminated without an interactive process by employer on 10/5/16 which is a violation of the ADA.

46. **IMPROPER FMLA END DATE:** Much interference and retaliation has occurred in this matter and that is what this case is about. One area of **FMLA interference** and retaliation happened when Defendant WC miscalculated the FMLA end date of Plaintiff. The FMLA end date calculated by Defendant WC was almost four months short of what it should be. Defendant WC says that the FMLA end date is 12/10/15 and Plaintiff says that the FMLA end date is 4/7/16. The reason for the difference is because short-term disability leave cannot be started until it is approved by Defendant Unum and Defendant WC effectively started it right away through the usage of Plaintiff's accrued vacation balance and then reversing the vacation usage once the short-term disability benefits were approved. However, this is not proper. FMLA regulations state that the short-term disability benefits must be approved and available before they can be paid. So there can be no recapture of past vacation days in order to speed up the FMLA/Exit process. Also, Defendant WC is trying to run the short-term disability leave concurrent with the FMLA leave and you cannot do that if there is no FMLA Designation Notice qualifying the leave. This is how Plaintiff arrives at a FMLA end date that is almost 4 months later than that of Defendant WC.

47. **Americans With Disabilities Act (ADA)** – Defendant WC is a covered employer under the ADA. The ADA covers employers with 15 or more employees**.**

48. **ADA Interference** – Plaintiff was not allowed to use her accrued vacation as it is considered "active employment" and could have helped her to gain a benefit in the LTD

and Life Insurance plans prior to being terminated if she had also been given the benefit

of an interactive process and had not been wrongfully discharged in order to prevent

attainment of her life and ltd benefits. Instead, five days after Plaintiff's LTD benefit was

denied, Plaintiff received a letter from her employer informing her of her termination

and LTD denial all at the same time. The letter from Defendant Unum came the next day

and was all part of a strategy to deny Plaintiff her long-term disability and life insurance

benefits.

49. **Consolidated Omnibus Budget Reconciliation Act ("COBRA")** – Defendant WC is a

covered employer under COBRA as they have more than 20 employees on more than 50

percent of its typical business days and its rules are applicable to their self-funded

private section group health plan.

50. Regarding Breach of Fiduciary Duty claims, the Williams & Connolly LLP Group Long-

Term Disability Plan states in each of its last three versions that Plan Fiduciaries must

make ***prudent decisions*** under what is known as the *Prudent Man Theory* under the

Plan. The Plan specifically states that "The people who operate your Plan, called

"*fiduciaries*" of the Plan, have a duty to do so prudently and in the interest of you and

other Plan participants and beneficiaries. No one, including your Employer or any other

person, may... discriminate against you in any way to prevent you from obtaining a

benefit or exercising your rights under ERISA."

## CAUSES OF ACTION

51. Plaintiff seeks redress as a result of Defendants' actions, as follows:

### COUNT I – INTERFERENCE WITH THE EXERCISE OF FMLA

52. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

53. **INTERFERING WITH, RESTRAINING, OR DENYING THE EXERCISE OF FMLA**

According to the Court, an FMLA interference claim has only two requirements: (1) that

the employer somehow interfered, restrained, or denied the exercise of FMLA rights,

and (2) that the interference directly resulted in monetary loss to the employee.


On August 26, 2015, Plaintiff needing to take some time off for a serious medical

condition completed the FMLA Request form and returned it to Laurie Jackson, the

Benefits Administrator at Williams & Connolly LLP, as had been encouraged. For some

reason Defendant WC did not seem to want Plaintiff to just take regular vacation.

Defendant WC, through Sandy Reynolds, basically lured Plaintiff into FMLA with

promises of FMLA-protections. Plaintiff had not been to any doctors yet, but was told

that she needed to see two and get a medical diagnosis. Plaintiff made sure to see two

doctors as was requested and have them complete the medical certifications. While

Plaintiff did everything necessary to meet the requirements for FMLA, she never

received any individualized notifications about FMLA such as the Designation Notice, the

Eligibility Notice, the Rights & Responsibilities Notice or the Retroactive Designation

Notice, or the FMLA Handbook, nor offered any type of leave agreement or be provided

with any of the various employer plans' information that relates to FMLA. Nor was she given the Policy Holder's or Employer's Human Resource Policy on FMLA which Defendant Unum mentions as a key document in their LTD denial letter. Plaintiff knew very little about what FMLA even was. Clearly, FMLA was misrepresented to Plaintiff as you will see in the end it did not provide either job protection or benefit protection. Plaintiff's job was given away during her FMLA period before she even knew whether or not she would be able to return. Plaintiff has still not received a Designation Notice or Retroactive Designation Notice or any of the required individualized notices or employer FMLA policies. Plaintiff was left completely in the dark as to how FMLA worked and what her rights and responsibilities were under FMLA. This is despite Plaintiff asking for information and requesting in an email to Laurie Jackson on 11/12/15 that the Firm "please let me know any changes which you are aware of that I should also know about."

By virtue of Defendant WC never sending Plaintiff an FMLA Designation Notice qualifying her leave as FMLA leave and Plaintiff not getting any of the requisite notices and related employer-provided plan information and HR policies on FMLA and Plaintiff suffering harm from these actions or lack thereof; Plaintiff was prejudiced by a lack of FMLA notice. Plaintiff believes that she was essentially denied FMLA leave. Plaintiff was never officially told she was approved for FMLA; was never given her FMLA end date until after her second LTD denial of LTD benefits which denial was based upon that FMLA end date; was never provided any type of interaction prior to being terminated after FMLA and ADA leave. While yes, there was a passage of time encompassing what

should have been FMLA leave, Defendant WC's HR Department did not meet the
requirements of the DOL Wage and Hour Division with respect to their handling of the
FMLA leave and harm was done. Plaintiff lost her long-term disability benefits and life
insurance unbeknownst to her because the FMLA clause amendment was backdated
and its summary plan description was concealed from Plaintiff. The FMLA clause
requires that all benefits cease upon the end of FMLA, but this appears to be something
new that the firm is doing and there was some sort of an attempt to keep Plaintiff from
knowing about it.  As a direct and proximate result of the aforementioned interference
exposed through FMLA denial and restraint by the actions of Defendant WC and
Defendant Unum in failing to provide benefits for Plaintiff's disability, Plaintiff has been
**damaged in the amount of $1,370,636 in the LTD Plan and $337,535 in the Life
Insurance Plan.** In the Kalamazoo County Road Commission case, it illustrates that
employer will lose FMLA cases due to misrepresentation if the employee handbook is
wrong "on the law" or is missing information as is the case here. In this case, there was
no FMLA handbook provided. This was truly a lean and mean FMLA program without
much to offer.


