**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| LISA HOLDEN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO: 1:19cv3055 |
| | ) | |
| | ) | |
| WILLIAMS & CONNOLLY LLP, and | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| | ) | |
| DEFENDANTS. | ) | |


## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CONSOLIDATED AND RESTATED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Williams & Connolly LLP ("Williams & Connolly") moves to dismiss Plaintiff Lisa Holden's ("Plaintiff") First Amended Consolidated and Restated Complaint dated February 3, 2020.  Plaintiff's causes of action are time-barred, implausible, and fail to state cognizable claims for relief.

For these reasons, and as set forth more fully in the attached memorandum in support, Williams & Connolly respectfully requests that the Court grant the present motion and dismiss the Complaint, with prejudice.  A proposed order is attached.

Dated:  March 13, 2020

Respectfully submitted,

/s/ *Carson H. Sullivan*
Carson H. Sullivan (DC Bar No. 488139)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
carsonsullivan@paulhastings.com

*Counsel for Defendant Williams & Connolly LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020 the foregoing was served via overnight mail to

the following:

LISA K. HOLDEN
PRO SE
720 North Carolina Avenue, SE
Washington, DC 20003
(202) 823-2692

I hereby certify that on March 13, 2020, I electronically filed the foregoing document

with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to

the following:

Mary C. Zinsner, Esq.
DC Bar No. 430091
Troutman Sanders LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel: 202-274-1927
Fax: 703-448-6510
Email: mary.zinsner@troutman.com

*Counsel for Defendant Unum Life Insurance*

/s/ *Carson H. Sullivan*
Carson H. Sullivan

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| LISA HOLDEN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO: 1:19cv3055 |
| | ) | |
| | ) | |
| WILLIAMS & CONNOLLY LLP, and | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## WILLIAMS & CONNOLLY LLP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CONSOLIDATED AND RESTATED COMPLAINT

Plaintiff's 60-page First Amended Consolidated and Restated Complaint (the "Complaint") includes 23 separate causes of action based on alleged violations of the Employee Retirement Income Security Act ("ERISA"), the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA")—all of which are largely overlapping and difficult to parse. The infirmities of each cause of action, however, are evident on the face of the Complaint, and as such, the Complaint should be dismissed in its entirety.

First and foremost, all of Plaintiff's claims are time-barred. Plaintiff has not been employed by Williams & Connolly since October 2016. Her claims are based on alleged events or actions that transpired in 2015 and early 2016. Plaintiff did not file her first complaint until October 6, 2019, after all applicable statutes of limitations had run.

Even if her claims were not time-barred, none of Plaintiff's claims entitle her to the main relief she seeks: long-term disability benefits. As explained in more detail below, Unum—the

claims administrator and insurer of the long-term disability plan—made a determination that Plaintiff did not become disabled until July 2016.  Unum further determined that Plaintiff's coverage under the long-term disability plan ended on December 10, 2015, when Plaintiff's FMLA leave ended, and thus, that Plaintiff did not have coverage at the time of her disability. Plaintiff's allegation that her FMLA leave (and thus her long-term disability plan coverage) should have extended to April 2016 does not change the result.  April is still many months prior to the date that Unum determined that she became disabled.  In short, even taking Plaintiff's allegations as true for purposes of this motion, Plaintiff has not shown any harm stemming from the allegations she raises.

Plaintiff's Complaint also fails to set forth any plausible reason or motivation that Williams & Connolly would have had to interfere with her benefits or other rights.  Williams & Connolly had no financial motive to interfere with or retaliate against Plaintiff for seeking disability benefits from Unum.  Plaintiff's allegations of conspiracy, sabotage and document-tampering are simply implausible; Plaintiff will not be able to show that Williams & Connolly acted for the purpose of interfering with her rights.

Finally, dismissal of this case will not leave Plaintiff without a means of redress.  ERISA provides a comprehensive enforcement scheme, through which plan beneficiaries, like Plaintiff, can seek benefits that they believe were wrongly denied.  *See* 29 U.S.C. § 1132; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'") (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)).  This is exactly what Plaintiff is pursuing through a separate lawsuit that she has brought against Unum in the United States District Court for the Eastern District of Tennessee.  In that matter, where Plaintiff is represented by counsel, Plaintiff is

challenging Unum's determination that Plaintiff did not become disabled until after her plan coverage had lapsed. That—not the present case—is the avenue for Plaintiff to seek the benefits to which she believes that she is entitled.

## FACTUAL BACKGROUND

Plaintiff began working for Williams & Connolly in 1997 as an Assistant Controller.[1] *See* Compl. ¶ 17.[2] Williams & Connolly promoted her to Deputy Director of Finance on January 1, 2005. *Id.* As an employee, Plaintiff participated in numerous benefit programs offered by Williams & Connolly, including the Your Group Long Term Disability Plan. *See id.* ¶ 18; *see generally* Ex. A (2014 Summary Plan Description for the Williams & Connolly LLP Your Group Long Term Disability Plan (referred to hereinafter as the "LTD Plan")).[3]

The LTD plan "provides financial protection for you by paying a portion of your income while you are disabled." Ex. A (LTD Plan) at 3. The Plan defines being disabled as being "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due

---

[1] The statements in this section are based on the facts set forth in Plaintiff's Complaint and her Complaint pending in the Eastern District of Tennessee; Williams & Connolly does not confirm or stipulate to the veracity of these pleaded facts by repeating them here.

[2] The Complaint does not contain page numbers, does not consistently number its paragraphs and often sets out paragraphs that span several pages. In the instances where a paragraph continues for multiple pages, Williams & Connolly has noted page numbers from the filed PDF version of the Complaint (ECF No. 16).