### COUNT II FMLA NOTICE VIOLATIONS 29 CFR 825.300

54. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

55. **FMLA NOTICE VIOLATIONS –**  Under the FMLA regulations, by being an employer

required to offer FMLA where applicable, it is incumbent on Defendant WC to comply

with the FMLA regulations and therefore Defendant WC was obligated to  provide

Plaintiff with all of the FMLA Rights and Protections that the law allows and that means Plaintiff being given the opportunity to be fully informed by way of the FMLA notifications mandated in the law, as well as be given any employer-provided information that relates to FMLA, i.e. FMLA Handbook, Summary Plan Descriptions for the Cafeteria Plan,  Summary Plan Descriptions for all of the employee health and welfare benefit plans which are impacted by FMLA, such as health, long-term disability and life insurance and any other pertinent information, including the Employer Human Resource Policy on FMLA. To usurp these regulations, allows for potential manipulation, deception and obfuscation by Defendant WC and its affiliates like Defendant Unum as we have in this case. Defendant WC failed to provide the requisite individualized notifications required by FMLA regulations, including the Designation Notice, the Eligibility Notice, The Rights & Responsibilities Notice and the Retroactive Designation Notice. ***29 CFR Section 825.300 – Employer Notice Requirements***. These notifications essentially represent the contract that is FMLA. Without receipt of the notifications, the Plaintiff is left at the mercy of her employer to do the right thing.

**FINANCIAL HARM ARISING FROM WITHHOLDING OF NOTICES:** Plaintiff was harmed financially by the lack of all of these aforementioned notices. The withholding of all of the notifications and documents that pertain to Plaintiff's alleged FMLA period allowed for Defendant WC to interfere with Plaintiff's FMLA rights and at the same time have possession over the documents and the opportunity to continue to change or modify the information and work on retroactive changes to implement a strategy to fully insure that Defendant WC and Defendant Unum would not be subjected to providing long-

term disability benefits to the Plaintiff. Since Defendant WC did not ever lay out the contractual terms of FMLA and how it interplayed with other plans during the FMLA period and the unpaid leave period, Defendant WC and Defendant Unum were able to continue to make modifications to fit the situation or just continue to withhold important information. Despite Plaintiff first being told about FMLA and long-term disability coverage on August 13, 2015 and being encouraged to apply for FMLA, she did not receive any information on FMLA for her records except for an FMLA request form to complete. Plaintiff's harm from the lack of proper FMLA individualized notifications such as the Designation Notice, the Eligibility Notice, the Rights & Responsibilities Notice, the Retroactive Designation Notice and the Employer-FMLA related documents, including the Employer Human Resource Policy on FMLA was realized when she found out the truth about what had been concealed from her for so long. Had Plaintiff known of the FMLA dates, she could have better planned her leave such that she would not have ended up in this situation. On or around 10/7/16, Plaintiff received the second LTD denial letter from Unum and found that the denial was due to a lack of coverage as a result of the end of FMLA something that Plaintiff was totally unaware of. Plaintiff later found in the Unum notes that there was a coverage rescission done on her behalf that had just occurred on 9/28/16, something Plaintiff had never been informed of. The rescission went back retroactively nine months to 12/10/15, costing Plaintiff financially in substantial lost benefits for both long-term disability benefits (about to be approved in two days) and life insurance coverage to protect her family. Plaintiff had no idea that her benefits ended at the end of FMLA as this information was concealed from her

when the Summary Plan Description was sent to her around late November 2015.

Additionally, the Plan Amendment that created this FMLA Clause was Plan Amendment

#18 and it appears to have been created just before Plaintiff's long-term disability

application and backdated about four years to April 1, 2010.

**WOULD PROPER FMLA NOTIFICATIONS HAVE EVEN MATTERED?** The answer is yes!

Let's pretend for a moment that Plan Amendment #18 of the Williams & Connolly LLP

Group Long-Term Disability plan had been created properly to include the FMLA clause,

and let's pretend that the clear language of the policy had been properly distributed to

plan participants and that Plaintiff had been given all of the proper FMLA notifications

including a FMLA Designation Notice reflecting the FMLA dates; had Plaintiff known

upfront about the FMLA clause, and had all of the proper notifications otherwise, she

would have known that "time was of the essence" and she could have managed her

leave differently. She could have attempted to move much more quickly to have doctors

complete their testing and diagnoses, possibly by going for in-patient hospital care,

where the documentation and analysis can be better and handled by a team of doctors

as opposed to just one. Damages TBD.

## COUNT III – FMLA INTERFERENCE AND RETALIATION

## THROUGH SURVEILLANCE

56. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

57. Under ERISA, you must show specific intent to interfere with the employee's right to

benefits to prevail in an interference and retaliation matter. Plaintiff pleads that

Defendant WC had the specific intent to interfere and retaliate with Plaintiff's attainment of ERISA benefits by alleging that the following:

a.   Plaintiff was an employee of Defendant WC.

b.   Plaintiff took FMLA leave, short-term disability leave and incurred substantial costs in the ChoicePlus 100/80 UnitedHealthcare PPO Active Plan when she was in the hospital for almost two weeks in August 2016 and had also made application for benefits in the Group Long-Term Disability Plan.

c.   Plaintiff alleges that Defendant WC retaliated by conducting surveillance on Plaintiff and her whereabouts and activities during her medical leave of absence from work. Defendant WC's surveillance of Plaintiff has the effect of deterring the exercise of FMLA rights and ERISA rights. Specifically, when Defendant WC had any doubt about the validity of Plaintiff's medical condition, which the Unum short-term disability claims activity notes at 9/22/15 seem to show that they fully understood the severity of her condition, they did not simply request another medical opinion as contemplated by regulations. Instead, they tracked Plaintiff, and surveilled her activities while at home with her family and 24/7 by way of all electronic means available to their IT applications department. Multiple software programs have been loaded unbeknownst to Plaintiff onto her personal computer, and at least twenty-nine GoToMeeting sessions are documented during Plaintiff's FMLA and ADA medical leave which can be used by people trying to access your personal information and emails on your computer without your knowing it. However, it does appear that Defendant WC

did not limit their use of GoToMeeting and many other methods of surveillance

to just the FMLA and medical leave timeframe. The problem is much much more

extensive than that. Plaintiff has exhibits showing computer printouts from her

personal computer reflecting GoToMeeting sessions not of her making. Plaintiff

alleges that there was no objective basis for conducting surveillance on her

personal computer. Plaintiff alleges that Defendant WC surveilled her personal

computer in retaliation for Plaintiff's requesting FMLA and other benefits such as