[3] The Court may consider facts referenced in the Complaint and documents attached as exhibits to or referenced in the complaint or "upon which the plaintiff's complaint necessarily relies." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009) (internal quotation omitted); *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 195-96 (D.D.C. 2002); *Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008). Plaintiff not only references the LTD Plan throughout her Complaint but also submitted a partial copy of the 2008 LTD Plan Summary Plan Description along with her Complaint. *See* ECF No. 6-1, Pl.'s Ex. 1. Williams & Connolly submits a full version of the 2014 LTD Plan Summary Plan Description here, which was the operative plan during the time relevant to this matter.

to the same sickness or injury." *Id.* at 11.  Notably, the Plan requires, and specifically states, that

employees must "be working at least 22.5 hours per week" to maintain coverage.  *Id.* at 3; *see*

*also* ECF 6-1 at 16 (Pl.'s Ex. 1) (defining active employment as "working for your Employer for

earnings that are paid regularly and that you are performing the material and substantial duties of

your regular occupation.").

Unum is both the claims administrator and insurer for the LTD Plan.  As claims

administrator, Unum has sole discretion to determine whether to grant or deny benefits requests,

in accordance with the terms of the LTD Plan.  *See* Ex. A (LTD Plan) at 35 ("The Plan, acting

through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary

authority to make benefit determinations under the Plan."), 1 ("Unum has discretionary authority

to determine your eligibility for benefits and to interpret the terms and provisions of the

policy.").  As insurer, all benefit distributions under the plan are paid directly by Unum.  *See id.*

at 30 ("The Plan is funded by insurance issued by Unum Life Insurance Company of America.");

*see also* Complaint for Recovery of Plan Benefits and for the Enforcement of Rights Under

ERISA, *Holden v. Unum Life Ins. Co. of America*, No. 1:19-cv-00028, ECF No. 1 (E.D. Tenn.

Feb. 5, 2019) (hereinafter referred to as "E.D. Tenn. Compl."), attached hereto as Exhibit B, ¶ 5

("Plaintiff alleges . . . that Defendant Unum . . . is the party obligated to administer claims and

pay benefits under the Williams & Connelly, LLP Long Term Disability Insurance Plan[.]").

Thus, Williams & Connolly does not determine whether to grant or deny benefits under the LTD

Plan, and it does not pay for benefits being disbursed under the LTD Plan; those responsibilities

belong to Unum.  *Id.*

On August 15, 2015, Plaintiff requested time off from work "due to anxiety and

depression."  Compl. ¶ 29.  On August 26, Plaintiff completed and returned to Williams &

Connolly an "FMLA request form." *Id.* ¶ 53, p. 25.[4]  Plaintiff's FMLA leave ran for the required

16 weeks (pursuant to District of Columbia law[5]), until December 10, 2015.  *See* Compl. ¶ 29

(noting that Plaintiff ceased work on August 15, 2015); Ex. B (E.D. Tenn. Compl.) ¶¶ 15-16.

Though Plaintiff contests the dates of her FMLA leave in *this* suit, in her case in the Eastern

District of Tennessee, Plaintiff concedes that she took leave "under the Family Medical Leave

Act through December 10, 2015."  Ex. B (E.D. Tenn. Compl.) ¶ 16.

Plaintiff "filed a timely application for long-term disability benefits under the [LTD] Plan

on or around November 9, 2015."  Compl. ¶ 36.  On January 8, 2016, Unum denied Plaintiff's

claim for benefits "for medical reasons."  *Id.* ¶ 37.  Plaintiff appealed that decision.  *See id.* ¶ 41.

On September 30, 2016, Unum affirmed its denial of benefits, finding that Plaintiff had not

become disabled until July 2016 and that her coverage under the plan had lapsed on

December 10, 2015.  *Id.* ¶ 34, p. 17.

Though she exhausted her 16 weeks of FMLA leave on December 10, 2015 and though

she could not return to work, Williams & Connolly allowed Plaintiff to remain an employee for

months after her protected FMLA leave expired.  *Compare* Ex. B (E.D. Tenn. Compl.) ¶ 16

(noting that Plaintiff was on FMLA leave until December 10, 2015) *with* Compl. ¶ 67, p. 36.[6]

---

[4] Though Plaintiff alleges that Williams & Connolly failed to designate her leave as FMLA leave, this is not the case.  Williams & Connolly designated Plaintiff's FMLA leave on September 2, 2015.  However, as set forth below in Section II.A, even accepting Plaintiff's allegations as true and not relying on the designation itself, Plaintiff's FMLA claims cannot stand.

[5] D.C. Code § 32-503.

[6] Plaintiff had the option to receive health care coverage during this time, paying the premiums directly, as she was not earning wages from which they would be deducted.  *See* ECF No. 6-1 at 56 (Pl.'s Ex. 25).

Williams & Connolly did not terminate Plaintiff's employment until October 5, 2016, after Unum affirmed its denial of LTD benefits. *See* Compl. ¶¶ 44, 67, p. 36.

On October 6, 2019, more than three years after her termination and almost four years after she exhausted her FMLA leave, Plaintiff filed her original complaint in the present case, along with a related complaint on a separate docket. *See* ECF No. 1; Complaint, *Holden v. Williams & Connolly*, 1:19-cv-03057, ECF No. 1 (D.D.C. Oct. 6, 2019). On October 23, 2019, the Court issued an order consolidating Plaintiff's dual cases and instructing Plaintiff to file a single, consolidated and amended complaint. *See* ECF No. 4. On January 13, 2020, Plaintiff filed her Consolidated and Restated Complaint. *See* ECF No. 6. On February 4, Plaintiff served Williams & Connolly with her First Amended Consolidated and Restated Complaint. Plaintiff filed this Complaint with the Court on February 3, 2020, and it appeared on the docket on March 6, 2020. *See* ECF No. 16.