short-term disability, and long-term disability and use of significant medical

insurance benefits when in the hospital in August of 2016 for two weeks, as well

as retaliation for a long-held vendetta that Jennifer Scott, the Executive Director,

has had against Plaintiff for numerous years after exposing the truth about a

work issue dating back to the 2008 downturn in the stock market when blame

was wrongly being placed on Plaintiff for not notifying partners in advance of

their turning 65 and giving them the opportunity to make a decision as to

whether or not to cash out their balance and manage the funds in their own

possibly safer portfolio. Plaintiff was only placed into the role where she was

administering five qualified retirement plans including the Defined Benefit Plan

in March 2009. Being given this role shortly after the 2008 downturn, Lisa was

faced with telling disgruntled partners who were yelling at her that it was not

she who made that gross mistake in not notifying the partners of their

opportunities prior to their suffering through the 40% downturn in the market

and instead it was those who were responsible for the Defined Benefit Plan

administration before it was passed on to Plaintiff and her boss. It certainly wasn't fair for Plaintiff to have had to shoulder this burden. Prior to Plaintiff and her boss having responsibility for the retirement plan administration on top of all of their other Finance and Accounting priorities, it was Lynda Schuler, the Executive Director and Jennifer Scott, the Chief Administrative Officer that would have been responsible for directing those activities to make sure they got done. Clearly, Jennifer Scott has held a vendetta for many years. It is Jennifer Scott who is currently the Executive Director who now calls the shots on FMLA notifications, ERISA notifications, LTD Insurance and Life and Health Insurance. Fortunately, the partners were able to settle their "lack of proper notification" issue that they faced in house and a portion of their losses were made up to them without their having to go to court. Sadly, it seems that proper ERISA notifications still seem to be a problem at the Firm all these many years later and the unlawful surveillance needs to stop. Damages TBD.

### COUNT IV – FMLA ACCRUED VACATION

58. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

59. Defendant WC miscalculated the FMLA end date of Plaintiff by ignoring the FMLA regulations regarding when short-term disability payments can begin. FMLA says they can only begin once approved. Defendant WC paid Plaintiff vacation pay initially and through the end of September 2015 and then when her short-term disability payments were approved, they restored the vacation balance and called the earlier time short-term disability leave even though it really wasn't at all. To make matters worse, Defendant WC

then ran FMLA concurrent with the adjusted short-term disability dates to further shorten Plaintiff's protected time. Running the two leaves concurrently would have been fine, but Defendant WC never provided Plaintiff with a required Designation Notice. Plaintiff believes that a Designation Notice does not even exist. Because of the lack of notice, FMLA rules and regulations do not allow FMLA to run concurrent with short-term disability leave. The amount of accrued vacation that is due to Plaintiff according to the corrected FMLA end date is approximately 53 hours for the additional days of FMLA that were accrued between December 10, 2015, the FMLA end date by Defendant WC and April 7, 2016, the correct date of FMLA based upon FMLA regulations. **This amounts to $6,115.**

## COUNT V – FMLA LIQUIDATED DAMAGES

60. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

61. The amount of liquidated damages determined thus far for FMLA amounts to $1,714,276 and is the sum of the lost LTD benefit, the lost life insurance benefit, and the lost vacation accrual.

## COUNT VI - ADA Violation re Not Being Allowed To Use Vacation During Medical Leave

62. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

63. To be protected by the ADA, one must have a disability, which is defined by the ADA as a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is

perceived by others as having such an impairment. While Plaintiff was at the firm and as her health deteriorated, she was seen as having such an impairment which limits one or more major life activities. While on leave, Plaintiff was diagnosed with Depression and Anxiety which substantially limits one or more major life activities. Therefore, Plaintiff is covered by the Americans With Disabilities Act.

**ACCRUED VACATION** - Around November 2015 and during Plaintiff's requested FMLA leave, Plaintiff inquired of Defendant WC's Benefits Administrator, Laurie Jackson, whether Plaintiff could elect to use her **remaining accrued vacation** of over one month's time as paid leave when other paid leave is exhausted. Ms. Jackson responded that It is not a policy of the firm to allow such, and Defendant WC must **hold the pay until termination** of Plaintiff's employment, but this was in violation of ADA regulations which allow an employee to use their own accrued paid vacation, as-needed, when an employee's disability necessitates it. The ADA statute related to not making reasonable accommodations to an employee with a disability can be found at ***29 CFR Section 1630.9.***

## COUNT VII – ADA – TERMINATION WITHOUT AN INTERACTIVE PROCESS

64. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

65. Plaintiff was terminated from the position that she held for almost twenty years without an interactive process on the part of the firm.  Had Plaintiff been given the decency of the interactive process along with the ability to use her own accrued vacation, then at the end of her medical leave she could have used the vacation as "active employment"

in order to gain approval of the long-term disability insurance despite all of the other

roadblocks. Under the ADA, the employer still must engage in an interactive dialogue to

determine the feasibility of any medical leave, weighing the employee's need for leave

and its expected duration in the undue hardship analysis. Defendant WC did not include

Plaintiff in any discussions and also terminated her without any interaction. Claim is for

termination without an interactive process while suffering a disability. Damages TBD.


## COUNT VIII – ADA – LACK OF ACCOMMODATION FOR TWENTY YEAR SERVICE AWARD

66. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

67. Plaintiff was terminated on October 5, 2016 without an interactive process and would

have reached her twenty-year anniversary with the firm on March 24, 2017, but in the

end Plaintiff was several months shy of reaching her twenty-year anniversary with the

Firm and the service award of $20,000. Instead of making accommodations due to

Plaintiff's disabling condition, Defendant WC planned ahead and decided to set up new

rules on September 19, 2016 that made it even harder to achieve the service award and

said that as of June 1, 2016 anyone that enters into LTD status shall no longer accrue

any time towards their service award. While Plaintiff never made it to LTD status, she

was within six months of achieving her 20-year and $20,000 service award, but had to

forfeit it entirely. Some other firms recognize a disability and the difficult situation that a

person can find themselves in through sickness and aging and they go ahead and make

an accommodation to help that person over the hurdle when that seems fair. Sometimes ADA requires it. The ADA statute related to employers needing to make reasonable accommodations to an employee with a disability can be found at *29 CFR Section 1630.9.* **Damages for lack of accommodation $20,000.**

## COUNT IX – FAILURE TO INFORM: MISSING SUMMARY PLAN DESCRIPTION FOR COBRA PLAN AT TIME OF COBRA ELECTION

68. Defendant WC is a covered employer under the Consolidated Omnibus Budget Reconciliation Act. Pursuant to the Consolidated Omnibus Budget Reconciliation Act, Defendant WC was required to provide a copy of the Summary Plan Description of the Choice Plus 100/80 UnitedHealthcare PPO Active Plan which includes the COBRA rules to the Plaintiff who was also covered under COBRA. Defendant WC breached their fiduciary duty by "failing to inform" plaintiff. Plaintiff never received this information on or around October 5, 2016 when she was terminated, and instead did not receive the information until requesting it in 2019. Nor did Plaintiff receive any information at the time of her COBRA election informing her of **Continuation Coverage Related to Disability**. This is also a requirement of COBRA. Damages TBD.