Months prior to filing her cases in this Court, on February 5, 2019, Plaintiff filed suit in the Eastern District of Tennessee against Unum, alleging wrongful denial of benefits under the long-term disability plan. *See generally* Ex. B (E.D. Tenn. Compl.). In that litigation, Plaintiff is represented by counsel, and in that litigation, Plaintiff contradicts allegations underpinning her current case. She affirmatively asserts that she "took leave . . . under the Family Medical Leave Act through December 10, 2015." *Id.* ¶ 16. She also holds out her "paranoid ideation regarding her former employer, of being bugged and followed" as symptoms of an illness, not as factual events that transpired. Pl.'s Brief in Support of Reversal of Def.'s Denial of Benefits Under ERISA, *Holden v. Unum Life Ins. Co. of America*, No. 1:19-cv-00028, ECF No. 24 (E.D. Tenn. Nov. 25, 2019), attached hereto as Exhibit C, at 6. Plaintiff's application for recovery of plan

benefits has been fully briefed, with all record evidence submitted, in her Tennessee action. *See generally Holden v. Unum Life Ins. Co. of America*, No. 1:19-cv-00028 (E.D. Tenn.).

## STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Workagegnehu v. Washington Metro. Area Transit Auth.*, 373 F. Supp. 3d 110, 115 (D.D.C. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . A pleading must offer more than 'labels and conclusions' . . . and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Workagegnehu*, 373 F. Supp. 3d at 115-16 (quoting *Iqbal*, 556 U.S. at 678; *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

Determining whether a complaint states a plausible claim is "context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. 662 (2009); *see also Adams v. Drug Enf't Admin.*, No. CV 14-846, 2014 WL 2178650, at *1 (D.D.C. May 12, 2014) ("The Court '[d]etermine[s] whether a complaint states a plausible claim for relief' by 'draw[ing] on its judicial experience and common sense.' . . . With these considerations in mind, the Court concludes that the complaint must be dismissed. The few factual allegations set forth in the complaint are, at best, highly speculative and conclusory, such that the complaint 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombley*, 550 U.S. at 557)). Courts "need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Workagegnehu*, 373 F. Supp. 3d at 116 (internal citations

omitted).  Plaintiff's 23 causes of action are not timely, and each fails to state a cognizable claim

for relief.  As such, the Complaint should be dismissed pursuant to Rule 12(b)(6).

## ARGUMENT

## I.    PLAINTIFF'S ERISA INTERFERENCE CLAIMS ARE TIME-BARRED AND NOT PLAUSIBLE

At bottom, the crux of Plaintiff's Complaint is that Williams & Connolly (and Unum)

interfered with her rights in violation of Section 510 of ERISA, 29 U.S.C. § 1140.  Her ERISA

allegations—which are included in 13 of the 23 causes of action she identifies—are difficult to

follow, difficult to interpret, and largely duplicative of each other.

- Count X – Interference with ERISA Rights – Section 510 – WC – Failure to Distribute; Summary Plan Descriptions in the W&C Employee Benefit Welfare Plans According to ERISA schedule[7]

- Count XI – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Breach of Fiduciary Duty Failure to Distribute Summary of Material Modifications for the W&C Employee Benefit Welfare Plans re material changes

- Count XII – Co-Fiduciary Interference with ERISA Rights – Section 510 – and Co-Breach of Fiduciary Duty Reporting of Changes on the Summary Plan Description – Participants are not being given the detail of the plan changes

- Count XIII – Co-Fiduciary Interference with ERISA Rights "Misrepresentation" of FMLA and FMLA Designation Notice While Seeking LTD and Life Insurance and Co-Breach of Fiduciary Duty – WC & Unum

- Count XIV– Co-Fiduciary Interference with ERISA Rights – "Backdating" of the Group Long-Term Disability Plan Amendments and Co-Breach of Fiduciary Duty

- Count XV – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Breach of Fiduciary Duty – WC & Unum – Retroactive FMLA plan amendment for a material reduction in LTD plan benefits was "Concealed" in the Summary Plan Description through Omission

- Count XVI – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Fiduciary Breach – WC & Unum – "Wrongful Rescission" of LTD coverage and Life insurance coverage two days before it was to be approved otherwise

---

[7] These bulleted captions are copied verbatim from Plaintiff's Complaint.

- Count XVII – Co-Interference with ERISA Rights and Co-Fiduciary Breach-"Wrongful Denial" of LTD and Life Insurance – WC & Unum

- Count XVIII – Co-Fiduciary Interference with ERISA Rights –Section 510 and Co-Fiduciary Breach – WC & Unum – Concealment of Proper Class Description; Concealment of 40% Summary Plan Reduction of Benefits in the Williams & Connolly LLP Group Long-Term Disability Plan re: Controller Group

- Count XIX – Co-Fiduciary Interference with ERISA Rights – Section 510 and Co-Fiduciary Breach – WC & Unum  – For Tampering With Plaintiff's CD-ROM

- Count XX – Interference with ERISA Rights – Section 510 and Breach of Fiduciary Duty – Undue Influence by Defendant WC when they put pressure onto Unum to tell Plaintiff in clear language that her [short-term disability] claim would not be extended when that was not their role, but the claims administrator's role

- Count XXII – ERISA Retaliation – Wrongful Discharge To Prevent Attainment of a Benefit

- Count XXIII – ERISA Retaliation – Surveillance

Among (many) other things, Plaintiff accuses Williams & Connolly, which had no financial interest in whether Plaintiff received LTD benefits, of pressuring Unum to deny her short-term disability claims (Compl. ¶ 88, p. 52), backdating plan amendments (*id*. ¶ 80, pp. 46-47), surreptitiously surveilling her by installing secret software programs on her computer (*id*. ¶ 57(c), pp. 31-32), hacking into her computer to rewrite the contents of CD-ROM (*id*. ¶ 84, p. 50), being "inextricably linked" with Unum "in the benefit denial" (*id*. ¶ 82, pp. 47-48) and terminating her in retaliation for taking medical leave (*id*. ¶ 92(c), p. 55).  These allegations and the causes of action that they are intended to support are not timely and are not plausible.[8]