## COUNT X – INTERFERENCE WITH ERISA RIGHTS RE DISTRIBUTION OF SUMMARY PLAN DESCRIPTIONS

69. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

70. The allegations under ERISA include the following plans: Employee Benefit Welfare Plans under ERISA such as the Williams & Connolly LLP Group Long-Term Disability Plan, the Williams & Connolly LLP Group Life Insurance Plan, the Williams & Connolly LLP Choice Plus 100/80 United Healthcare PPO Active Plan, and the Williams & Connolly LLP Benefits Plan. Plaintiff's understanding is that ERISA requires that the summary plan descriptions (SPDs) be distributed at plan inception; within 210 days after the end of a year in which a plan amendment is made effective and on a periodic basis thereafter. Plaintiff can vouch for this not being done for the last ten years that she was at the firm. **These SPD's have not been distributed according to ERISA guidelines. This is a serious breach to the participants at the Firm who are not getting these important documents. Damages TBD.**

## COUNT XI – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS RE

## DISTRIBUTION OF SUMMARY OF MATERIAL MODIFICATIONS & CO-BREACH OF

## FIDUCIARY DUTY

71. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein: **Summary of Material Modification have not been prepared and distributed according to ERISA guidelines for the Williams & Connolly LLP Long-Term Disability Plan.** This includes when a material reduction in benefits for the Controller Group occurred and the LTD benefit went from 100% to 60%, apparently. It is currently unknown when the reduction was actually made, but notice of it was not distributed to participants. This also includes when a material reduction in benefits included in the Summary Plan

Description for Amendment #18 made effective on April 1, 2010. This FMLA clause which affected those participating in FMLA now find their benefits terminated at the end of FMLA unbeknownst to them. None of these material changes or modifications were distributed to participants as required by ERISA. When Plaintiff asked Defendant WC for a copy of the Summary of Material Modifications for the LTD Plan, Karen Gregory of HR wrote Plaintiff in an email and stated that the firm doesn't have any documents by the name of Summary of Material Modifications." Instead of complying with ERISA, Defendant WC sought to keep this information to themselves. Concern for participants finding out about these material reductions in benefits and wanting to know why they were not told about the reduction in benefits is surely the reason why Defendant WC demanded that Defendant Unum delete their original statements about Plaintiff belonging in the "Controller Group" from the Unum long-term disability notes which are supposed to be permanent and why one or both of these parties directed that the CD-ROM's be modified to remove any reference to Ms. Holden being in the Controller group, they did not want their Deputy Director of Finance who was a former auditor to be looking into matters. Defendant WC and Defendant Unum would both have been aware that these Summary of Material Modifications were not being created nor distributed. **These are violations of the ERISA reporting guidelines and co-breaches of fiduciary duties. Damages TBD.**

**COUNT XII - ERISA – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS  RE**

**REPORTING OF MODIFICATIONS ON THE SUMMARY PLAN DESCRIPTION AND**

**CO-BREACH OF FIDUCIARY DUTIES**

72. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

73. When the firm prepares a new amendment, they arrange it so that a participant looking

    at the Amendment doesn't see a listing of the changes made, but instead sees in each

    case the following sentence: **"The entire policy is replaced by the policy attached to**

    **this amendment."** This is not helpful at all to a participant who wants to know what

    changed. **This is a violation of the ERISA reporting requirements as the material**

    **modifications are required to be listed. It is also a co-breach of fiduciary duty. Both**

    **Defendant WC and Defendant Unum would have been aware of the language in these**

    **amendments and that sufficient language is not being reported to understand what**

    **material changes have been made. Damages TBD.**

**COUNT XIII– CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS RE**

**MISREPRESENTATION OF FMLA AND BREACH OF FIDUCIARY DUTY – SECTION**

**510**

74. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

75. Plaintiff has never received a copy of a FMLA Designation Notice or a request for

    allowance of a Retroactive Designation. Plaintiff alleges that Defendant WC must have

    created some form of approval or designation notice that they did not provide to

    Plaintiff and passed that off as legitimate to Defendant Unum or just ignored the FMLA

regulation altogether and omitted that step. Nonetheless, Plaintiff has never received either a FMLA Designation Notice or a FMLA Retroactive Designation Notice which she should be entitled to under the law if someone is claiming that she had FMLA leave. **This claim represents a misrepresentation or falsification of documents and a breach of fiduciary duty. Both Defendant WC and Defendant Unum would know the FMLA regulations and requirements and would be aware that these regulations were not being followed.** Damages TBD

### COUNT XIV – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS – SECTION 510 – BACKDATING OF RETROACTIVE PLAN AMENDMENTS BEYOND PROPER DATE AND BREACH OF FIDUCIARY DUTY

76. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

77. With the backdating of Amendment #18 of the Williams & Connolly LLP Group Long-Term Disability Plan from being created sometime in 2014 or 2015 to being made effective on April 1, 2010, a serious breach occurred.  There is no good reason to back a plan amendment to a date so far removed from the present unless you are making an attempt to deceive. It appears that the Plan Sponsor was attempting to cover up the FMLA clause that was new to the plans, but made to look quite old. Besides this attempt, it appears that another plan amendment was likely backdated when the same plan reduced its benefit coverage percentage from 100% of pay to 60% of pay without notifying all participants. Plaintiff has yet to see the plan amendments wherein this change occurs. Both Defendant WC and Defendant Unum would have been aware of

when an amendment was created and when it was made effective. This is co-fiduciary interference and a co-fiduciary breach. Damages TBD.