---

[8] A key element of an ERISA § 510 claim is that the prohibited conduct be "taken for the purpose of interfering [] with the attainment of any right to which the employee may become entitled."  *Boster v. Reliance Standard Life Ins. Co.*, 959 F. Supp. 2d 9, 31 (D.D.C. 2013) (internal quotations omitted).  Plaintiff does not and cannot plausibly allege that Williams & Connolly took any action with the purpose of interfering with her LTD benefits.  The LTD Plan under which Plaintiff sought benefits is fully insured by Unum, meaning that any benefit payments would have come from Unum, not Williams & Connolly.  *See* Ex. A (LTD Plan) at 30 ("The Plan is funded by insurance issued by Unum Life Insurance Company of America."); *see*

It is well established that ERISA interference claims are governed by a one-year statute of limitations.  ERISA § 510 has no express statute of limitations, so courts apply the most analogous statute of limitations from state law.  Courts in the District of Columbia have recognized the most analogous state-law statute of limitations as the one-year statute of limitations of the D.C. Human Rights Act ("DCHRA").  *See Cox v. Graphic Commc'ns. Conference of the Int'l Bhd. of Teamsters*, 603 F. Supp. 2d 23, 32 (D.D.C. 2009) ("The Court agrees with Defendants that the closest analogue to [the ERISA § 510 claim] is a discrimination claim under the DCHRA."); *Watts v. Parking Mgmt.*, No. CIV.A. 02-2132 CKK, 2006 WL 627153, at *4 (D.D.C. Mar. 12, 2006) ("[T]he Court concludes that the one [] year limitations period under the DCHRA is the applicable statute of limitations for a Section 510 action within the District of Columbia[.]"), *aff'd*, 210 F. App'x 13 (D.C. Cir. 2006).

By its very terms ERISA § 510 provides a cause of action to address retaliatory or interfering acts that affect the employee-employer relationship.  *See* ERISA § 510, 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."); *see also Haberern v. Kaupp Vascular Surgeons, Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994) (Section 510 protects against "actions intended to deny plan rights that affect the employment relationship.").  Here, the last action that had any possible effect on the employee-employer relationship was

---

*also* Ex. B (E.D. Tenn. Compl.) ¶ 5 ("Plaintiff alleges . . . that Defendant Unum . . . is the party obligated to administer claims and pay benefits under the Williams & Connelly, LLP Long Term Disability Insurance Plan[.]").  Thus, whether Plaintiff successfully obtained benefits under the Plan would have had no impact on Williams & Connolly, and accordingly, Williams & Connolly would have had absolutely no motive or incentive to interfere with Plaintiff's attainment of benefits.  Plaintiff offers no plausible reason that Williams & Connolly took any action for the purpose of interfering with her attainment of benefits.

Plaintiff's discharge on October 5, 2016. *Walker v. Pharm. Research & Mfrs. of Am.*, 439 F. Supp. 2d 103, 109 (D.D.C. 2006) ("Because the purpose of ERISA § 510 is to prevent an employer from terminating an employee for the purpose of avoiding payment of retirement benefits, 'it is the [termination] decision and the participant's discovery of this decision that dictates accrual.'" (internal citation omitted)). Accordingly, the statute of limitations on Plaintiff's ERISA claims began to run by at the latest October 5, 2016 and had expired by October 5, 2017 at the latest, *two years* before she filed this action. Moreover, many of Plaintiff's claims, as set forth in her Prayer for Relief, specifically seek damages for lost long-term disability benefits, which is the exact relief she seeks in the case she has filed against Unum in Tennessee. *See* Ex. B (E.D. Tenn. Compl.) at 1 ("COMES NOW, Plaintiff, Lisa Holden, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long term disability (LTD) benefits due under an employee benefits plan under ERISA[.]"). That case—not the present one—remains the avenue by which Plaintiff can pursue non time-barred claims for the benefits to which Plaintiff believes that she is entitled. *See id.* Plaintiff's ERISA claims must be dismissed.

## II.  PLAINTIFF'S FMLA CLAIMS ARE UNTIMELY AND INADEQUATELY PLEADED

As a threshold matter, just as with her ERISA claims, it is evident on the face of the Complaint that Plaintiff's FMLA claims (Counts I – V) are all time-barred. Under the FMLA, causes of action must be brought no later than two years "after the date of the last event constituting the alleged violation for which the action is brought," unless the violation is willful, in which case a three-year limitation applies. 29 U.S.C. § 2617(c)(1); *see also Cooper v. Henderson*, 174 F. Supp. 3d 193, 205 (D.D.C. 2016) ("An action under the FMLA must be

11

brought within two years of the alleged violation, or within three years if the violation is alleged to have been willful.").

While the factual allegations as to each of Plaintiff's five FMLA causes of action vary slightly—and even assuming for the purposes of this motion that Plaintiff has adequately pled willfulness[9]—there is no question that each of the alleged FMLA violations took place more than three years before Plaintiff filed her original Complaint on October 6, 2019.  Thus, Plaintiff's FMLA counts are time-barred and subject to dismissal on that ground.  Additionally, and though the Court need not further analyze the time-barred claims in order to dismiss them, each of the five counts suffers from multiple other infirmities that require dismissal, as set forth below.

### A.    Counts I ("Interference with the Exercise of FMLA") and II ("FMLA Notice Violations 29 CFR 852.300")

Plaintiff's main contentions in Counts I and II of her Complaint are that Williams & Connolly failed to designate her leave as FMLA leave and failed to provide related notice materials.  *See* Compl. ¶¶ 53-55, pp. 25-30.  Plaintiff is incorrect.  But even accepting as true Plaintiff's allegations that she did not receive the notice of FMLA designation, it is undisputed that Plaintiff received all of the FMLA leave to which she was entitled under the law, and undisputed that the timing of her FMLA leave designation had no bearing on the denial of benefits.  Counts I and II must be dismissed.