**COUNT XV – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS: RETROACTIVE PLAN MODIFICATION IN THE LTD PLAN CAUSING A MATERIAL REDUCTION IN BENEFITS TIED TO END OF FMLA WAS "CONCEALED" IN THE SUMMARY PLAN DESCRIPTION AND CO-FIDUCIARY BREACH**

78. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

79. Around late November 2015, Defendant WC's Benefits Administrator, Laurie Jackson, provided Plaintiff with a copy of what she was told was the effective long-term disability plan Summary Plan Description to be used for her claim. However, now Plaintiff has come to realize that the copy of the Summary Plan Description for the Williams & Connolly LLP Group Long-Term Disability Plan that she was given did not include the "FMLA clause" or the modification related to the "material reduction in benefits" in Plan Amendment No. 18 which was prepared and made retroactive to 2010 despite appearing to have been prepared around 2015. Plaintiff only received a copy of Amendment No. 18 in the summer of 2019 when she made a request to Plaintiff's attorney in Tennessee to see if he could access the amendment made prior to Amendment No. 19. Unum did provide Plaintiff's attorney with a copy. Plaintiff had requested a copy of the effective Summary Plan Description in late 2013 for a personal insurance review by Plaintiff's insurance broker at Howard Phillips & Co. and was given a plan dated 2008 which did not contain the FMLA clause. This makes Plaintiff believe that

the new LTD policy made effective retroactively to April 1, 2010 must have been

prepared in 2014 or most likely in 2015, at the earliest, and it would be improper to

distribute a plan amendment that is made retroactive four to five years into the past.

While Defendant WC never distributed their plan amendments for the Employee Benefit

Welfare Plan to participants unless asked, it turns out, Defendant WC still had the

responsibility to do so under ERISA and to prepare the amendments with that

requirement in mind. While Plaintiff has never received a copy of the plan and plan

amendment for the Williams & Connolly LLP Group Life Insurance Plan, Plaintiff has

reason to believe that these same claims related to the group disability plan also relate

to the group life insurance plan as coverage was also rescinded for the group life plan

going back nine months to the end of FMLA leave.

Defendants conspired to conceal key and required ERISA information from the Plaintiff

regarding when a material reduction in plan benefits would occur in the Williams &

Connolly LLP Group Long-Term Disability Plan and in the Williams & Connolly LLP Group

Life Insurance Plan and all other ERISA benefit plans at Williams & Connolly LLP. That

key information is what has been termed the "FMLA Clause" which is located on page

EMPLOYER-3 and has been omitted from the version sent to Plaintiff in the Fall of 2015

and in the Summer of 2019. Let me state that the EMPLOYER-3 page was included in a

January 2016 version sent by Defendant Unum to Plaintiff's attorney. Plaintiff is not sure

why there are two different versions and that she got the one with the omission.

However, at the point that Plaintiff's attorney received his copy of the SPD, Defendants

knew that FMLA was already over and Plaintiff would not get to see the reference to the

material reduction in plan benefits at the end of FMLA until it was already too late to

take any kind of action. At this point, all the damage to Plaintiff would have been done.

In each of the versions sent to the Plaintiff, Defendant WC has sent to Plaintiff a version

that does not contain page EMPLOYER-3 despite the page referencing EMPLOYEE in its

header. The page is clearly meant for employees and because it references a material

reduction in plan benefits ERISA requires that it be a part of each Summary Plan

Description. When comparing the copy with the EMPLOYER-3 page reflected versus the

copy where it is not included, even the TABLE OF CONTENTS has been modified on the

copy with the omission. It is modified so that there is absolutely no reference to page

EMPLOYER-3. Since Defendant Unum acts as Defendant WC's Risk Management

Consultant and provides Risk Management Services to Defendant WC, one can only

imagine that this might be one of the tricks up their sleeve that they have recently

implemented. This was an act of co-fiduciary interference and an act of  co-fiduciary

breach by Defendant WC and Defendant Unum. Damages TBD.


**COUNT XVI – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS – "WRONGFUL
RESCISSION" OF LONG-TERM DISABILITY COVERAGE THROUGH FRAUDULENT
INTERFERENCE WITH ERISA RIGHTS – SECTION 510; CO-FIDUCIARY BREACH**

80. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

On 9/28/16, Defendant Unum and Defendant WC conspired to move forward with the

wrongful rescission of Plaintiff's long-term disability coverage. Because the rescission

was only two days away from the benefit otherwise being approved on 9/30/16, the

plan states that both parties are required to approve the rescission in that instance and that is why this is a co-fiduciary interference with ERISA rights. The reason that the rescission is wrongful is because of the following reasons: **a) <u>FMLA misrepresentation and concealment of required information</u> - FMLA was never properly approved and carried out and was not what Plaintiff was told it would be and should be considered effectively denied.** Plaintiff had no information on the FMLA program. She had no individualized notices such as the Designation Notice, the Eligibility Notice, the Rights and Responsibilities Notice and the Retroactive Designation Notice. See Plaintiff's email dated 9/22/15. Plaintiff thought she was about to be fired on 9/22/15, about four weeks into the FMLA, because she had been given no documentation of any sort that would have led her to believe that she had the protections of FMLA and that firing could have easily happened. Defendant WC just thought it would keep its options open for as long as it could and they didn't want to let Plaintiff know her FMLA dates or benefit information. Defendant's goal appears to have been to ensure that Plaintiff does not return to the office and they wanted her to depart without any long-term disability benefits. Plaintiff has been harmed by this lack of notice as she could have handled her leave differently if she had known that her benefits were all going to be stripped from her retroactively back to the last day of FMLA. There is no doubt that in reality FMLA was DENIED. **b)** Plaintiff was willing to attempt FMLA and, yes, she did sign a FMLA request form, but she didn't hear a peep from anyone after that and she apparently bought a bunch of lies because that is what she received back only **a LTD Summary Plan Description that contained key omissions confusing EMPLOYER with EMPLOYEE and**