Plaintiff acknowledges in her Complaint that she requested FMLA leave.  *See* Compl. ¶ 53, p. 25 ("Plaintiff needing to take some time off for a serious medical condition completed the FMLA Request form and returned it to Laurie Jackson, the Benefits Administrator at Williams & Connolly LLP[.]").  She admits that, on August 13, 2015, she spoke to Williams &

---

[9] It is difficult to imagine how Plaintiff could establish willfulness when the face of her Complaint confirms that she received all of the FMLA leave to which she was entitled.

Connolly's HR Manager "about the need to take leave to resolve her serious medical condition." *Id.* ¶ 28.  She admits that she was given "an FMLA request form to fill out," *id.*, and she admits that she "completed" the form and "returned it to [Williams & Connolly]," *id.* ¶ 53, p. 25.  She also admits that she "ceased work effective August 15, 2015, due to anxiety and depression."  *Id.* ¶ 29.  And though she does not do so in her Complaint filed with this Court, in her case that is pending in federal court in Tennessee she admits that she "took leave due to these conditions under the Family Medical Leave Act through December 10, 2015."  Ex. B (E.D. Tenn. Compl.) ¶ 16.  In other words, Plaintiff was provided with the required 16 weeks of FMLA job protection.[10]  On the face of her pleadings, Plaintiff's FMLA rights simply were not interfered with.

Plaintiff nonetheless maintains that because Williams & Connolly purportedly failed to designate her FMLA leave, she lost coverage under the LTD Plan and life insurance policies, damaging her to the tune of millions of dollars.  As Plaintiff's own assertions make clear, this is simply not true.  Plaintiff's coverage under the LTD Plan and life insurance policies terminated at the time Plaintiff's FMLA leave ended.  *See* Compl. ¶ 42, p. 19.  Plaintiff received the full 16 weeks of FMLA leave to which she was entitled, and that leave ended on December 10, 2015, causing her benefits coverage to end.  *Id.* ¶ 29 (noting that Plaintiff took leave starting August 15), ¶ 42, p. 19 (noting that Plaintiff's FMLA leave ran until December 10, 2015).  Regardless of whether Plaintiff received a formal designation from Williams & Connolly, her FMLA leave would have still terminated on December 10, 2015, and her benefits coverage would have ceased on that day too.  In other words, the purported failure to designate of which Plaintiff complains had no bearing on her benefits coverage or the denial of her benefits.

---

[10] *See* D.C. Code § 32-503.

Even under Plaintiff's own (and unexplained) calculations, the result is the same.  For reasons not clear from the face of her Complaint, Plaintiff asserts that her FMLA leave should have run until April 7, 2016—not December 10, 2015.  *See* Compl. ¶ 39.  Even if this were true, it changes nothing.  If Plaintiff's FMLA leave had ended on April 7, 2016, her benefits coverage also would have terminated on that day.  Again, however, Unum determined that Plaintiff did not become disabled until July 2016.  *Id.* ¶ 44.  Thus, even under Plaintiff's own calculations, her benefits coverage would have terminated three months prior to Unum's disability determination, meaning that Plaintiff still would have lacked coverage.  Plaintiff's Complaint thus, on its face, confirms that there is no causal connection between Williams & Connolly's alleged failure to provide her with a designation form and her entitlement to the long-term disability benefits that she seeks.  Indeed, Plaintiff's pleading fails to evidence any harm whatsoever—she received exactly the amount of leave to which she was entitled, regardless whether she received a formal designation.  *Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 39-40 (D.D.C. 2011) ("Where proper notice is not given, an interference claim is actionable if the employee can demonstrate that she has suffered prejudice . . . .").  For all of these reasons, Counts I and II must be dismissed.

## B.      Count III ("FMLA Interference and Retaliation Through Surveillance")

In Count III, Plaintiff alleges that Williams & Connolly retaliated against her and interfered with her FMLA rights "by conducting surveillance on Plaintiff and her whereabouts and activities during her medical leave of absence from work."  Compl. ¶ 57(c), p. 31.  In addition to being time-barred, Count III is not supported by plausibly alleged facts.  Plaintiff alleges that Williams & Connolly somehow loaded multiple programs onto her computer and instigated multiple "GoToMeeting sessions" without her knowledge.  *Id.*  Neither allegation (even if taken as true) evidences surveillance by Williams & Connolly.  Indeed, in her Eastern

14

District of Tennessee case, Plaintiff puts forth this "paranoid ideation regarding her former employer, of being bugged and followed" as a symptom of her illness, not as factual occurrences.[11]  *See* Ex. C (E.D. Tenn. Brief) at 6.  Plaintiff provides no plausible basis from which to infer that Williams & Connolly surveilled her at all, let alone that it did so in an attempt to interfere with her FMLA rights or to retaliate against her for utilizing her benefits.  For that reason, Count III must also be dismissed.  *See, e.g.*, *Workagegnehu* 373 F. Supp. 3d at 115-16 ("A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678); *Iqbal*, 556 U.S. at 662 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.").

## C.      Count IV ("FMLA Accrued Vacation")

In Count IV, Plaintiff appears to allege that due to Williams & Connolly's purported miscalculation of her FMLA leave end-date, Plaintiff lost vacation time to which she was entitled.  *See* Compl. ¶ 59, pp. 33-34.  Plaintiff fails to plead entitlement to the relief sought. Plaintiff maintains that her FMLA leave should have ended on April 7, 2016—not December 10, 2015.  *Id.*  For some unexplained reason, Plaintiff also argues that this discrepancy entitles her to

---

[11] Though Plaintiff's case in Tennessee has not yet been decided, judicial estoppel principles should preclude Plaintiff from bringing these allegations that are clearly contradicted by her position in her Eastern District of Tennessee litigation.  *See, e.g.*, *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 124-25 n. 6 (D.D.C. 2008) ("[A]s the Supreme Court has explained, judicial estoppel 'protect[s] the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'") (internal citation omitted); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) ("the critical issue is what the [party] contended in the underlying proceeding, rather than what the jury found."; "judicial estoppel is intended to prevent parties from playing fast and loose with the courts by asserting inconsistent positions . . .") (internal citations omitted).