**placing what should be an EMPLOYEE page onto page EMPLOYER-3 by way of an attempt to conceal.** No participant should be treated in this manner. Plaintiff is horrified that this law firm would treat her this way after a long history with the firm that Plaintiff had thought had been a positive one. **c)** The two plan amendments to the Williams & Connolly LLP Group Long-Term Disability Plan were Amendments #18, dated August 16, 2010, and Amendment #19, dated June 26, 2014. Neither of these amendments were properly distributed to Participants within 210 days after the end of the year in which they were made effective so these amendments are not the plain and clear language of the Plans according to ERISA as participants have not seen them. Even the copy the Plaintiff requested and received was concealing material reductions in benefits, meaning a reduction of 100%, that should have been included in the SPD according to ERISA. **d) Suspicious Backdating of Plan Amendment** – Also, it's very suspicious how in late 2013 when Plaintiff was having her insurance broker Howard Phillips & Co assess her insurance coverage that Plaintiff requested a current Summary Plan Description of the LTD Plan and received a copy dated 10/16/2008, but in 2015 when Plaintiff was attempting to apply for long-term disability benefits it turns out that there is a version of the LTD Plan dated April 1, 2010. Why wouldn't Laurie Jackson have given me the April 1, 2010 version instead of a 2008 version which goes back an additional two years? A mistake? It's not because Ms. Jackson made a mistake, it's very likely because there has been a new retroactive agreement put together that was backdated to make it appear like it has been around for longer than it really has been. Well, that is improper too because this version could never have been distributed within 210 days after the

end of the year in which the Amendment was made effective. It's a mathematical

impossibility because too much time has already passed. So that is another reason why

this Plan is unenforceable. These are acts of co-fiduciary interference and co-fiduciary

breach by Defendant WC and Defendant Unum. Damages TBD.


## COUNT XVII – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS RE "WRONGFUL

## DENIAL" OF LTD INSURANCE AND LIFE INSURANCE – SECTION 510 AND CO-

## FIDUCIARY BREACH

81. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

82. Based upon the wrongful rescission of long-term disability benefits which Defendant WC

and Defendant Unum engaged in, there was no doubt but that Defendant Unum, the

Claims Administrator, was going to send Ms. Holden a denial letter regarding her long-

term disability benefits. Defendant Unum did have one last opportunity to straighten

out the matter, but decided to continue the charade and deny Ms. Holden and her

family the benefits that she had worked for over almost twenty years to have just in

case she ever needed them. Sadly, Defendant WC was aware of these circumstances

and stood idly by. The wrongful denial is based upon the misrepresentations of FMLA,

the withholding of summary plan descriptions from participants, the backdating of plan

amendments to make them more obscure, the omission of pages in the summary plan

descriptions concealing key information, and the wrongful rescission of Plaintiff's long-

term disability benefits and her life insurance benefits. Since the two defendants work

so closely together in managing the benefit claims, the two are inextricably linked in the

benefit denial. This denial is an act of co-fiduciary interference and co-fiduciary breach

on the part of Defendant WC and Defendant Unum. **Damages TBD.**


**COUNT XVIII – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS RE**

**CONCEALMENT OF PROPER CLASS DESCRIPTION AND CONCEALMENT OF 40%**

**REDUCTION IN WILLIAMS & CONNOLLY LLP GROUP LONG-TERM DISABILITY PLAN FOR**

**THE CONTROLLER GROUP – Section 510; CO-FIDUCIARY BREACH**

83. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

84.  Around November 2015, Plaintiff requested a copy of the claims activity notes from her

long-term disability file. This file was sent to Plaintiff in the format of CD-ROMs. When

Plaintiff received the CD-ROMs, she reviewed them and made a few copies of the pages

that she thought most useful. The page most interesting was where Unum had reviewed

her title and job description and then made the determination that Plaintiff should be

classified in the Controller Group. Plaintiff agreed with this classification as it made

complete sense and was in line with the hard work that Plaintiff was doing as Deputy

Director of Finance. Plaintiff was pleased with this because she had known since she

started with the Firm in 1997 that the Controller group was part of the group that would

get a 100% benefit if they were in need of and qualified for long-term disability benefits.

There were many groups like this and the determination was supposed to be based not

upon who you were, but be based upon your job description. This way you cannot be

discriminated against. However, by the next iteration of the claims activity notes that

Plaintiff received after Plaintiff was denied LTD benefits in January 2016, Unum was now

stating that Plaintiff should be in the **"All Employees Not Eligible In Another Group,"** a group that only gets a 60% benefit. Any reference to Plaintiff being in the Controller group was now gone. The only reference of interest related to this that Plaintiff could find in the Unum notes was found on a page entitled **Claim Action Plan – Contractual – Pre-Existing/C of C.** The items with information under Continuation of Coverage were "Our Agreement Date of 4/1/2003;

Class Description – Our agreement: "All Employees not eligible in another group"

Minimum Hours – 22.5 hours

Then on the backside, under notes to file, it says:

Subject:  Attn: DBS:  PEG#6 confirmed

Priority: No

Status: Completed

Notes: 1**) OTC to ER for policy info @ 202-434-5604**

**ER advised that EE is classified under all other employees PEG#6**

Created by: Picard, Tyler

Create Date: 11/09/2015

Create Site: Portland

What Plaintiff gleens from this page of long-term disability plan claims activity notes from Unum is that Laurie Jackson who can be found at the number in the notes, 202-434-5604, contacted Defendant Unum to tell them that Plaintiff is to be in the "Other Employee Group." Once again, Defendant WC appears to have pressured Defendant Unum, the Claims Administrator, to do what is not in the best interest of the participant.

Defendant Unum had initially made the determination of what group that Plaintiff

should be in based upon her job description that Defendant WC gave to them.

Defendant Unum, Plaintiff believes, made the correct classification originally, but it

appears that because of pressure from Defendant WC, Defendant Unum has changed

their minds and placed Plaintiff into a lesser category. This is why there is a special

"contractual agreement" on 11/9/15 between the two on this point. Lastly, on this

point, Plaintiff should let the Court know that her CD-ROM was a read-writeable CD-

ROM it turns out and it was modified by somebody over the air waves to remove the

language that Plaintiff had originally seen and replace it with information stating that

Plaintiff will be in the "Other Employees" group. This is a lesson to all to never accept a

CD-ROM from an insurance company as they can have the information changed by a

stealth operator and then it is only your word against theirs. Plaintiff has discovered

software programs that have been downloaded to her computer that make these type

of changes and Plaintiff suspects Defendant WC in these matters. These are matters of

co-fiduciary interference and co-fiduciary breach on the part of Defendant WC and

Defendant Unum. Damages amount to $1,395,105.