53 hours of additional accrued vacation. *Id.* Plaintiff provides no explanation as to why this is the case, and Williams & Connolly is aware of none. In short, Plaintiff merely states an alleged harm (miscalculation of FMLA leave) and requests a remedy (53 hours of vacation pay) with no explanation as to why the remedy flows from the harm alleged.[12] This does not constitute a valid cause of action. Plaintiff has not pleaded entitlement to the relief sought, and Count IV must be dismissed. *See, e.g.*, *Adams*, 2014 WL 2178650, at *1 (dismissing case where "speculative and conclusory" statements failed to show "entitlement to relief").

### D.    Count V ("FMLA Liquidated Damages")

Count V is not a cognizable cause of action, it is a request for liquidated damages, evidently in relation to Plaintiff's other causes of action under the FMLA. *See* Compl. ¶ 61. As such, Count V does not state a cause of action upon which relief can be granted, and thus must also be dismissed.

## III.    PLAINTIFF'S ADA CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF DID NOT EXHAUST HER ADMINISTRATIVE REMEDIES

In Counts VI ("ADA Violation re Not Being Allowed To Use Vacation During Medical Leave"), VII ("ADA – Termination Without An Interactive Process"), and VIII ("ADA – Lack of Accommodation For Twenty Year Service Award"), Plaintiff alleges that Williams & Connolly failed to accommodate her and grant her an interactive process, as required by the ADA. These counts must be dismissed because Plaintiff failed to exhaust her administrative remedies and, even if she had done so, because Plaintiff is not a qualified individual under the ADA.

---

[12] Indeed, Williams & Connolly paid Plaintiff the full balance of her vacation accrual upon the termination of her employment. *See* Ex. E (Oct. 5, 2016 letter to Plaintiff attaching $10,995.53 check for vacation accrual). The Court may properly consider this exhibit because the Complaint specifically references and relies upon Williams & Connolly's payment of accrued vacation to Plaintiff. *See Gustave–Schmidt,* 226 F. Supp. 2d at 195-96; *see also* n. 4.

Filing an administrative charge is, as a matter of law, a prerequisite to bringing suit under the ADA. *See, e.g.*, *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 36 (D.D.C. 2015) ("[E]xhaustion is a prerequisite to bringing suit under the ADA. . . . This is so because '[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" (internal citations omitted)). The administrative exhaustion requirement "applies to *pro se* and counseled plaintiffs alike." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015); *see also Dews-Miller v. Clinton*, 707 F. Supp. 2d 28, 51 (D.D.C. 2010) (dismissing pro se plaintiff's discrimination case because she "failed to exhaust her administrative remedies"), *aff'd*, 433 F. App'x 5 (D.C. Cir. 2011). Plaintiff never filed a charge. She pleads nothing to the contrary, nor can she. Accordingly, because Plaintiff failed to exhaust her administrative remedies, Plaintiff's three ADA counts must be dismissed. *Id.*

Even if Plaintiff had exhausted her administrative remedies, her Complaint establishes, on its face, that she was not a qualified individual with a disability and therefore was not covered by the ADA. To be a qualified individual with a disability, a person must be (1) disabled and (2) able to work with or without a reasonable accommodation. *Floyd v. Lee*, 85 F. Supp. 3d 482, 509 (D.D.C. 2015) ("[T]he ADA defines 'qualified individual' as one who can perform her essential duties 'with *or without* reasonable accommodation.'" (quoting 42 U.S.C. § 12111(8) (emphasis added)). Plaintiff never pleads that she was able to work with her alleged disability, even with an accommodation. Indeed, Plaintiff brings this suit, seeking long-term disability benefits, which are paid only to beneficiaries that are unable to perform "the material and substantial duties of your regular occupation." Ex. A (LTD Plan) at 11; *see also* Ex. B (E.D.

Tenn. Compl.) ¶ 30 ("Plaintiff is disabled under the terms of the Plan.").  Accordingly, because

Plaintiff was unable to work, with or without an accommodation, Plaintiff was not covered by

the ADA, and those claims would have to be dismissed even if she had exhausted her

administrative remedies.

## IV.    PLAINTIFF'S COBRA CLAIM (COUNT IX) IS ALSO TIME-BARRED AND FAILS TO STATE A COGNIZABLE CLAIM FOR RELIEF

In Count IX ("Failure to Inform: Missing Summary Plan Description for COBRA Plan at

Time of Election"), Plaintiff alleges that Williams & Connolly failed to furnish to Plaintiff a

copy of the Summary Plan Description ("SPD") that contained pertinent COBRA information at

the time of her termination, or at the time of her COBRA election.  *See* Compl. ¶ 68.  Plaintiff is

mistaken, but even accepting her allegations as true, Count IX is time-barred.  The applicable

statute of limitations is D.C.'s one-year statute of limitations for statutory penalties.[13]  *See* D.C.

Code § 12-301(5).  The alleged failure to provide notice under COBRA occurred at the time

Plaintiff's employment was terminated, on October 5, 2016.  *See* Compl. ¶ 68 ("Plaintiff never

received this information on or around October 5, 2016 when she was terminated . . . .").  Thus,

October 5, 2016 is the date that the statute of limitations began running on Plaintiff's claim.  *See*

*Thompson v. AmeriFlex*, No. 11 CIV. 5635 LTS RLE, 2013 WL 4407066, at *4 (S.D.N.Y. Aug.