## COUNT XVIV – CO-FIDUCIARY INTERFERENCE WITH ERISA RIGHTS – TAMPERING WITH PLAINTIFF'S CD-ROM WITH NOTES RECEIVED FROM UNUM; CO-FIDUCIARY BREACH

85. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:

86. Plaintiff received a CD-ROM with notes from Unum around November 2015. She was

originally given a choice by Unum to have a paper version of the claims activity or a CD-

ROM and at the time Plaintiff thought that a CD-ROM would be a good idea. She no

longer believes that to be the case. However, there was only one bit of information on the CD that was of real interest and Plaintiff printed out a few copies of the information and that was the notes wherein Unum made clear that they had reviewed Plaintiff's title and her job description and they had placed her into the **"Controller group"** as they have the capacity to do so based on their position as Claims Administrator. Apparently, Defendant WC blew up over this one because after that they went to great lengths to remove any reference that could be found to those assertions, including on her CD-ROM. It turns out that Plaintiff was sent a read-writable CD-ROM and, apparently, one or both of these defendants went in and modified the language so that Plaintiff could not reprint it as it had been before and modified the language so that Unum's determinations about Plaintiff being classified in the Controller Group were missing. Additionally, Defendant Unum had to be involved because they also went in and modified the claims activity notes that they had provided me. There's an internal note included on the new version of claims activity notes that says something about their having locked down their system so that analysts can't make changes any longer. Well, regardless the information is no longer there, yet that does not change the fact that Plaintiff should be in the Controller group based upon the original belief of Unum. Plaintiff worked exceedingly hard in that role for almost twenty years and kept things in great order and Plaintiff deserves to be in the correct group based on her job description and the heavy workload that she carried. Around the time of the changes in November of 2015, Unum changed Plaintiff's group to the "Other Employees" group and entered into a special contract with Unum regarding this change. So Unum and

Williams & Connolly LLP have a contractual agreement to state that I should be in the

Other Employees group. Plaintiff guesses that this is to document that ERISA came up

with a different answer but was pressured into looking the other way against Plaintiff's

best interests. These are matters of co-fiduciary interference and co-fiduciary breach on

the part of Defendant WC and Defendant Unum. Damages TBD.


**COUNT XX – INTERFERENCE WITH ERISA RIGHTS RE PRESSURING UNUM TO**

**DENY COVERAGE – WC; BREACH OF FIDUCIARY DUTY**

87. PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:


88. Defendant WC was caught in a breach of fiduciary duty on 10/14/15 when Laurie

Jackson of HR asked Candace Walsh of Unum "that [she] leave EE a clear message about

her claim not being extended" on 10/14/15." A decision had not even been made yet

regarding payment, but Defendant WC was making their demands known.  Fortunately,

in this matter the Unum representative stated back to Laurie Jackson "I told ER I do

leave clear messages advising what is needed."  This representative made sure that

Plaintiff did receive her full short-term disability benefit as was required based on the

medical record. In this email that is contained in Defendant Unum's short-term disability

notes, it makes clear that Defendant WC is **putting pressure on Defendant Unum** to

deny further short-term disability claims. Plaintiff had already been approved for six

weeks of short-term disability for depression and anxiety at the point that Defendant

WC began pressuring Defendant Unum. There was only possible another seven weeks of

benefits, but Defendant WC did not want Plaintiff to have them. It's notable that just

three weeks before on 9/22/15, Defendant WC is noted as stating that "EE doesn't seem

to be in any condition to be working at this time." This is an ERISA interference matter

and breach of fiduciary matter on the part of Defendant WC. Damages TBD.

### COUNT XXI – ATTORNEY-CLIENT RELATIONSHIP BREACH OF FIDUCIARY DUTY

89. **PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:**

90. Defendant WC accepted the responsibility of representing Plaintiff in a personal matter

on or around 2009 which is ongoing as it pertains to a troublesome neighbor. ***This***

***attorney-client relationship requires that the law firm act in Plaintiff's best interests,***

***avoid conflicts of interests and not act disloyally.*** Plaintiff alleges that Defendant WC

breached their fiduciary duties on 10/14/15 by encouraging Defendant Unum to not

extend Plaintiff's short-term disability coverage after only six short weeks as shown in

Defendant Unum's claims activity notes wherein Candace Walsh of Unum was told by

Defendant WC to "leave EE a clear message about her [short-term disability] claim not

being extended" on 10/14/15. See Exhibit 11. Unum had not even made a decision on

the short-term disability yet. It was this same attitude and pressure that caused

Defendant Unum to shirk their duties to properly carry out their claims administration

duties and later deny, as of the 11/9/15 LTD application date, Plaintiff her long-term

disability and life insurance benefits going against her doctors' best recommendations.

Defendant WC also breached their duty to Plaintiff throughout the whole FMLA and

ADA medical leave by not ensuring that Plaintiff was given all of the necessary

information in order to make good decisions about FMLA or any of the other benefit

plans. Plaintiff was given no information except for one summary plan description of the

LTD plan and that SPD was concealing the key component of the plan and how it relates

to FMLA which would have been found on page EMPLOYER-3 had it been included. Yet

Defendant WC had Defendant Unum pull out that FMLA clause from hiding in the FMLA

denial letter of 9/30/16. The two defendants were proud to pull the FMLA clause out of

their bag of tricks at that point. Prior to that time there was no siting of the FMLA

clause. This is disloyal! This law firm took advantage of their client's trust and instead

engaged in self-dealing. Defendant WC subordinated its client's interests to its own

interests. Plaintiff would not be in the position that she is in today without Defendant

WC's disloyalty and creating a conflict of interest where none was needed. Plaintiff's

boss, IP Barlow, told her that the firm was being disloyal to her in January 2015, but

would not elaborate.   These breaches were all committed for Defendant WC's own

personal gain. Damages TBD.


**COUNT XXII – ERISA RETALIATION 510 – WRONGFUL DISCHARGE**

91. **PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:**

92. Under ERISA, you must show specific intent to interfere with the employee's right to

benefits to prevail in a wrongful discharge matter. Plaintiff pleads that Defendant WC

had the specific intent to interfere and retaliate with Plaintiff's attainment of ERISA

benefits by alleging that she:

    a.   Was an employee of Defendant WC;

b.  Utilized her ERISA-protected short-term disability plan; and had significant

medical costs incurred in the Choice Plus 100/80 UnitedHealthcare Active health

plan due to an August 2016 hospitalization which lasted for nearly two weeks;

c.  In retaliation for Plaintiff's usage of the short-term disability plan and the

significant usage of the healthcare plan, Plaintiff was terminated and removed

from medical leave before she could exhaust all options in regards to attaining a

benefit in the group long-term disability plan and the group life insurance plan.