16, 2013) ("Plaintiff commenced this action on August 2, 2011, more than three years after her

---

[13] COBRA notice actions are brought under ERISA § 502.  *See, e.g.*, *In re Interstate Bakeries Corp.*, 704 F.3d 528, 534 (8th Cir. 2013) (explaining that "a plan administrator who fails to meet the COBRA notice requirements 'may in the court's discretion be personally liable to such participant or beneficiary'" under ERISA § 502(c)).  Because ERISA § 502(c) does not have independent statute of limitations, courts look to the most analogous state-law statute of limitations, which in D.C. has been recognized as the one-year statute of limitations for statutory penalties.  *See Walker v. Pharm. Research & Mfrs. of Am*, 827 F. Supp. 2d 8, 13 (D.D.C. 2011) ("[T]he applicable statute of limitations for a statutory penalty is one year in the District of Columbia" and thus "the court applies a one-year statute of limitations to the plaintiff's [ERISA § 502] claims.").

cause of action for improper COBRA notification accrued, following her termination in December 2007."); *In re Interstate Bakeries Corp.*, No. 04-45814, 2010 WL 3810006, at *4 (Bankr. W.D. Mo. Sept. 23, 2010) (claim for failure to provide COBRA notice "did not accrue until [plaintiff's] employment terminated"), *aff'd*, 446 B.R. 336 (W.D. Mo. 2011), *aff'd*, 704 F.3d 528 (8th Cir. 2013).   Accordingly, Plaintiff's time to bring this claim ran *well* before she filed suit three years later in October of 2019.

Even if Count IX were not time-barred, it also fails to state a cognizable claim for relief. Plaintiff alleges that Williams & Connolly failed to furnish to her a copy of the COBRA plan SPD.  *See* Compl. ¶ 68.  However, employers are not required to furnish copies of plan SPDs as a part of the COBRA notice process; employers are merely required to furnish notice of a continuation of coverage (*see* 29 C.F.R. § 2590.606-1) and notice of a right to elect continuation of coverage (*see id.*).[14]  Because the notice requirement that Plaintiff complains of does not exist, Williams & Connolly could not have breached the requirement, and this count must be dismissed.

Furthermore, even if the claim were not time-barred, and even if Plaintiff had received no COBRA notice at all, Plaintiff's COBRA claim cannot survive a motion to dismiss because it is clear on the face of the Complaint that she has not suffered any harm related to the alleged violations.  In adjudicating a claim for failure to furnish required COBRA notices, a "primar[y]" concern is "prejudice to the plaintiff."  *In re Interstate Bakeries Corp.*, 704 F.3d at 534 ; *see also Middlebrooks v. Godwin Corp.*, No. 1:10-CV-1306 AJT/JFA, 2012 WL 405080, at *1 (E.D. Va. Feb. 7, 2012) (declining to impose penalties where plaintiff "has not demonstrated any

---

[14] *See also* COBRA Notice Requirements Proposed Regulations, DEPT. OF LABOR, https://www.dol.gov/agencies/ebsa/laws-and-regulations/rules-and-regulations/public-comments/cobra-notice (providing model COBRA notices).

prejudice"), *aff'd*, 474 F. App'x 916 (4th Cir. 2012).  Plaintiff has not alleged, nor can she allege, that she was prevented from electing and receiving the full 18 months of her COBRA benefits, and indeed, *Plaintiff successfully elected COBRA benefits on December 2, 2016.  See* Ex. E (Plaintiff's executed COBRA election form).[15]  For all of these reasons, Count IX should be dismissed.

## V.     PLAINTIFF'S BREACH OF THE ATTORNEY-CLIENT RELATIONSHIP CLAIM (COUNT XXI) IS TIME-BARRED AND INADEQUATELY PLEADED

In Count XXI, Plaintiff alleges a breach of the "attorney-client relationship," stemming from Williams & Connolly's representation of Plaintiff in a minor dispute with her neighbor *in 2009.  See* Compl. ¶ 90, pp. 53-54.  Plaintiff appears to allege that the various violations that she complains of throughout her Complaint also violated a duty that Williams & Connolly owed to her based on its previous representation of her.  This is not the case, and any possible claim that Plaintiff may have had is time-barred.

Though Plaintiff styles this count as one for breach of fiduciary duty based on the "attorney-client relationship," her claim is really one of attorney malpractice.  *See Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 581-82 (D.C. 2015) (recognizing breach of attorney fiduciary duty as cognizable under an attorney malpractice claim).  Under D.C. law, attorney malpractice suits must be brought within three years.  *See* D.C. Code § 12-301(8).  By Plaintiff's own pleading, she was allegedly told in January 2015 that the firm "was being disloyal to her in January 2015," and by "denial letter of 9/30/16" she allegedly learned that Defendant "was concealing" what she believes is a "key component of the plan."  Compl. ¶ 90, p. 54 ("The two defendants were proud to pull the FMLA clause out of their bag of tricks at that point.  Prior to

---

[15] Plaintiff's Complaint specifically references and relies upon her "COBRA election" (Compl. ¶ 68), and thus the Court may properly consider the referenced exhibit, which is Plaintiff's executed COBRA election.  *See* cases cited at n. 4.

that time there was no siting [sic] of the FMLA clause. This is disloyal!").  Thus, Plaintiff's time

to bring an action for malpractice expired in January 2018, or at the latest, on September 30,

2019.  Plaintiff did not bring this claim until she inserted it in her February 3, 2020 First

Amended Complaint, and it is therefore untimely.

Count XXI also is not plausible on its face.  Plaintiff's Complaint very misleadingly

suggests that she still has an attorney-client relationship with Williams & Connolly.  This is

false.  Her intentionally vague language suggests that Williams & Connolly is still representing

her "in a personal matter on or around 2009 *which is ongoing* as it pertains to a troublesome

neighbor."  Compl. ¶ 90, p. 53 (emphasis added).  It may well be that her dispute with her

neighbor is ongoing, but her attorney-client relationship with the firm is not.  Whatever duty

Williams & Connolly may have owed Plaintiff during that 2009 representation was no longer

present by 2015, and Plaintiff's conclusory suggestions to the contrary need not be credited.  *See*

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.").  This implausible and time-barred claim should be

dismissed.[16]

## VI.   PLAINTIFF'S MOTIONS FOR EQUITABLE TOLLING AND EQUITABLE ESTOPPEL ARE MERITLESS AND SHOULD BE DENIED

When Plaintiff filed her January 13, 2020 Consolidated and Restated Complaint, she also

filed motions arguing for equitable tolling of any applicable statutes of limitations and arguing

that Williams & Connolly be estopped from asserting any statute of limitations-based defenses.