Defendant WC terminated Plaintiff without an interactive process only five days

after she was denied LTD benefits based upon a "FMLA clause" that was hidden

from her and FMLA that was never properly qualified, despite qualification being

a requirement for FMLA and for Defendant WC running Plaintiff's FMLA leave

concurrently with her short-term disability leave. This firing was only seven days

after Defendant WC and Defendant Unum "rescinded" Plaintiff's LTD and life

insurance coverage on 9/28/16 as the premiums had been paid throughout

Plaintiff's entire leave. Defendant WC showed specific intent to interfere with

Plaintiff's benefits on 10/14/15 when Candace Walsh of Unum stated in the

short-term disability claims activity notes that "ER...asked that I leave EE a clear

message about her [short-term disability] claim not being extended." This was at

a time when Unum had not yet made a decision on the short-term disability

benefits, but Defendant WC was trying to sway them. Plaintiff could have utilized

her remaining accrued vacation balance of over one month in order to have

"active employment" according to the LTD plan and would have been able to

have her LTD coverage reactivated; however, that was not to be as Defendant

WC knew this and did not want Plaintiff to have the LTD and life insurance

benefits like they provided to their other employees and partner who were in

need and Plaintiff had been told by Defendant WC that she could not have any

"vacation pay" until she was terminated specifically to prevent this type of thing.

However, the ADA requires that vacation pay be allowed to those with a

disability. WC unfairly terminated Plaintiff before she could attain her benefit in

the LTD and life insurance plans. Damages TBD.

### COUNT XXIII – ERISA RETALIATION 510 – SURVEILLANCE

93. **PLAINTIFF incorporates each of the foregoing allegations as if fully set forth herein:**

See Count III – FMLA Retaliation – Surveillance as allegations are the same. Damages

TBD.


**PRAYER FOR RELIEF WHEREFORE, Plaintiff seeks the following relief:**

A finding in favor of Plaintiff against the Defendants and;

1. Count I – FMLA Restraint, Denial Interference Damages of $1,370,636 to recover for lost

benefits in the Williams & Connolly LLP Group Long-Term Disability Plan; and damages

for lost life insurance Damages $337,535

2. Count II – FMLA Individual Notice Violations With Harm Done – Damages TBD

3. Count III - FMLA RETALIATION - SURVEILLANCE – Damages TBD;

4. Count IV - FMLA Accrued Vacation Not Paid Due to Incorrect FMLA End Date – Damages

$6,115;

5.  Count V - FMLA Liquidated Damages: Lost Long-term Disability Benefits FMLA and Lost
    Life Insurance Benefits and Accrued Vacation Not Paid Due to Incorrect FMLA End Date
    – Damages $1,714,286;

6.  Count VI – ADA Violation Re Not Allowed To Use Vacation During Med Leave – Damages
    TBD;

7.  Count VII – ADA Violation of Termination Without An Interactive Process – Damages
    TBD;

8.  Count VIII – ADA Violation Re Lack of Accommodation Re Twenty Year Service Award –
    Damages $20,000;

9.  Count IX – Consolidated Omnibus Budget Reconciliation Act ("COBRA") – Damages TBD;

10. Count X – Interference with ERISA Rights - Section 510 – WC – **Failure to Distribute;**
    **Summary Plan Descriptions** in the W&C Employee Benefit Welfare Plans according to
    ERISA schedule – TBD;

11. Count XI – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Breach of
    Fiduciary Duty **Failure to Distribute Summary of Material Modifications** for the W&C
    Employee Benefit Welfare Plans re material changes – Damages TBD;

12. Count XII – Co-Fiduciary Interference with ERISA Rights – Section 510 – and Co-Breach of
    Fiduciary Duty **Reporting of Changes on the Summary Plan Description** – Participants
    are not being given the detail of the plan changes – Damages TBD;

13. Count XIII – Co-Fiduciary Interference with ERISA Rights **"Misrepresentation"** of FMLA
    and FMLA Designation Notice While Seeking LTD and Life Insurance and Co-Breach of
    Fiduciary Duty – WC & Unum – Damages TBD;

14. Count XIV– Co-Fiduciary Interference with ERISA Rights – **"Backdating"** of the Group Long-Term Disability Plan Amendments and Co-Breach of Fiduciary Duty – Damages TBD;

15. Count XV – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Breach of Fiduciary Duty - WC & Unum – Retroactive FMLA plan amendment for a material reduction in LTD plan benefits was **"Concealed"** in the Summary Plan Description through Omission – Damages TBD;

16. Count XVI – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Fiduciary Breach - WC & Unum – **"Wrongful Rescission" of LTD coverage and Life insurance coverage** two days before it was to be approved otherwise – Damages TBD;

17. Count XVII – Co-Interference with ERISA Rights and Co-Fiduciary Breach– **"Wrongful Denial"** of LTD and Life Insurance – WC & Unum – Damages TBD;

18. Count XVIII – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Fiduciary Breach– WC & Unum - **Concealment of Proper Class Description; Concealment of 40% Summary Plan Reduction of Benefits** in the Williams & Connolly LLP Group Long-Term Disability Plan re: Controller Group, Damages amount to $1,395,105;

19. Count XIX– Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Fiduciary Breach – WC & Unum - **For Tampering With Plaintiff's CD-ROM** – Damages TBD;

20. Count XX – Interference with ERISA Rights – Section 510 and Breach of Fiduciary Duty– **Undue Influence by Defendant WC** when they put pressure onto Unum to tell Plaintiff in clear language that her [short-term disability] claim would not be extended when that was not their role, but the claims administrator's role – Damages TBD;

21. Count XXI - **Attorney – Client Relationship Breach of Fiduciary Duty** – Damages TBD;

22. Count XXII – ERISA Retaliation – **Wrongful Discharge To Prevent Attainment of a Benefit** – Damages TBD;

23. Count XXIII – ERISA Retaliation **– Surveillance** – Damages TBD;

24. Plaintiff also seeks damages for emotional distress, if available – TBD;

25. Plaintiff also seeks punitive damages, if available – TBD;

26. Out of pocket costs – TBD;

27. Attorneys Fees, if incurred – TBD.

28. **Total damages are estimated to be $4,843,677.**

Respectfully submitted

BY:_____ *Lisa K Holden*

Lisa Holden,

Lisa K Holden, Pro Se
720 North Carolina Avenue
Washington, DC 20003
(202) 823-2692

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **First Amended Consolidated and Restated Complaint** will be served by Certified Mail on the 4th of February, 2020 upon:


Carson H. Sullivan, Esq., Counsel for Williams & Connolly LLP

Paul Hastings LLP

875 15th Street, NW

Washington, DC  20005

and

Unum Life Insurance  Company

Commissioner of the Tennessee Department of Commerce and Insurance

500 James Robertson Parkway, Suite 660

Nashville, Tennessee  37243-1131