---

[16] Finally, to the extent that Plaintiff is alleging that she is entitled to damages equal to the long-term disability benefits, or any other ERISA benefits that she seeks, this claim is also preempted by ERISA.  ERISA has a "comprehensive remedial scheme" that completely preempts common law causes of action that seek ERISA benefits under other labels.  *See Aetna Health Inc.*, 542 U.S. at 216-17.

*See* ECF Nos. 8, 9.  For the reasons set forth below, neither motion has merit, and the Court should apply the applicable statutes of limitations to Plaintiff's claims.

It is well established that equitable tolling and equitable estoppel are applied "sparingly" to statutes of limitation.  *Cureton v. Duke*, 272 F. Supp. 3d 56, 62 (D.D.C. 2017); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579-80 (D.C. Cir. 1998) ("'The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances.'") (internal citation omitted).  Ignorance of the law, or the judicial process, does not "warrant application of equitable tolling."  *Martin v. Piedmont Airlines*, 916 F. Supp. 2d 11, 14 (D.D.C. 2013) (quoting *Hunt v. Georgia Dep't of Cmty Affairs*, 490 F. App'x 196, 198 (11th Cir. 2012)), *Humphreys v. United States*, No. 1:01-CR-193, 2008 WL 4601577, at *13 (E.D. Tenn. Oct. 14, 2008) ("Moreover, ignorance of the law is not a valid basis for equitable tolling.").  Yet, ignorance of the law appears to be the crux of Plaintiff's request for equitable tolling.  Indeed, Plaintiff specifically cites her "ignorance of her statutory rights" and "newfound understanding" as a reason for granting her request.  ECF No. 8 at 2, 3 ("Due to Plaintiff's own expected and excusable ignorance of her statutory rights, Plaintiff was unaware of all of her FMLA, ERISA, ADA and COBRA privileges.").

While Plaintiff also alleges that equitable tolling is appropriate due to an array of conspiratorial acts purportedly undertaken by Williams & Connolly, these are the same alleged acts that already appear on the face of her Complaint.  None of these allegations is plausible or supported by anything more than conjecture.  Plaintiff makes bald allegations that Williams & Connolly surveilled her, and that it deliberately and fraudulently withheld materials, *see, e.g.*, Compl. ¶ 57(c), p. 31 (alleging that Williams & Connolly "tracked Plaintiff" and "surveilled her activities while at home with her family"), but alleges no facts supporting these farfetched

allegations.  Plaintiff's unsupported allegations of surveillance, hacking, fraud, and conspiracy are not plausible and, like Plaintiff's ignorance of the law, do not warrant the rarely applied doctrine of equitable tolling to Plaintiff's claims.

For similar reasons, Williams & Connolly should not be estopped from asserting statute of limitations-based defenses.  The elements of equitable estoppel are "[1] [a] false representation, [2] a purpose to invite action by the party to whom the representation was made, [3] ignorance of the true facts by that party, and [4] reliance, as well as . . . [5] a showing of an injustice . . .  and [6] lack of undue damage to the public interest."  *Hall v. Dep't of Commerce*, No. CV 16-1619 (EGS), 2018 WL 2002483, at *4 (D.D.C. Apr. 30, 2018) (internal citation omitted).  Plaintiff's Motion for Equitable Estoppel does not meet this "high hurdle."  *Id*. Plaintiff has not and cannot identify any false statements made to her by Williams & Connolly, or any invitation by Williams & Connolly for Plaintiff to take (or fail to take) any action.

Plaintiff's motions merely repeat the unsupported allegations in her Complaint.  Those allegations are not plausible for purposes of stating Plaintiff's causes of action, and they are not plausible for the purpose of obtaining equitable tolling or equitable estoppel.  *Sierra v. Hayden*, 254 F. Supp. 3d 230, 242 (D.D.C. 2017) ("Conclusory allegations lacking particularity" of "bad faith are insufficient" to allow equitable tolling); *Lee v. Fed. Bureau of Investigation*, 172 F. Supp. 3d 304, 307 (D.D.C. 2016) ("[W]holly conclusory assertions of . . .  supposed willful and intentional misrepresentations" are not enough to toll a statute of limitations.).  These remedies require meeting a very high bar, one that Plaintiff cannot meet based on her own statements in the Complaint and in the motions.  *Id.*; *see also Smith-Haynie*, 155 F.3d at 579-80.  For these reasons, Plaintiff's motions should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Williams & Connolly requests that the Court grant its Motion to Dismiss, with prejudice, and that Plaintiff's Motions for Equitable Tolling and Equitable Estoppel be denied.

Dated:  March 13, 2020

Respectfully submitted,

<u>/s/ *Carson H. Sullivan*</u>
Carson H. Sullivan (DC Bar No. 488139)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
carsonsullivan@paulhastings.com

*Counsel for Defendant Williams & Connolly LLP*

24

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020 the foregoing was served via overnight mail to

the following:

LISA K. HOLDEN
PRO SE
720 North Carolina Avenue, SE
Washington, DC 20003
(202) 823-2692


I hereby certify that on March 13, 2020, I electronically filed the foregoing document

with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to

the following:

Mary C. Zinsner, Esq.
DC Bar No. 430091
Troutman Sanders LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel: 202-274-1927
Fax: 703-448-6510
Email: mary.zinsner@troutman.com

*Counsel for Defendant Unum Life Insurance*


/s/ *Carson H. Sullivan*
Carson H. Sullivan